**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| PALM BEACH FINANCE PARTNERS, L.P., a Delaware limited partnership, *et al.*,[1] | Case No. 09-36379-BKC-PGH |
| | Jointly Administered |
| Debtors. | |
| _____/ | |

**JOINT PLAN OF LIQUIDATION OF BARRY MUKAMAL, AS CHAPTER 11**
**TRUSTEE OF PALM BEACH FINANCE PARTNERS, L.P. AND PALM BEACH**
**FINANCE II, L.P., AND GEOFFREY VARGA, AS JOINT OFFICIAL LIQUIDATOR**
**FOR PALM BEACH OFFSHORE, LTD. AND PALM BEACH OFFSHORE II, LTD.**

MELAND RUSSIN & BUDWICK, P.A.
3000 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Counsel for Barry Mukamal, as Chapter 11 Trustee of the Debtors

REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
-and-
LEVINE KELLOGG LEHMAN SCHNEIDER & GROSSMAN LLP
201 South Biscayne Boulevard
Miami Center – 34th Floor
Miami, Florida  33131
Counsel for Geoffrey Varga, as Joint Official Liquidator of Palm Beach Offshore, Ltd.
and Palm Beach Offshore II, Ltd.

---

[1] The address and last four digits of the taxpayer identification number for each of the Debtors follows in parenthesis: (i) Palm Beach Finance Partners, L.P., 3601 PGA Blvd, Suite 301, Palm Beach Gardens, FL 33410 (TIN 9943); and (ii) Palm Beach Finance II, L.P., 3601 PGA Blvd, Suite 301, Palm Beach Gardens, FL 33410 (TIN 0680).

# <u>TABLE OF CONTENTS</u>

Page

ARTICLE 1 DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION ..........2

    **A.**    **Scope of Definitions**................................................................2
    **B.**    **Definitions**................................................................2
        **1.1**    **Administrative Claim**................................................3
        **1.2**    **Administrative Claims Bar Date**..........................3
        **1.3**    **Allowed [__] Claim or Allowed [__] Interest**........3
        **1.4**    **Allowed Claim or Allowed Interest**.....................3
        **1.5**    **Assets**................................................................4
        **1.6**    **Available Cash**................................................4
        **1.7**    **Bankruptcy Code**...........................................4
        **1.8**    **Bankruptcy Court**..........................................4
        **1.9**    **Bankruptcy Rules**..........................................4
        **1.10**    **Bar Date**................................................................5
        **1.11**    **Bar Order**................................................................5
        **1.12**    **Barred Claims**.............................................5
        **1.13**    **Beneficiary or Beneficiaries**.......................5
        **1.14**    **Business Day**................................................5
        **1.15**    **Cash**................................................................5
        **1.16**    **Chapter 11 Cases**........................................5
        **1.17**    **Claim**................................................................6
        **1.18**    **Class**................................................................6
        **1.19**    **Confirmation**................................................6
        **1.20**    **Confirmation Date**......................................6
        **1.21**    **Confirmation Hearing**................................6
        **1.22**    **Confirmation Order**....................................6
        **1.23**    **Creditor**.......................................................6
        **1.24**    **Debtors**........................................................6
        **1.25**    **Disclosure Statement**................................6
        **1.26**    **Disputed Claim or Disputed Interest**........7
        **1.27**    **Disputed Claims Reserve**..........................7
        **1.28**    **Distribution Record Date**..........................7
        **1.29**    **Effective Date**.............................................7
        **1.30**    **Entity**...........................................................7
        **1.31**    **Estates**........................................................7
        **1.32**    **File or Filed**................................................7
        **1.33**    **Final Distribution**......................................8
        **1.34**    **Final Distribution Date**.............................8
        **1.35**    **Final Order**.................................................8
        **1.36**    **Final Tax Day**.............................................9
        **1.37**    **General Unsecured Claims**........................9
        **1.38**    **Impaired**.....................................................9
        **1.39**    **Interest**.......................................................9

| | | |
|---|---|---|
| 1.40 | **IRC** | 9 |
| 1.41 | **Investment Manager** | 9 |
| 1.42 | **JOL** | 9 |
| 1.43 | **Kaufman Rossin** | 9 |
| 1.44 | **Kaufman Rossin Affiliated Parties** | 9 |
| 1.45 | **Kaufman Rossin Settlement Agreement** | 9 |
| 1.46 | **Kaufman Rossin Litigations** | 10 |
| 1.47 | **Kaufman Rossin Settlement Payment** | 10 |
| 1.48 | **Lien** | 10 |
| 1.49 | **Liquidating Trust Agreements** | 10 |
| 1.50 | **Liquidating Trustee** | 10 |
| 1.51 | **Liquidating Trusts** | 10 |
| 1.52 | **Litigation Claims** | 10 |
| 1.53 | **Management Parties** | 12 |
| 1.54 | **Onshore/Offshore Allocation Formula** | 12 |
| 1.55 | **Offshore Funds** | 12 |
| 1.56 | **Palm Beach Offshore Claims** | 12 |
| 1.57 | **PBF** | 13 |
| 1.58 | **PBF Liquidating Trust** | 13 |
| 1.59 | **PBF Liquidating Trustee** | 13 |
| 1.60 | **PBF Liquidating Trust Agreement** | 13 |
| 1.61 | **PBF Litigation Claims** | 13 |
| 1.62 | **PBF II** | 13 |
| 1.63 | **PBF II Liquidating Trust** | 13 |
| 1.64 | **PBF II Liquidating Trustee** | 13 |
| 1.65 | **PBF II Liquidating Trust Agreement** | 13 |
| 1.66 | **PBF II Liquidating Trust Monitor** | 14 |
| 1.67 | **PBF II Litigation Claims** | 14 |
| 1.68 | **Person** | 14 |
| 1.69 | **Petition Date** | 14 |
| 1.70 | **Petters Bankruptcy Cases** | 14 |
| 1.71 | **Plan** | 14 |
| 1.72 | **Plan Proponents** | 14 |
| 1.73 | **Professional** | 14 |
| 1.74 | **Professional Claim** | 15 |
| 1.75 | **Pro Rata** | 15 |
| 1.76 | **Pro Rata Allocation Formula** | 15 |
| 1.77 | **Releasors** | 16 |
| 1.78 | **Scheduled** | 16 |
| 1.79 | **Schedules** | 16 |
| 1.80 | **Trustee** | 16 |
| 1.81 | **Trust Estate or Trust Assets** | 16 |
| 1.82 | **Unimpaired** | 16 |
| 1.83 | **United States Trustee** | 16 |
| 1.84 | **Unsecured Claim** | 16 |
| C. | **Rules of Interpretation.** | 17 |

**D.**      **Computation of Time** ................................................................19

ARTICLE 2 TREATMENT OF UNCLASSIFIED CLAIMS ........................................19

     **2.1**      **Administrative Claims** .................................................19
     **2.2**      **Statutory Fees.** ...........................................................19
     **2.3**      **Professional Claims** ....................................................20
     **2.4**      **Substantial Contribution Claim of JOL** .....................20
     **2.5**      **Deadline for Filing Administrative Claims** ...............21

ARTICLE 3 CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND
INTERESTS .............................................................................22

     **3.1**      **General** .......................................................................22
     **3.2**      **Classification.** ............................................................22

ARTICLE 4 IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED
AND NOT IMPAIRED BY THE PLAN..........................................23

     **4.1**      **Unimpaired Classes of Claims and Interests** ..............23
     **4.2**      **Impaired Classes of Claims and Interests** .................23

ARTICLE 5 PROVISIONS FOR THE TREATMENT OF CLAIMS AND INTERESTS .........24

     **5.1**      **Class 1A (PBF Limited Partner Unsecured Claims)** ...........24
     **5.2**      **Class 1B (PBF II Limited Partner Unsecured Claims)** ........24
     **5.3**      **Class 2A (Other PBF General Unsecured Claims)** .............24
     **5.4**      **Class 2B (Other PBF II General Unsecured Claims)** ..........24
     **5.5**      **Class 3A (PBF Interests)** .............................................25
     **5.6**      **Class 3B (PBF II Interests)**.........................................26

ARTICLE 6 TREATMENT OF EXECUTORY CONTRACTS ...................................26

     **6.1**      **Rejection** ...................................................................26
     **6.2**      **Approval of Rejection; Rejection Damages Claims Bar Date** ............27

ARTICLE 7 MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN .........27

     **7.1**      **The Liquidating Trusts.** ..............................................27
     **7.2**      **Distribution of Kaufman Rossin Settlement Payment** .......34
     **7.3**      **Termination of the Debtors**.........................................35
     **7.4**      **Closing of the Chapter 11 Cases** .................................36

ARTICLE 8 POSTCONFIRMATION LITIGATION ..............................................36

     **8.1**      **Transfer and Enforcement of Causes of Action**................36
     **8.2**      **Objections to Claims** ..................................................37
     **8.3**      **Allowance of Palm Beach Offshore Claims** ..................37

ARTICLE 9 DISTRIBUTIONS ......................................................................38

     **9.1**      **Delivery of Distributions in General** ...........................38
     **9.2**      **Cash Payments** ..........................................................38
     **9.3**      **Interest on Claims** ......................................................38
     **9.4**      **No *De Minimis* Distributions** ....................................39
     **9.5**      **Face Amount**.............................................................39

| 9.6 | Undeliverable Distributions | 39 |
| 9.7 | Interim Distributions | 39 |
| 9.8 | Final Distribution | 39 |
| 9.9 | Allowed Interests Subordinated | 40 |
| 9.10 | Disputed Claims Reserves | 40 |
| 9.11 | Compliance with Tax Requirements | 40 |

ARTICLE 10 CONDITIONS PRECEDENT ... 40

| 10.1 | Conditions to Confirmation | 40 |
| 10.2 | Conditions to the Effective Date | 41 |
| 10.3 | Termination of Plan for Failure To Become Effective | 41 |
| 10.4 | Waiver of Conditions | 41 |
| 10.5 | Notice of Effective Date | 42 |

ARTICLE 11 EFFECT OF CONFIRMATION ... 42

| 11.1 | Jurisdiction of Court | 42 |
| 11.2 | Binding Effect | 42 |
| 11.3 | Kaufman Rossin Settlement Agreement | 43 |
| 11.4 | Exculpation | 44 |
| 11.5 | Injunctions | 45 |
| 11.6 | Limitation of Liability | 46 |

ARTICLE 12 RETENTION OF JURISDICTION ... 47

| 12.1 | Ongoing  Bankruptcy Court Jurisdiction | 47 |

ARTICLE 13 ACCEPTANCE OR REJECTION OF THE PLAN ... 50

| 13.1 | Persons Entitled to Vote | 50 |
| 13.2 | Acceptance by Impaired Classes | 51 |

ARTICLE 14 MISCELLANEOUS PROVISIONS ... 51

| 14.1 | Modification of the Plan | 51 |
| 14.2 | Revocation of the Plan | 51 |
| 14.3 | Governing Law | 51 |
| 14.4 | No Admissions | 52 |
| 14.5 | Severability of Plan Provisions | 52 |
| 14.6 | Successors and Assigns | 53 |
| 14.7 | Exemption from Certain Transfer Taxes | 53 |
| 14.8 | Preservation of Rights of Setoffs | 53 |
| 14.9 | No Injunctive Relief | 53 |
| 14.10 | Non Business Day | 53 |
| 14.11 | Entire Agreement | 53 |
| 14.12 | Notices | 54 |

## **SCHEDULES**

Schedule 1.45          Kaufman Rossin Settlement Agreement

Schedule 1.52          Potential Targets of Litigation Claims to be Pursued by
                       Liquidating Trustee

Schedule 1.60          PBF Liquidating Trust Agreement

Schedule 1.65          PBF II Liquidating Trust Agreement

Schedule 3.2.1         Class 1A: PBF Limited Partner Unsecured Claims

Schedule 3.2.2         Class 1B: PBF II Limited Partner Unsecured Claims

Schedule 3.2.3         Class 2A: Other PBF General Unsecured Claims

Schedule 3.2.4         Class 2B: Other PBF II General Unsecured Claims

Schedule 3.2.5         Class 3A: PBF Interests

Schedule 3.2.6         Class 3B: PBF II Interests

Schedule 6.1           List of Executory Contracts and Unexpired Leases to be
                       Assumed

## INTRODUCTION

Barry Mukamal, as Chapter 11 Trustee (the "Trustee") of Palm Beach Finance Partners, L.P., a Delaware limited partnership, ("PBF") and Palm Beach Finance II, L.P., a Delaware limited partnership, ("PBF II" and together with PBF, the "Debtors"), and Geoffrey Varga, as Joint Official Liquidator of Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd. ("JOL" and together with the Trustee, the "Plan Proponents") propose this Joint Plan of Liquidation of PBF and PBF II (the "Plan") for the resolution and satisfaction of all Claims against and Interests in the Debtors.  The Plan Proponents are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.  All capitalized terms not defined in this introduction have the meanings ascribed to them in Article 1 of this Plan.  Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtors' history, businesses, resolution of material disputes, significant asset sales, financial projections for the liquidation and distribution of the Debtors' remaining assets and a summary and analysis of the Plan and certain related matters.

This is a liquidating Plan pursuant to which all of the Debtors' assets are to be transferred to liquidating trusts which will liquidate the assets and prosecute any potential Litigation Claims held by the Debtors.  All resulting funds will be distributed to certain holders of Allowed Claims and Interests as set forth herein, whose claims against the Debtors will be exchanged for a beneficial interest in the Liquidating Trusts.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from holders of claims and/or interests until such time as the Disclosure Statement has been approved by the Bankruptcy Court.  The Plan Proponents urge all holders of Claims and Interests entitled to vote on the Plan to read the Plan and the Disclosure Statement in their

entirety before voting to accept or reject the Plan.  To the extent, if any, that the Disclosure Statement is inconsistent with the Plan, the Plan will govern.  No solicitation materials other than the Disclosure Statement and any schedules and exhibits attached thereto or referenced therein, or otherwise enclosed with the Disclosure Statement served by the Plan Proponents on interested parties, or as otherwise ordered by the Bankruptcy Court, have been authorized by the Plan Proponents or the Bankruptcy Court for use in soliciting acceptances of the Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Federal Bankruptcy Rule 3019 and Article 14 of this Plan, the Plan Proponents expressly reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

## ARTICLE 1

## DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

**A.      Scope of Definitions.** For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 1 of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, respectively. Whenever the context requires, capitalized terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**B.      Definitions.** In addition to such other terms as are defined in other Sections of the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings ascribed to them in this Article 1 of the Plan.

**1.1    Administrative Claim:** A Claim for any cost or expense of administration (including Professional Claims) of the Chapter 11 Cases asserted or arising under sections 503, 507(a)(1), or 507(b) of the Bankruptcy Code, including any (i) actual and necessary cost or expense of preserving the Debtors' Estates arising on or after the Petition Date, (ii) compensation or reimbursement of expenses of Professionals arising on or after the Petition Date, to the extent allowed by the Bankruptcy Court under section 330(a) or section 331 of the Bankruptcy Code, (iii) compensation or reimbursement for actual, necessary expenses in making a substantial contribution in the Chapter 11 Cases, and (iv) fees or charges assessed against the Debtors' Estates under section 1930 of title 28 of the United States Code.

**1.2    Administrative Claims Bar Date:** The first Business Day that is at least sixty (60) days following the Effective Date.

**1.3    Allowed [__] Claim or Allowed [__] Interest:** An Allowed Claim or Allowed Interest in the particular category or Class identified.

**1.4    Allowed Claim or Allowed Interest:** A Claim against or Interest in the Debtors or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date, (i) no proof of Claim or Interest has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court, or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the applicable periods of limitation fixed by the Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court sought pursuant to Section 8.2 of the Plan or otherwise entered by the Bankruptcy Court or

(ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount in the Plan.

      1.5     **Assets:** All legal or equitable pre-petition and post-petition interests of the Debtors in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, causes of actions, and any other general intangibles, and the proceeds, product, offspring, rents or profits thereof.

      1.6     **Available Cash:** All Cash available for distribution to Beneficiaries under the respective Liquidating Trust Agreement less the amount of Cash deposited in the Disputed Claims Reserve.

      1.7     **Bankruptcy Code:** Title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, as applicable in the Chapter 11 Cases.

      1.8     **Bankruptcy Court:** The United States Bankruptcy Court for the Southern District of Florida and, to the extent it may exercise jurisdiction in the Chapter 11 Cases, the United States District Court for the Southern District of Florida, or if either such court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that properly exercises jurisdiction over the Chapter 11 Cases.

      1.9     **Bankruptcy Rules:** The Federal Bankruptcy Rules, the Local Rules of the Bankruptcy Court for the Southern District of Florida and the guidelines and requirements of the Office of the United States Trustee, as in effect on the Petition Date and as thereafter amended, as applicable from time to time in the Chapter 11 Cases.

1.10    **Bar Date:** The deadline for filing and serving upon the Debtors all proofs of claims established by the Bankruptcy Court as April 6, 2010.

1.11    **Bar Order:** Shall mean the bar order contemplated by the Kaufman Rossin Settlement Agreement.

1.12    **Barred Claims:** Shall mean any and all direct, indirect and/or derivative claims, whether known or unknown, by any and all Releasors against Kaufman Rossin that: (i) were alleged in the Kaufman Rossin Litigations; (ii) were threatened by the Releasors; (iii) relate to or arise from the transactions and occurrences alleged in the Kaufman Rossin Litigations; (iv) relate to or arise from Kaufman Rossin's duties to any of the Releasors, if any; or (v) that could have been brought in the Kaufman Rossin Litigations.

1.13    **Beneficiary or Beneficiaries:** The holder(s) of an Allowed Claim or Allowed Interest as may be determined from time to time in accordance with the Plan and Liquidating Trust Agreements.

1.14    **Business Day:** Any day other than a Saturday, Sunday, a "legal holiday" (as such term is defined in Federal Bankruptcy Rule 9006(a)) or Rosh Hashanah (both days), Yom Kippur, Succoth (first two (2) days), Shmini Atzereth, Simchas Torah, Passover (first two (2) days and last two (2) days) and Shavuoth (both days).

1.15    **Cash:** Legal tender accepted in the United States of America for the payment of public and private debts, currently denominated in United States Dollars.

1.16    **Chapter 11 Cases:** The jointly administered Chapter 11 bankruptcy cases of the Debtors pending in the United States Bankruptcy Court for the Southern District of Florida (West Palm Beach Division).

**1.17    Claim:** A right of a Creditor against the Debtors, or any one of them, whether or not asserted or allowed, of the type described in Bankruptcy Code section 101(5), as construed by Bankruptcy Code section 102(2).

**1.18    Class:** A group of Claims or Interests as classified in a particular class under the Plan pursuant to Bankruptcy Code section 1122.

**1.19    Confirmation:** Entry of the Confirmation Order by the Bankruptcy Court.

**1.20    Confirmation Date:** The date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Federal Bankruptcy Rules 5003 and 9021.

**1.21    Confirmation Hearing:** The duly noticed hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Bankruptcy Code section 1128, including any continuances thereof.

**1.22    Confirmation Order:** The order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129 in form and substance acceptable to the Trustee and the JOL.

**1.23    Creditor:** Any Entity who holds a Claim against either of the Debtors.

**1.24    Debtors**: Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P.

**1.25    Disclosure Statement:** That certain written disclosure statement that relates to this Plan as filed in the Chapter 11 Cases by the Trustee and the JOL, including the schedules and exhibits attached thereto, as it may be amended, modified or supplemented from time to time.

**1.26    Disputed Claim or Disputed Interest:** A Claim or Interest, respectively, that the Debtors have Scheduled as "disputed," "contingent" or "unliquidated," or as to which a proof of Claim or Interest has been Filed or deemed Filed as contingent or as to which an objection has been or may be timely Filed by the Liquidating Trustee or any other party in interest entitled to do so, which objection, if timely Filed, has not been withdrawn or has not been overruled or denied by a Final Order.

**1.27    Disputed Claims Reserve:** Shall have the meaning set forth in Section 4.1 of the Liquidating Trust Agreements.

**1.28    Distribution Record Date:** The record date for the purposes of making distributions under the Plan on account of Allowed Claims or Interests, which date shall be designated in the Confirmation Order.

**1.29    Effective Date:** A date selected by the Trustee and the JOL, that is (a) at least eleven (11) days following occurrence of the Confirmation Date; and (b) no more than five (5) Business Days following the first date on which no stay of the Confirmation Order is in effect and all conditions to the Effective Date set forth in Article 10 of the Plan have been satisfied or, if waivable, waived pursuant to Section 10.4 hereof.

**1.30    Entity:** A Person, an estate, a trust, the United States Trustee, a "governmental unit" as that term is defined in Bankruptcy Code section 101(27), or any other entity as defined in section 101(15) of the Bankruptcy Code.

**1.31    Estates:** The estates created pursuant to section 541 of the Bankruptcy Code by the commencement of the Chapter 11 Cases.

**1.32    File or Filed:** To file, or to have been filed, with the Clerk of the Bankruptcy Court in the Chapter 11 Cases.

**1.33    Final Distribution:** Shall be the distributions described in Section 9.8 hereof.

**1.34    Final Distribution Date:** Shall be the date upon which the Final Distribution is made. The Final Distribution Date shall be a date determined by the Liquidating Trustee of each of the Liquidating Trusts, (a) which is after the liquidation into Cash of all assets of the respective Liquidating Trusts (other than those assets abandoned by the Liquidating Trust) and collection of other sums due or otherwise remitted or returned to the Estates, and (b) on or after which the Liquidating Trust makes a Final Distribution from the Disputed Claims Reserve.

**1.35    Final Order:** An order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on its docket, that has not been reversed, stayed, modified or amended, and as to which (a) the time to appeal, petition for certiorari or move for reargument, rehearing or a new trial has expired and no appeal, petition for certiorari or motion for reargument, rehearing or a new trial, respectively, has been timely filed (which time period shall mean, with respect to motions to correct such order under Rule 9024 of the Federal Bankruptcy Rules, Rule 60 of the Federal Rules of Civil Procedure or otherwise, 10 days after the entry of such order), or (b) any appeal, any petition for certiorari or any motion for reargument, rehearing or a new trial that has been or may be filed has been resolved by the highest court (or any other tribunal having appellate jurisdiction over the order or judgment) to which the order or judgment was appealed or from which certiorari or reargument, rehearing or a new trial was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or a new trial shall have expired without such actions having been taken.

**1.36    Final Tax Day:** Shall mean the last day in the taxable year of the respective Liquidating Trust which includes the Termination Date (as defined in the Liquidating Trust Agreements).

**1.37    General Unsecured Claims:** All Unsecured Claims Scheduled by, or filed against, either of the Debtors.

**1.38    Impaired:** When used with reference to a Claim or an Interest, "Impaired" shall have the meaning ascribed to it in Bankruptcy Code section 1124.

**1.39    Interest:** Shall mean an interest of a general or limited partner in either of the Debtors.

**1.40    IRC:** Shall mean the Internal Revenue Code of 1986, as amended from time to time.

**1.41    Investment Manager:** Shall mean Palm Beach Capital Management, LLC.

**1.42    JOL:** Geoffrey Varga, as Joint Official Liquidator for Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd.

**1.43    Kaufman Rossin:** Shall mean, collectively, Kaufman Rossin & Co. and Kaufman Rossin & Co. Cayman.

**1.44    Kaufman Rossin Affiliated Parties:** Shall mean those persons set forth on Exhibit 1 to the Kaufman Rossin Settlement Agreement.

**1.45    Kaufman Rossin Settlement Agreement:** Shall mean that certain Stipulation of Settlement, fully executed as of July 2, 2010, by and among the Trustee, Kaufman Rossin and the JOL resolving for all purposes the claims asserted by the Trustee and the JOL in

the Kaufman Rossin Litigations. A copy of the fully executed Kaufman Rossin Settlement Agreement is attached as Schedule 1.45.

1.46    **Kaufman Rossin Litigations:** Shall mean, together, those actions captioned (i) *Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P. v. Kaufman, Rossin & Co.*, Adv. Pro. No. 09-02553-PGH, pending in the United States Bankruptcy Court for the Southern District of Florida (West Palm Beach), and (ii) *Geoffrey Varga and Neil Morris, solely in their capacity as Joint Official Liquidators of Palm Beach Offshore II, Ltd. v. Palm Beach Capital Management LLC, et al.*, Case No. 09-cv-82398-FAM, pending in the United States District Court for the Southern District of Florida.

1.47    **Kaufman Rossin Settlement Payment:** Shall mean the sum to be paid (or caused to be paid) by Kaufman Rossin to the Liquidating Trustee pursuant to the Kaufman Rossin Settlement Agreement, which amount shall not be less than $9,600,000.00.

1.48    **Lien:** A charge against, interest in or other encumbrance upon property to secure payment of a debt or performance of an obligation.

1.49    **Liquidating Trust Agreements:** Shall mean the PBF Liquidating Trust Agreement and the PBF II Liquidating Trust Agreement.

1.50    **Liquidating Trustee:** Barry Mukamal, as PBF Liquidating Trustee and the PBF II Liquidating Trustee, individually or collectively, as context requires.

1.51    **Liquidating Trusts:** The PBF Liquidating Trust and the PBF II Liquidating Trust.

1.52    **Litigation Claims:** Shall mean, except as provided otherwise herein, the Confirmation Order or any document, instrument, release or other agreement entered into in connection with the Plan, all claims, actions, choses in action, causes of action, suits, debts, dues,

sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims (including, but not limited to, any Chapter 5 avoidance or recovery actions under the Bankruptcy Code or avoidance or recovery claims recognized under any applicable state law) whether known or unknown, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively in law, equity, or otherwise, that are or may be pending on the Effective Date or instituted after the Effective Date against any Entity identified on Schedule 1.52 based on law or equity.  Litigation Claims include, without limitation, those which are: (i) property of the bankruptcy estate under and pursuant to section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover; (iv) for avoidable transfers and preferences under and pursuant to sections 542 through 550 and 553 of the Bankruptcy Code or any applicable state law; (v) to determine the extent, validity and priority of liens and encumbrances; (vi) for surcharge under section 506(c) of the Bankruptcy Code; (vii) for subordination under section 510 of the Bankruptcy Code; (viii) related to federal or state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) against any and all current and/or former officers and directors of the Debtors or any affiliates of Thomas J. Petters; (xi) for breach of fiduciary duty or aiding and abetting breach of fiduciary duty; (xii) under and pursuant to any policies for insurance, including for bad faith, maintained by the Debtors, including, without limitation, any liability insurance policy; (xiii) for theft of corporate opportunity; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the

Bankruptcy Code;  (xvii) for common law torts or aiding and abetting common law torts; (xviii) contract or quasi contract; (xix) derivative based; (xx) statutory claims; (xxi) arise out of or are related in any way to actions or claims pending as of the Effective Date; (xxii) for negligence including professional negligence; (xxiii) for unjust enrichment; (xxiv) to disallow or subordinate any proof of claim filed in the Petters Bankruptcy Cases; (xxv) to recover an avoidable transfer from any mediate or subsequent transferee; or (xxvi) claims that may be asserted in the Petters Bankruptcy Cases.

1.53    **Management Parties**: Shall mean Bruce Prevost, David W. Harrold, Palm Beach Capital Management, LLC, Palm Beach Capital Management, Ltd., Palm Beach Capital Management, LP and Palm Beach Capital Corp.

1.54    **Onshore/Offshore Allocation Formula:** Shall mean that allocation of the Kaufman Rossin Settlement Payment such that (i) the PBF Liquidating Trust shall receive 18% of the Kaufman Rossin Settlement Payment for its benefit, (ii) the PBF II Liquidating Trust shall receive 20.5% of the Kaufman Rossin Settlement Payment for its benefit, and (iii) the Offshore Funds shall receive 61.5% for their benefit.  This allocation formula shall apply exclusively to the Kaufman Rossin Settlement Payment and to no other Litigation Claims.

1.55    **Offshore Funds:** Shall mean, together, Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd.

1.56    **Palm Beach Offshore Claims:** Shall mean, together, the Claims asserted against debtor Palm Beach Finance II, L.P. by (i) Geoffrey Varga, solely in his capacity as Joint Official Liquidator of Palm Beach Offshore II, Ltd., evidenced by a timely filed proof of claim designated as Claim #15 on Palm Beach Finance II, L.P.'s claims register in excess of $140,507,868.06, and (ii) Geoffrey Varga, solely in his capacity as Joint Official Liquidator of

Palm Beach Offshore, Ltd., evidenced by a timely filed proof of claim designated as Claim #16 on Palm Beach Finance II, L.P.'s claims register in excess of $578,319,885.06.

        **1.57**    **PBF:** Palm Beach Finance Partners, L.P.

        **1.58**    **PBF Liquidating Trust:** The liquidating trust established pursuant to the PBF Liquidating Trust Agreement further described in Article 7 hereof.

        **1.59**    **PBF Liquidating Trustee:** Barry Mukamal, as PBF Liquidating Trustee pursuant to the PBF Liquidating Trust Agreement.

        **1.60**    **PBF Liquidating Trust Agreement:** The Liquidating Trust Agreement dated as of the Effective Date among the Trustee and the PBF Liquidating Trustee, a copy of which is attached hereto as Schedule 1.60 and incorporated herein by reference, and all supplements and amendments thereto.

        **1.61**    **PBF Litigation Claims:** Shall mean any Litigation Claim held by PBF or the PBF Liquidating Trust.

        **1.62**    **PBF II:** Palm Beach Finance II, L.P.

        **1.63**    **PBF II Liquidating Trust:** The liquidating trust established pursuant to the PBF II Liquidating Trust Agreement further described in Article 7 hereof.

        **1.64**    **PBF II Liquidating Trustee:** Barry Mukamal, as PBF II Liquidating Trustee pursuant to the PBF II Liquidating Trust Agreement.

        **1.65**    **PBF II Liquidating Trust Agreement:** The Liquidating Trust Agreement dated as of the Effective Date among the Trustee and the PBF II Liquidating Trustee, a copy of which is attached hereto as Schedule 1.65 and incorporated herein by reference, and all supplements and amendments thereto.

1.66    **PBF II Liquidating Trust Monitor:** Geoffrey Varga, as Joint Official Liquidator for Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd., as set forth in Section 4.12 of the PBF II Liquidating Trust Agreement.

1.67    **PBF II Litigation Claims:** Shall mean any Litigation Claim held by PBF II or the PBF II Liquidating Trust.

1.68    **Person:** An individual, a corporation, a limited liability company, a partnership, an association, a joint stock company, a joint venture, an unincorporated organization, or a governmental unit as defined in Bankruptcy Code section 101(41).

1.69    **Petition Date:** November 30, 2009.

1.70    **Petters Bankruptcy Cases:** The bankruptcy cases pending in the United States Bankruptcy Court for the District of Minnesota for the following entities: Petters Company, Inc., Case No. 08-45257; Petters Group Worldwide, LLC, Case No. 08-45258; PC Funding, LLC, Case No. 08-45326; Thousand Lakes, LLC, Case No. 08-45327; SPF Funding, LLC, Case No. 08-45328; PL Ltd., Inc., Case No. 08-45329; Edge One, LLC, Case No. 08-45330; MGC Finance, Inc., Case No. 08-45331; PAC Funding, LLC, Case No. 08-45371; and Palm Beach Finance Holdings, Inc., Case No. 08-45392.

1.71    **Plan:** This joint plan of liquidation, and all schedules annexed hereto or referenced herein, as it may be amended, modified or supplemented from time to time in accordance with the provisions of the Plan or the Bankruptcy Code and Bankruptcy Rules.

1.72    **Plan Proponents:** Barry Mukamal, as Trustee, and Geoffrey Varga, as JOL.

1.73    **Professional:** A Person (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with section 327 of the Bankruptcy Code and to be compensated for

services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

      **1.74**    **Professional Claim:** A Claim of (a) a Professional retained in the Chapter 11 Cases pursuant to a Final Order in accordance with section 327 of the Bankruptcy Code or otherwise, for compensation or reimbursement of actual and necessary costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date or (b) a Professional which seeks compensation and reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code.

      **1.75**    **Pro Rata:** Proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim or Interest to the amount of the Allowed Claim or Interest is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims or Interests of the Class in which the particular Allowed Claim Interest is included to the amount of all Allowed Claims or Interests of that Class, but in any event the amount of consideration distributed on account of an Allowed Claim or Interest shall not exceed 100% of the amount of the Allowed Claim or Interest.

      **1.76**    **Pro Rata Allocation Formula:** Shall mean that allocation of any Assets in which both PBF and PBF II have an interest, including any Litigation Proceeds from legal proceedings, settlements, or as otherwise acquired in which both PBF and PBF II have an interest, between the Liquidating Trusts whereby on the Effective Date 18% of such Assets shall be allocated to the PBF Liquidating Trust and 82% of such Assets shall be allocated to the PBF II Liquidating Trust.  The Pro Rata Allocation Formula is derived from the Compiled Financial Statements, dated April 30, 2008, for each of the Debtors by Kaufman Rossin & Co.  The data

contained therein supports an 18%/82% allocation between PBF and PBF II, respectively, based upon the total assets of each entity as of the date of such compilations.

       1.77    **Releasors:** Shall mean the Debtors, the Trustee, the JOL, the Offshore Funds, and creditor or shareholder of the Offshore Funds, any successor or assigns of the Debtors, any and all known and unknown creditors of the Debtors and their successors and assigns, any and all limited and general partners of the Debtors and their successors and assigns, and any affiliate of any of the Debtors and their successors and assigns.

       1.78    **Scheduled:** Set forth on the Schedules.

       1.79    **Schedules:** The Schedules of Assets and Liabilities Filed by the Debtors in accordance with Bankruptcy Code section 521 and Bankruptcy Rule 1007, as the same may be amended from time to time prior to the Effective Date in accordance with Bankruptcy Rule 1009.

       1.80    **Trustee:** Barry E. Mukamal, as Chapter 11 Trustee of the Debtors.

       1.81    **Trust Estate or Trust Assets:** Shall mean the Assets, including Litigation Claims, which shall be irrevocably assigned, transferred and conveyed to the Liquidating Trusts pursuant to the Pro Rata Allocation Formula as of the Effective Date of the Plan, plus any and all net income earned on the foregoing.

       1.82    **Unimpaired:** When used with reference to a Claim or an Interest, "Unimpaired" shall have the meaning ascribed to it in Bankruptcy Code section 1124.

       1.83    **United States Trustee:** The United States Trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the Southern District of Florida.

       1.84    **Unsecured Claim:** Any Claim against the Debtors, excluding Administrative Claims.

**C.    Rules of Interpretation**.

1.    In the event of an inconsistency, the provisions of the Plan shall control over the contents of the Disclosure Statement or the Liquidating Trust Agreements. The provisions of the Confirmation Order shall control over the contents of the Plan.

2.    For the purposes of the Plan:

(a)    any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; provided, however, that any change to such form, terms or conditions that is material to a party to such document shall not be modified without such party's consent unless such document expressly provides otherwise;

(b)    any reference in the Plan to an existing document, exhibit or schedule Filed or to be Filed means such document, exhibit or schedule, as it may have been or may be amended, modified or supplemented as of the Effective Date;

(c)    unless otherwise specified, all references in the Plan to "Sections," "Articles," and "Schedules" are references to Sections, Articles, and Schedules of or to the Plan;

(d)    the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(e)     captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect interpretations of the Plan;

(f)     the rules of construction set forth in Bankruptcy Code section 102 shall apply, except to the extent inconsistent with the provisions of this Article of the Plan; and

(g)     the word "including" means "including without limitation."

3.     Whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date or as soon as reasonably practicable thereafter.

4.     All Schedules to the Plan are incorporated into the Plan and shall be deemed to be included in the Plan, regardless of when they are Filed.

5.     Subject to the provisions of any contract, certificate, bylaws, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

6.     This Plan is the product of extensive discussions and negotiations between and among, inter alia, the Trustee and the JOL, and certain other creditors and constituencies. Each of the foregoing was represented by counsel who either (a) participated in the formulation and documentation of or (b) was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, and the documents ancillary thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "*contra proferentum*" shall not apply to the construction or interpretation of any provision of this Plan,

the Disclosure Statement, any of the Plan Schedules, or any contract, instrument, release, indenture, or other agreement or document generated in connection herewith.

**D.     Computation of Time.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE 2**

**TREATMENT OF UNCLASSIFIED CLAIMS**

**2.1     Administrative Claims.** Subject to the allowance procedures and deadlines provided herein, on the Effective Date or as soon thereafter as is practicable, the holder of an Allowed Administrative Claim shall receive on account of the Allowed Administrative Claim and in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim, or (b) such other treatment as to which the Trustee, the JOL and the holder of such Allowed Administrative Claim have agreed upon in writing; provided, however, that Professional Claims shall be paid in accordance with Section 2.3.   Such Allowed Administrative Claims shall be paid pro rata, with any unpaid portion of such Claim transferred to the respective trust.

**2.2     Statutory Fees.** The Trustee, on behalf of the Debtors, shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days of the entry of the Confirmation Order for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the Cash disbursements for the relevant period.   The Liquidating Trustee of the respective Liquidating Trust shall further pay the United States Trustee the appropriate sum required pursuant to 28

U.S.C.    1930(a)(6) based upon all disbursements of the Liquidating Trust for post-confirmation periods within the time period set forth in 28 U.S.C.    1930(a)(6), until the earlier of the closing of the Bankruptcy Cases by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Cases or converting the Bankruptcy Cases to another chapter under the Bankruptcy Code, and the party responsible for paying the post-confirmation United States Trustee fees shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the Cash disbursements for the relevant period.

      **2.3      Professional Claims.** Immediately prior to the Effective Date, the Debtors shall pay all amounts owing to the Professionals for all outstanding Professional Claims, as approved by the Bankruptcy Court.  On or prior to the Administrative Claims Bar Date, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date.  Rather than estimate Professional Claims due for periods that have not been billed as of the Effective Date, Professionals shall apply for such amounts after the Effective Date.

      **2.4      Substantial Contribution Claim of JOL:**  The JOL shall file an application pursuant to section 503(b)(3) of the Bankruptcy Court for reimbursement of the actual, necessary expenses, incurred by the JOL in making a substantial contribution in these Bankruptcy Cases by, inter alia, his involvement in the negotiation, analysis and drafting of the terms of this Plan and his role in obtaining approval of this Plan and related documents and agreements.  Additionally, Professionals retained by the JOL shall file an application pursuant to section 503(b)(4) of the Bankruptcy Code for professional services rendered to the JOL in connection with these Bankruptcy Cases.  The foregoing applications shall not be objected to by

the Liquidating Trustee, so long as the amounts set forth in such applications are deemed reasonable by the Liquidating Trustee, but all other parties-in-interest, including the United States Trustee, shall be entitled to file an objection to any such application. To the extent an application for a Claim made pursuant to this Section 2.4 is Allowed, such Allowed Claim shall be payable pursuant to the Pro Rata Allocation Formula from the Trust Assets of the PBF and PBF II Liquidating Trusts.

2.5 **Deadline for Filing Administrative Claims**. Other than with respect to Administrative Claims for which the Bankruptcy Court previously has established a Bar Date, any and all requests for payment or proofs of Administrative Claims, including Claims of all Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 331 or 503(b) for services rendered on or before the Effective Date (including any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Cases) and any claims asserted in accordance with section 2.4 of this Plan, must be Filed and served on the Liquidating Trustee, the JOL, their respective counsel, and the U.S. Trustee no later than the Administrative Claims Bar Date. Objections to any such Administrative Claims must be Filed and served on the claimant no later than thirty (30) days after the Administrative Claims Bar Date. The Trustee and JOL shall use reasonable efforts to promptly and diligently pursue resolution of any and all disputed Administrative Claims. In the event the Liquidating Trustee and the JOL are unable to resolve any of the disputed Administrative Claims, such unresolved disputes will be heard and determined by the Bankruptcy Court.

Holders of Administrative Claims, including all Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections

327, 328, 330, 331 or 503(b) for services rendered on or before the Effective Date (including any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Cases), that are required to File a request for payment or proof of such Claims and that do not File such requests or proofs of Claim on or before the Administrative Claims Bar Date shall be forever barred from asserting such Claims against the Debtors, their Estates, the Liquidating Trusts, the Liquidating Trustee, any other Person or Entity, or any of their respective property.

## ARTICLE 3

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

3.1     **General.** Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Interests in the Debtors. A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest falls within the description of that Class. A Claim or Interest is also placed in a particular Class for purposes of receiving a distribution under the Plan, but only to the extent such Claim or Interest is an Allowed Claim or Interest and has not been paid, released, or otherwise settled prior to the Effective Date. Except as otherwise expressly set forth in this Plan, a Claim or Interest which is not an Allowed Claim shall not receive any payments, rights or distributions under this Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and are treated as set forth in Article 2 above.

3.2     **Classification**.

3.2.1   Class 1A**:** PBF Limited Partner Unsecured Claims.  Class 1A consists of all General Unsecured Claims filed by limited partners of PBF.  For purposes of voting on this Plan, Class 1A Claims shall consist of those Claims set forth on Schedule 3.2.1.

**3.2.2**    Class 1B**:** PBF II Limited Partner Unsecured Claims.  Class 1B consists of all General Unsecured Claims filed by limited partners of PBF II.  For purposes of voting on this Plan, Class 1B Claims shall consist of those Claims set forth on Schedule 3.2.2.

**3.2.3**    Class 2A: Other PBF General Unsecured Claims.  Class 2A consists of all General Unsecured Claims of PBF other than PBF Limited Partner Unsecured Claims.  For purposes of voting on this Plan, Class 2A Claims shall consist of those Claims set forth on Schedule 3.2.3.

**3.2.4**    Class 2B: Other PBF II General Unsecured Claims. Class 2B consists of all General Unsecured Claims of PBF II other than PBF II Limited Partner Unsecured Claims.  For purposes of voting on this Plan, Class 2B Claims shall consist of those Claims set forth on Schedule 3.2.4.

**3.2.5**    Class 3A**:** PBF Interests.  Class 3A consists of all Interests of or in PBF.

**3.2.6**    Class 3B**:** PBF II Interests.  Class 3B consists of all Interests of or in PBF II.

## ARTICLE 4

## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

**4.1**    **Unimpaired Classes of Claims and Interests.** No Class of Claims or Interests is Unimpaired under the Plan.

**4.2**    **Impaired Classes of Claims and Interests.** Classes 1A, 1B, 2A, 2B, 3A and 3B are Impaired.  Votes from holders of Class 1A, Class 1B, Class 2A and Class 2B Claims, and holders of Class 3A and Class 3B Interests, will be solicited.

## ARTICLE 5

## PROVISIONS FOR THE TREATMENT OF CLAIMS AND INTERESTS

5.1     **Class 1A (PBF Limited Partner Unsecured Claims).** Each holder of an Allowed PBF Limited Partner Unsecured Claim, shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed PBF Limited Partner Unsecured Claim, periodic distributions from the PBF Liquidating Trust on account of its Allowed PBF Limited Partner Unsecured Claim, to be paid by the PBF Liquidating Trust on dates to be determined in the reasonable discretion of the PBF Liquidating Trustee.

5.2     **Class 1B (PBF II Limited Partner Unsecured Claims).** Each holder of an Allowed PBF II Limited Partner Unsecured Claim, shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed PBF II Limited Partner Unsecured Claim, periodic distributions from the PBF II Liquidating Trust of its share on account of its Allowed PBF II Limited Partner Unsecured Claim to be paid by the PBF II Liquidating Trust on dates to be determined in the reasonable discretion of the PBF II Liquidating Trustee.

5.3     **Class 2A (Other PBF General Unsecured Claims).** Each holder of an Allowed Other PBF General Unsecured Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Other PBF General Unsecured Claim, periodic distributions from the PBF Liquidating Trust of its share on account of its Allowed Other PBF General Unsecured Claim to be paid by the PBF Liquidating Trust on dates to be determined in the reasonable discretion of the PBF Liquidating Trustee.

5.4     **Class 2B (Other PBF II General Unsecured Claims).** Each holder of an Allowed Other PBF II General Unsecured Claim shall receive, in full satisfaction, settlement,

release and discharge of and in exchange for its Allowed Other PBF II General Unsecured Claim, periodic distributions from the PBF II Liquidating Trust of its share on account of its Allowed Other PBF II General Unsecured Claim to be paid by the PBF II Liquidating Trust on dates to be determined in the reasonable discretion of the PBF II Liquidating Trustee.

Notwithstanding anything herein to the contrary, holders of Allowed Class 1A and Allowed Class 2A Claims, whose Claims have not been successfully objected to or subordinated for any purpose including distribution purposes, whether under section 510 of the Bankruptcy Code or any other provision thereof, shall receive on a *pari passu* basis distributions from the PBF Liquidating Trust on account of their Allowed Claim.  Furthermore, notwithstanding anything herein to the contrary, holders of Allowed Class 1B and Allowed Class 2B Claims, whose Claims have not been successfully objected to or subordinated for any purpose including distribution purposes, whether under section 510 of the Bankruptcy Code or any other provision thereof, shall receive on a *pari passu* basis distributions from the PBF II Liquidating Trust on account of their Allowed Claims.

**5.5**    **Class 3A (PBF Interests).** Each holder of an Allowed PBF Interest shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed PBF Interest, periodic distributions from the PBF Liquidating Trust of its share on account of its Allowed PBF Interest to be paid by the PBF Liquidating Trust on dates to be determined in the reasonable discretion of the PBF Liquidating Trustee.  Notwithstanding the foregoing, Allowed PBF Interests are subordinated to Allowed Class 1A (PBF Limited Partner Unsecured Claims) and Class 2A (Other PBF General Unsecured Claims).  Accordingly, holders of Allowed PBF Interests shall not receive any distribution from the PBF Liquidating Trust on account of their

Allowed PBF Interest unless and until holders of Allowed Class 1A and Class 2A Claims have been satisfied in full.

      **5.6**      **Class 3B (PBF II Interests).** Each holder of an Allowed PBF II Interest shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed PBF II Interest, periodic distributions from the PBF II Liquidating Trust of its share on account of its Allowed PBF II Interest to be paid by the PBF II Liquidating Trust on dates to be determined in the reasonable discretion of the PBF II Liquidating Trustee. Notwithstanding the foregoing, Allowed PBF II Interests are subordinated to Allowed Class 1B (PBF II Limited Partner Unsecured Claims) and Class 2B (Other PBF II General Unsecured Claims). Accordingly, holders of Allowed PBF II Interests shall not receive any distribution from the PBF II Liquidating Trust on account of their Allowed PBF II Interest unless and until holders of Allowed Class 1B and Class 2B Claims have been satisfied in full.

## ARTICLE 6

## TREATMENT OF EXECUTORY CONTRACTS

      **6.1**      **Rejection.** Except for those executory contracts set forth on Schedule 6.1 that are assumed pursuant to this Plan, if any, all executory contracts and unexpired leases of the Debtors shall be rejected pursuant to section 365 of Bankruptcy Code; provided, however, that neither the inclusion of a contract or lease on Schedule 6.1 hereto nor anything contained in this Article 6 shall constitute an admission by any Debtor that such contract or lease is an executory contract or that any Debtor or its successors and assigns, including, but not limited to, the Liquidating Trusts, has any liability thereunder. To the extent any loan agreement pursuant to which any Debtor is lender is deemed to be an executory contract within the meaning of 365 of the Bankruptcy Code, rejection of such loan agreement shall not, by itself, eliminate the

borrower's obligations thereunder or cause any Debtor's Liens, security interests or ownership rights to be released or extinguished. For the avoidance of any doubt, this Section 6.1 shall apply to any and all contracts or engagements the Debtors may have with professionals, including, but not limited to, attorneys, auditors and accountants.

       6.2     **Approval of Rejection; Rejection Damages Claims Bar Date.** The Confirmation Order shall constitute an Order of the Bankruptcy Court approving the rejection of executory contracts under Section 6.1 above pursuant to Bankruptcy Code section 365 as of the Effective Date. Any Claim for damages arising from any such rejection must be Filed within thirty (30) days after the mailing of notice of the entry of the Confirmation Order, or such Claim shall be forever barred, shall not be enforceable against the Debtors, their Estates, the Liquidating Trusts, the Liquidating Trustee, or any of their respective properties and shall receive no distribution under the Plan or otherwise on account of such Claim.

## ARTICLE 7

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

       7.1     **The Liquidating Trusts**.

       7.1.1     *Establishment of the Liquidating Trusts*. On the Effective Date, the Trustee, on behalf of the Debtors and the Beneficiaries, shall execute the Liquidating Trust Agreements and take all steps necessary to establish the Liquidating Trusts.

       7.1.2     *Purpose of Liquidating Trusts*. The Liquidating Trusts are being established for the sole purpose of liquidating the respective Debtor's Assets and distributing the proceeds thereof to certain holders of Allowed Claims and Interests in each of the Debtors, as identified in and prescribed by this Plan. The Liquidating Trusts shall not continue or engage in any trade or business, except to the extent reasonably necessary to, and consistent with, the

liquidating purpose of the Liquidating Trusts. Unless otherwise required by law, it is intended that all parties shall treat the Liquidating Trusts each as a liquidating trust for all federal income tax purposes.

        **7.1.3**     *Contribution of Assets to the Liquidating Trusts.* On the Effective Date of the Plan, each of the Debtors shall transfer all of their respective Assets to the Beneficiaries of the Liquidating Trusts, which shall contribute such Assets to the Liquidating Trusts pursuant to the terms of the Liquidating Trust Agreements and the Pro Rata Allocation Formula.   Thereafter, pursuant to the terms of the Onshore/Offshore Allocation Formula, proceeds from the Kaufman Rossin Settlement Agreement will be distributed to the Liquidating Trusts. Except as set forth below, all Assets shall be transferred and contributed free and clear of all Liens, Claims, interests and encumbrances.  Title to all Assets contributed to the Liquidating Trusts shall vest in the respective Liquidating Trust on the Effective Date following the transfer. For the avoidance of any doubt, following the contribution of Assets to the Liquidating Trusts pursuant to this Section 7.1.3 and the Liquidating Trust Agreements, the Liquidating Trustee shall have standing to pursue Litigation Claims on behalf of the Liquidating Trusts subject only to any limitations set forth in this Article 7 or the Liquidating Trust Agreements.

        **7.1.4**     *PBF Liquidating Trust Management.* Barry Mukamal shall be the PBF Liquidating Trustee with the power and authority set forth in the PBF Liquidating Trust Agreement.   As a condition to serving as PBF Liquidating Trustee, Barry Mukamal, and any successor trustee, is required to and shall post a bond in favor of the PBF Liquidating Trust in an amount not less than the amount of Cash held by the PBF Liquidating Trust, which bond shall be in substantially the form as that required by the United States Trustee's Office for trustees serving in bankruptcy cases within the Southern District of Florida.  For the avoidance of any

doubt, the PBF Liquidating Trust shall post and be responsible for all costs associated with the posting of the foregoing bond including costs associated with such bond.

       **7.1.5**    *PBF Liquidating Trust Structure.* As more fully set forth in the PBF Liquidating Trust Agreement, the PBF Liquidating Trustee shall oversee and direct the PBF Liquidating Trust's operations and activities, including the retention of counsel, decisions to pursue or not pursue Litigation Claims belonging solely to the PBF Liquidating Trust and its Beneficiaries, and settlement of any such Litigation Claims belonging solely to the PBF Liquidating Trust and its Beneficiaries.  In any event, any compromise or settlement of any PBF Litigation Claim shall be subject to the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

       **7.1.6**    *PBF II Liquidating Trust Management.* Barry Mukamal shall be the PBF II Liquidating Trustee with the power and authority set forth in the PBF II Liquidating Trust Agreement and subject to the power and authority granted to the PBF II Liquidating Trust Monitor in this Plan and the PBF II Liquidating Trust Agreement.  As a condition to serving as PBF II Liquidating Trustee, Barry Mukamal, and any successor trustee, is required to and shall post a bond in favor of the PBF II Liquidating Trust in an amount not less than the amount of Cash held by the PBF II Liquidating Trust, which bond shall be in substantially the form as that required by the United States Trustee's Office for trustees serving in bankruptcy cases within the Southern District of Florida.  For the avoidance of any doubt, the PBF II Liquidating Trust shall post and be responsible for all costs associated with the posting of the foregoing bond including costs associated with such bond.

        **7.1.7**  *PBF II Liquidating Trust Monitor.*  Geoffrey Varga, as Joint Official Liquidator for Offshore Funds shall be the PBF II Liquidating Trust Monitor with the power and authority set forth in the PBF II Liquidating Trust Agreement.

        **7.1.8**  *PBF II Liquidating Trust Structure.* As more fully set forth in the PBF II Liquidating Trust Agreement, and except as set forth in this Section 7.1.8, the PBF II Liquidating Trustee shall oversee and direct the PBF II Liquidating Trust's operations and activities.  The PBF II Liquidating Trustee and the PBF II Liquidating Trust Monitor shall coordinate the analysis of potential Litigation Claims of the PBF II Liquidating Trust. Notwithstanding the foregoing, or anything in the Plan to the contrary, with respect to any PBF II Litigation Claims, the PBF II Liquidating Trust Monitor shall, in his sole discretion: (1) determine which PBF II Litigation Claims should be pursued, (2) approve of the retention of professionals other than Meland Russin & Budwick, P.A., if any, to pursue such PBF II Litigation Claims, and (3) determine the terms on which any such PBF II Litigation Claims should be resolved by settlement or otherwise.  In any event, any compromise or settlement of any PBF II Litigation Claims shall be subject to the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.  Any communications between the PBF II Liquidating Trustee and the PBF II Liquidating Trust Monitor related to any third party litigation or the Petters Bankruptcy Cases shall be subject to a common interest privilege.

        **7.1.9**  *Approval of Settlement.*  Subject to approval of the Bankruptcy Court, the PBF Liquidating Trustee shall have the authority in his sole discretion to settle or resolve any Litigation Claim to which the PBF Liquidating Trust alone has an interest.  To the extent any settlement or resolution of a Litigation Claim requires the release or compromise of any Litigation Claim in which the PBF II Liquidating Trust has an interest, the consent of the

PBF II Liquidating Trust Monitor shall be obtained in advance of such settlement or resolution. The settlement or release of any Litigation Claim of the PBF Liquidating Trust pursuant to this Section 7.1.9 shall be subject to the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

       **7.1.10** *Allocation of Costs and Expenses of the Liquidating Trusts.* All costs and expenses distinctly incurred by one of the Liquidating Trusts shall be the obligation of the respective Liquidating Trust and shall be payable from the Trust Assets of such Liquidating Trust. Compensation of the Liquidating Trustee will be paid from the Trust Assets of the respective Liquidating Trust pursuant to the provisions of section 326 of the Bankruptcy Code. However, any professional fees, costs and expenses incurred on behalf of both of the Liquidating Trusts shall be the obligation of both Liquidating Trusts, payable by each according to the Pro Rata Allocation Formula set forth herein. Notwithstanding anything herein to the contrary, after the Effective Date, and without providing notice to or obtaining the approval of any party, the Liquidating Trustee shall be authorized pursuant to Sections 4.4(c) and 7.6(e) of the PBF II Liquidating Trust Agreement to pay on a monthly basis the reasonable fees and expenses incurred by the PBF II Liquidating Trust Monitor. The PBF II Liquidating Trust Monitor shall submit an application to the Bankruptcy Court no later than every four (4) months starting from the Effective Date for final approval of the fees and expenses paid to the PBF II Liquidating Trust Monitor in connection with carrying out its duties consistent with the Plan and the Liquidating Trust Agreement. Any such payments shall be payable from the Trust Assets of the Liquidating Trusts.

       **7.1.11** *Compensation of Professionals Retained by the Liquidating Trustees and the PBF II Liquidating Trust Monitor.* Professionals retained by the PBF II

Liquidating Trust Monitor and the Liquidating Trustee shall be entitled to monthly interim compensation for fees and expenses incurred in carrying out their duties consistent with this Plan and the Liquidating Trust Agreements; provided, however that the PBF II Liquidating Trust Monitor or the Liquidating Trustee shall provide to the other, and the United States Trustee, notice of such requested fees and expenses on a monthly basis.  Following such notice, if no objections to the fees and expenses set forth in the monthly statement are received in writing within 10 business days, 100% of such professional's fees and expenses shall be paid.  Notice of and objections to such fees and expenses shall be made via e-mail and/or facsimile.  If objections to the fees and expenses are made and cannot be resolved, such objections will be heard and resolved by the Bankruptcy Court.  Any such fees and expenses shall be payable from the Trust Assets of the Liquidating Trusts.  The PBF II Liquidating Trust Monitor and the Liquidating Trustee shall, no less frequently than once every four (4) months, submit applications to the Bankruptcy Court for final approval of reimbursement of fees and expenses paid to their professionals.

The Liquidating Trustees' general and litigation counsel shall be Meland Russin & Budwick, P.A.  The terms of compensation for Meland Russin & Budwick, P.A. shall be the same in all respects as those requested in the Trustee's Motion to Approve Hybrid Form of Compensation for Litigation Counsel, as may be amended with the consent of Meland Russin & Budwick, P.A. and as approved by the Bankruptcy Court.  The PBF II Liquidating Trust Monitor's general counsel shall be Reed Smith LLP and Levine Kellogg Lehman Schneider & Grossman LLP and the professionals at those firms shall be compensated at 75% as to Reed Smith and 100% as to Levine Kellogg of the firm's respective standard billing rates, respectively.

        **7.1.12** *Resignation and Removal of the Liquidating Trustee*.    The Liquidating Trustee may resign and be discharged from any future obligations and liabilities under the Liquidating Trust Agreement by giving written notice thereof to the Bankruptcy Court at least thirty (30) days prior to the effective date of such resignation. Such resignation shall become effective on the date specified in such notice.  The Liquidating Trustee may be removed at any time by order of the Bankruptcy Court upon motion by any party in interest pursuant to the standard under applicable law for removal of a Chapter 7 trustee.  Upon any such removal, such removed Liquidating Trustee shall be entitled to any reimbursement and indemnification set forth in the Liquidating Trust Agreement which remain due and owing to such Liquidating Trustee at the time of such removal.  If, at any time, the Liquidating Trustee shall give notice of his intent to resign pursuant to Section 7.7 of the Liquidating Trust Agreement, or be removed or shall become incapable of acting, counsel to the Liquidating Trustee shall provide notice thereof to the Bankruptcy Court.  The PBF II Liquidating Trust Monitor, with the approval of the Bankruptcy Court, shall designate a successor liquidating trustee for the PBF II Liquidating Trust and the Office of the United States Trustee, with the approval of the Bankruptcy Court, shall designate a successor liquidating trustee for the PBF Liquidating Trust.

        **7.1.13** *Resignation and Removal of the PBF II Liquidating Trust Monitor*. The PBF II Liquidating Trust Monitor may resign and be discharged from any future obligations and liabilities hereunder by giving written notice thereof to the Bankruptcy Court at least thirty (30) days prior to the effective date of such resignation. Such resignation shall become effective on the date specified in such notice.  If, at any time, the PBF II Liquidating Trust Monitor shall give notice of his intent to resign or shall become incapable of acting, counsel to the PBF II Liquidating Trust Monitor shall provide notice thereof to the Bankruptcy Court.  The PBF II

Liquidating Trust Monitor, in his sole discretion, shall designate a successor liquidating trust monitor to act under the Liquidating Trust Agreement. Any successor PBF II Liquidating Trust Monitor appointed hereunder shall execute an instrument accepting such appointment hereunder and shall deliver counterparts thereof to the Bankruptcy Court. Thereupon, such successor PBF II Liquidating Trust Monitor shall, without any further act, become vested with all of the estates, properties, rights, powers, trusts and duties of his predecessor in the PBF II Liquidating Trust, with like effect as if originally named herein. The PBF II Liquidating Trust Monitor may be removed at any time by order of the Bankruptcy Court upon motion by any party in interest pursuant to the standard under applicable law for removal of a Chapter 7 trustee.

       **7.1.14** *Continuation of Automatic Stay.* In furtherance of the implementation of the Plan, except as otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect and apply to all Creditors and Beneficiaries holding Claims against the Debtors, the Estates, the Assets, the Liquidating Trustee, the Liquidating Trusts and the Trust Assets until the Final Distribution Date.

       **7.2** **Distribution of Kaufman Rossin Settlement Payment.** The Kaufman Rossin Settlement Payment shall be distributed to the Liquidating Trusts and then distributed pursuant to the Onshore/Offshore Allocation Formula, pursuant to which, in the event the Kaufman Rossin Settlement Payment is $9,600,000, then the PBF Liquidating Trust shall receive for its benefit $1,728,000.00, which is 18% of the Kaufman Rossin Settlement Payment; the PBF II Liquidating Trust shall receive for its benefit $1,968,000.00, which is 20.5% of the Kaufman Rossin Settlement Payment; and the Offshore Funds shall directly receive the remaining

$5,904,000.00, which is 61.5% of the Kaufman Rossin Settlement Payment. When the Liquidating Trustee distributes from the Liquidating Trusts the Kaufman Rossin Settlement Payments, his fee shall be calculated pursuant to 11 U.S.C. § 326. However, the Liquidating Trustee's fee in connection with the payment to be made to the Offshore Funds shall be capped at and equal to .75% of such payment and paid from the funds paid to the Offshore Funds. For the avoidance of any doubt, and notwithstanding anything herein to the contrary, for Federal income tax purposes, and pursuant to Revenue Procedure 94-95, the Kaufman Rossin Settlement Payment shall be deemed to be transferred to the Beneficiaries and subsequently deemed to have been transferred from the Beneficiaries to the Liquidating Trusts pursuant to the Onshore/Offshore Allocation Formula.

      **7.3      Termination of the Debtors.** As soon as practicable after the Effective Date, each of the Debtors will be dissolved and cease to exist for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; provided, however, that pursuant to section 1124(b) of the Bankruptcy Code, the Liquidating Trustee shall be authorized to file each Debtor's final tax returns, and shall be authorized to file and shall file with the official public office for keeping corporate records in each Debtor's state of incorporation a certificate of dissolution or equivalent document. Such a certificate of dissolution may be executed by the Liquidating Trustee without the need for any action or approval by any other party. From and after the Effective Date, the Debtors (i) for all purposes shall be deemed to have withdrawn their business operations from any state in which they were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) shall not be liable in any manner to

any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

    **7.4  Closing of the Chapter 11 Cases.** Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Chapter 11 Cases, when all Assets contributed to the Liquidating Trusts have been liquidated and converted into Cash (other than those Assets abandoned by the Liquidating Trusts), and such Cash has been distributed in accordance with the Liquidating Trust Agreements and this Plan, and the Final Distribution made, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**ARTICLE 8**

**POSTCONFIRMATION LITIGATION**

    **8.1  Transfer and Enforcement of Causes of Action.** Pursuant to section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in this Plan or the Confirmation Order, after transfer of the Assets to the Liquidating Trusts pursuant to Section 7.1.3 hereof, the Liquidating Trustee will have the exclusive right to enforce any and all Litigation Claims against any Entity and rights of the Debtors that arose before or after the Petition Date, including, but not limited to, the rights and powers of a trustee and debtor-in-possession, against any Entity whatsoever.  Notwithstanding the foregoing, in the event the PBF II Liquidating Trustee opts not to pursue a PBF II Litigation Claim, the PBF II Liquidating Trust Monitor may make a written demand upon the PBF II Liquidating Trustee that the PBF II Liquidating Trustee pursue such PBF II Litigation Claim.  In the event the PBF II Liquidating Trustee refuses to pursue such PBF II Litigation Claim, the PBF II Liquidating Trust Monitor shall be authorized to pursue such PBF II Litigation Claim on behalf of the PBF II Liquidating

Trust with the same rights possessed by the PBF II Liquidating Trustee. The PBF II Liquidating Trustee shall be kept informed as to the progress of the action and any compromise shall be subject to Bankruptcy Court approval pursuant to Rule 9019.

        **8.2**     **Objections to Claims.** Subject to applicable law, and except as otherwise set forth herein, from and after the Effective Date, the Liquidating Trustee, the PBF II Liquidating Trust Monitor and any Creditor shall have the authority to litigate to judgment objections to Claims or Interests pursuant to applicable procedures established by, or grounds set forth in, the Bankruptcy Code, the Bankruptcy Rules, the Liquidating Trust Agreements and this Plan. Any compromise of any Claim objection shall be subject to Bankruptcy Court approval. The deadline within which objections to Claims or Interests may be filed shall be one year from the Effective Date.

        **8.3**     **Allowance of Palm Beach Offshore Claims.** The Trustee has received and reviewed the Palm Beach Offshore Claims, including all information supporting such Claims. Notwithstanding anything to the contrary in this Plan or in the PBF II Liquidating Trust Agreement, upon confirmation of the Plan, the Palm Beach Offshore Claims shall be deemed Allowed Class 2B Claims (Other PBF II General Unsecured Claims) upon entry of the Confirmation Order and shall not be subject to dispute, challenge or reduction in amount by any party-in-interest including without limitation the PBF II Liquidating Trustee, although the Palm Beach Offshore Claims shall be reduced by the amount of the Kaufman Rossin Settlement Payment received by the Offshore Funds. The Palm Beach Offshore Claims will be treated as set forth in Section 5.4 of the Plan.

## ARTICLE 9

## DISTRIBUTIONS

**9.1** **Delivery of Distributions in General.** Distributions to holders of Allowed Claims and Interests shall be made: (a) at the addresses set forth in the proofs of Claim Filed by such holders; (b) at the addresses set forth in any written notices of address change Filed with the Bankruptcy Court or delivered to the Liquidating Trustee after the date on which any related proof of Claim was Filed; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim or Interest if no proof of Claim has been Filed and the Liquidating Trustee has not received a written notice of a change of address.

**9.2** **Cash Payments.** Except as otherwise provided in the Liquidating Trust Agreements or the Confirmation Order, Cash payments to be made pursuant to the Plan shall be made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

**9.3** **Interest on Claims.**  Postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a Final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim. To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Allowed Claim first and then, to the extent the consideration exceeds the principal amount of the Allowed Claim, to the portion of such Allowed Claim representing accrued but unpaid interest.

9.4    **No *De Minimis* Distributions.** Other than in the Final Distribution, no payment of Cash in an amount of less than $250.00 shall be required to be made on account of any Allowed Claim.

9.5    **Face Amount.** Unless otherwise expressly set forth herein with respect to a specific Claim or Class of Claims, for the purpose of the provisions of this Article, the "Face Amount" of a Disputed Claim means the amount set forth on the proof of Claim, unless no proof of Claim has been timely Filed or deemed Filed, in which case the Face Amount shall be zero.

9.6    **Undeliverable Distributions.** If the distribution check to any holder of an Allowed Claim or Interest is not cashed within 90 days after issuance by the Liquidating Trustee, a stop payment order shall be given with respect to the check and no further distributions shall be made to such holder on account of such Allowed Claim or Interest. Such Allowed Claim or Interest shall be discharged and the holder of such Allowed Claim or Interest shall be forever barred from asserting such Claim against the Liquidating Trusts, the Liquidating Trustee, the Debtors, their Estates or their respective property. In such cases, any Cash held for distribution on account of such Claim shall remain property of the respective Liquidating Trust and be distributed to other Creditors in accordance with the terms of this Plan and the Liquidating Trust Agreements.

9.7    **Interim Distributions.** Unless otherwise provided in the Plan, the Liquidating Trustee in his discretion may make periodic distributions to the Beneficiaries entitled thereto in accordance with Section 5.1 of the Liquidating Trust Agreements.

9.8    **Final Distribution.** The Liquidating Trustee shall make a final distribution in accordance with Section 5.5 of the Liquidating Trust Agreements.

**9.9     Allowed Interests Subordinated.**  Notwithstanding anything herein to the contrary, Allowed Interests shall be subordinated to Allowed Claims for purpose of distributions pursuant to Sections 5.5 and 5.6 of this Plan.  Accordingly, (i) holders of Allowed PBF Interests shall not receive any distribution from the PBF Liquidating Trust on account of their Allowed PBF Interest unless and until holders of Allowed Class 1A and Class 2A Claims have been satisfied in full, and (ii) holders of Allowed PBF II Interests shall not receive any distribution from the PBF II Liquidating Trust on account of their Allowed PBF II Interest unless and until holders of Allowed Class 1B and Class 2B Claims have been satisfied in full.

**9.10     Disputed Claims Reserves.** The Liquidating Trustee shall establish reserves for Disputed Claims in accordance with the terms of the Liquidating Trust Agreements.

**9.11     Compliance with Tax Requirements.** In connection with the Plan and the distributions made in accordance thereto, to the extent applicable, the Liquidating Trusts shall comply with all tax withholding and reporting requirements imposed by any governmental unit, if any, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

## ARTICLE 10

## CONDITIONS PRECEDENT

**10.1     Conditions to Confirmation.** As a condition to entry of the Confirmation Order:

**10.1.1** The Confirmation Order shall be in form and substance satisfactory to the Trustee and the JOL including providing for the approval of the Kaufman Rossin Settlement Agreement.

**10.1.2.** This section is reserved.

**10.2    Conditions to the Effective Date.** The Plan shall not become effective and the Effective Date shall not occur unless and until:

**10.2.1**    The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Trustee and the JOL;

**10.2.2**    No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this Section 10.2 are satisfied, or, if permitted, waived; and

**10.2.3**    All documents, instruments and agreements, in form and substance satisfactory to the Trustee and the JOL, provided for under this Plan or necessary to implement this Plan, including, without limitation, the Liquidating Trust Agreements, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

**10.3    Termination of Plan for Failure To Become Effective.** If the Effective Date shall not have occurred on or prior to the date that is forty-five (45) days after the Confirmation Date, then this Plan shall terminate and be of no further force or effect unless the provisions of this Section are waived in writing by the Trustee and the JOL.

**10.4    Waiver of Conditions.** The Trustee, with the written consent of the JOL, may waive any or all of the conditions set forth in Sections 10.1 and/or 10.2 (other than the conditions set forth in Sections 10.2.1 and 10.2.3) of this Plan.

10.5    **Notice of Effective Date.** On the Effective Date, or as soon thereafter as is reasonably practicable, the Liquidating Trustee shall file with the Bankruptcy Court a "Notice of Effective Date" in a form reasonably acceptable to the Liquidating Trustee in his sole discretion, which notice shall constitute appropriate and adequate notice that this Plan has become effective, provided, however, that the Liquidating Trustee shall have no obligation to notify any Person other than counsel to the JOL of such fact. The Plan shall be deemed to be effective as of 12:01 a.m., prevailing Eastern time, on the Effective Date specified in such filing. A courtesy copy of the Notice of Effective Date may be sent by first class mail, postage prepaid (or at the Trustee's option, by courier or facsimile) to those Persons who have filed with the Bankruptcy Court requests for notices pursuant to Bankruptcy Rule 2002.

## ARTICLE 11

## EFFECT OF CONFIRMATION

11.1    **Jurisdiction of Court.** Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including among other things, jurisdiction over the subject matters set forth in Article 12 of this Plan.

11.2    **Binding Effect.** Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or Interest in the Debtors and their respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under this Plan and whether or not such holder has accepted the Plan.

**11.3    Kaufman    Rossin    Settlement    Agreement.**    Upon entry of the Confirmation Order, the Kaufman Rossin Settlement Agreement shall be deemed approved in all respects and the parties to the agreement shall be deemed authorized and directed to implement each of all of its terms.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's finding of each of the following as well as the approval of the Bar Order contemplated by the Kaufman Rossin Settlement Agreement:

**11.3.1**  The Bankruptcy Court has jurisdiction over the Kaufman Rossin Settlement Agreement pursuant to 28 U.S.C. § 1334, and authority to enter a Bar Order pursuant to 11 U.S.C.  § 105(a).

**11.3.2**  The form and means of the notice of the Bar Order and this Plan are determined to have been the best notice practicable under the circumstances and to be good and sufficient notice to all persons whose interests would or could be affected by the Bar Order, including, but not limited to, (1) all creditors of either of the Debtors; (2) the JOL, on behalf the Offshore Funds; (3) all shareholders and creditors of the Offshore Funds; (4) all limited partners of either of the Debtors; (5) all general partner(s) of either of the Debtors; and (6) all entities that acted or are acting for or on behalf of the limited and general partners of the Debtors.

**11.3.3**  Entry of a Bar Order is appropriate in order to achieve the finality and repose that is contemplated as a term of the Kaufman Rossin Settlement Agreement and good cause therefore exists for the entry of a Bar Order, and the Bar Order is fair and equitable. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 495 96 (11th Cir. 1992); *see also In re Munford, Inc.*, 97 F.3d 449, 454 55 (11th Cir. 1996); *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995); *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155 (4th Cir. 1991).  The Bar Order shall be interpreted as broadly as possible so as to effectuate the purposes stated herein.

**11.3.4** *In consideration of the payments to be made by Kaufman Rossin pursuant to the Kaufman Rossin Settlement Agreement, which will enable the Trustee to confirm this Plan and make certain cash distributions as provided for herein, the Releasors are deemed to have released the Barred Claims. Specifically, Releasors, as defined in Section 1.77, are permanently barred and enjoined from commencing, prosecuting, or asserting either directly or in any other capacity, against Kaufman Rossin, any and all liabilities, judgments, rights, claims, cross claims, counterclaims, third party claims, demands, suits, matters, obligations, damages, debts, losses, costs, actions and causes of action, of every kind and description, arising under common law, rule, regulation or statute, whether arising under state or federal law, whether presently known or unknown that any Releasor now has, ever had or may claim to have in the future that is a Barred Claim; <u>provided</u> that (a) the Bar Order does not release, or enjoin any of Releasors from commencing, prosecuting, or asserting any claims to interpret or enforce the terms of the Kaufman Rossin Settlement Agreement or the Bar Order, and (b) the Bar Order does not release or enjoin any of Releasors from commencing, prosecuting, or asserting any claims against any party other than Kaufman Rossin; and (c) the Bar Order does not release or enjoin any of Releasors from commencing, prosecuting, or asserting any claims against the Kaufman Rossin Affiliated Parties other than those based upon or directly to the professional services provided by Kaufman Rossin to the Debtors or the Offshore Funds.*

**11.3.5** The Bankruptcy Court retains exclusive jurisdiction to enforce or interpret the Bar Order.

**11.4** **Exculpation.** *Except as otherwise specifically provided in this Plan, none of the Debtors, the Trustee, the JOL or any of such parties' employees, representatives, advisors, attorneys, financial advisors, investment bankers or agents or any of such parties' successors*

*and assigns, shall have or incur, and are hereby released from, any Claim, obligation, cause of action or liability to one another or to any holder of a Claim or an Interest, or any other party in interest, or any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their gross negligence or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities (if any) under this Plan.*

*Notwithstanding any other provision of this Plan, neither any holder of a Claim or Interest, or other party in interest, nor any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any Debtor, the Trustee, the JOL or any of such parties' employees, representatives, advisors, attorneys, financial advisors, investment bankers or agents or such parties successors and assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for such Persons' gross negligence or willful misconduct.*

**11.5    Injunctions.** *Except as otherwise specifically provided in the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims, rights, causes of action, liabilities or any Interests based upon any act or omission, transaction or other activity*

*of any kind or nature related to the Debtors or the Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in this Plan or the Confirmation Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Interest and regardless of whether such Entity has voted to accept the Plan, and any successors, assigns or representatives of such Entities shall be precluded and permanently enjoined on and after the Effective Date from (a) the commencement or continuation in any manner of any claim, action or other proceeding of any kind with respect to any Claim, Interest or any other right or claim against the Debtors, or any assets of the Debtors which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any Claim, Interest or any other right or claim against the Debtors, or any assets of the Debtors which such Entities possessed or may possess prior to the Effective Date, (c) the creation, perfection or enforcement of any encumbrance of any kind with respect to any Claim, Interest or any other right or claim against the Debtors or any assets of the Debtors which they possessed or may possess prior to the Effective Date, and (d) the assertion of any Claims that are released hereby.*

       **11.6    Limitation of Liability.** *Except as expressly set forth in the Plan, following the Effective Date, none of the Debtors, the Trustee, the JOL or any of such parties' employees, advisors, attorneys, professionals or agents shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or any contract, instrument, release or other agreement or document created in connection with this Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct.*

## ARTICLE 12

## <u>RETENTION OF JURISDICTION</u>

**12.1    Ongoing  Bankruptcy Court Jurisdiction.** Notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date and the transfer of the Assets to the Liquidating Trusts, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases after the Effective Date to the fullest extent legally permissible, including but not limited to jurisdiction to, among other things:

**12.1.1**    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of, or subordinate for any purposes pursuant to Section 510, any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of all Claims and Interests;

**12.1.2**    Hear and determine any and all causes of action and rights of the Debtors that arose before or after the Petition Date that are expressly preserved pursuant to, among other things, section 1123(b)(3) of the Bankruptcy Code, are yet to be liquidated and are preserved for prosecution by the Liquidating Trustee or other appropriate party in interest, including any designee or successor, against any Person whatsoever (including, but not limited to, those parties listed on Schedule 1.52 hereto), on account of any and all Litigation Claims defined in Section 1.52 herein (including, but not limited to, all avoidance powers granted to the Debtors under the Bankruptcy Code and all causes of action and remedies granted pursuant to sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, and all non-avoidance actions owned by the Debtors' estates including, but not limited to,

claims of tort, breach of contract and claims lying in law or in equity, whether based in common law, Florida state law, another state's law, Federal law or otherwise);

        **12.1.3**    Grant or deny any applications for allowance of compensation for Professionals authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

        **12.1.4**    Resolve any matters relating to the assumption, assumption and assignment or rejection of any executory contract to which either Debtor is a party or with respect to which either of the Debtors may be liable, including without limitation the determination of whether such contract is executory for the purposes of section 365 of the Bankruptcy Code, and hear, determine and, if necessary, liquidate any Claims arising therefrom;

        **12.1.5**    Enter orders approving the Liquidating Trusts' post-Confirmation sale or other disposition of Trust Assets;

        **12.1.6**    Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and the Liquidating Trust Agreements;

        **12.1.7**    Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving any Debtor that may be pending in the Chapter 11 Cases on the Effective Date;

        **12.1.8**    Hear and determine matters concerning state, local or federal taxes in accordance with sections 346, 505 or 1146 of the Bankruptcy Code;

        **12.1.9**    Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Liquidating Trust Agreements, the Plan and the Confirmation Order;

**12.1.10**   Hear and determine any applications by the Liquidating Trustee to retain one or more professionals to assist the Liquidating Trustee in carrying out his duties and obligations under the respective Liquidating Trust Agreements;

**12.1.11**   Resolve any disputes relating to monthly fee invoices for allowance of compensation submitted by the Liquidating Trustee, the PBF II Liquidating Trust Monitor or their professionals;

**12.1.12**   Grant or deny any semi-annual application for allowance of compensation submitted by the PBF II Liquidating Trustee, the PBF II Liquidating Trust Monitor or their professionals;

**12.1.13**   Hear and determine any matters concerning the enforcement of the provisions of Article 11 of the Plan and any other exculpations, limitations of liability or injunctions contemplated by the Plan;

**12.1.14**   Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Liquidating Trust Agreements, the Plan or the Confirmation Order;

**12.1.15**   Permit the Trustee or the JOL, to the extent authorized pursuant to section 1127 of the Bankruptcy Code, to modify the Plan or any agreement or document created in connection with the Plan or remedy any defect or omission or reconcile any inconsistency in the Plan or any agreement or document created in connection with the Plan;

**12.1.16**   Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Liquidating Trust Agreements, the Plan or the Confirmation Order;

**12.1.17**    Enforce any injunctions entered in connection with or relating to the Plan or the Confirmation Order;

**12.1.18**    Enter and enforce such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or distributions pursuant to the Liquidating Trust Agreements or the Plan are enjoined or stayed;

**12.1.19**    Determine any other matters that may arise in connection with or relating to the Plan or any agreement or the Confirmation Order;

**12.1.20**    Order the complete or partial substantive consolidation of any non-Debtor Entity with or into either or both of the Liquidating Trusts *nunc pro tunc* to November 30, 2009 or otherwise;

**12.1.21**    Order the imposition of a Bar Order in favor of any Entity entering into a compromise of a Litigation Claim(s) with the Liquidating Trustee with identical scope, breadth and reach as that provided in connection with the Kaufman Rossin Settlement Agreement;

**12.1.22**    Enter any orders in aid of prior orders of the Bankruptcy Court; and

**12.1.23**    Enter a final decree closing the Chapter 11 Cases.

# ARTICLE 13

## ACCEPTANCE OR REJECTION OF THE PLAN

**13.1    Persons Entitled to Vote.** Classes 1A, 1B, 2A, 2B, 3A and 3B are Impaired.   Votes from holders of Class 1A, Class 1B, Class 2A and Class 2B Claims, and holders of Class 3A and Class 3B Interests, will be solicited.

13.2    **Acceptance by Impaired Classes.** An Impaired Class of Claims shall have accepted the Plan if (i) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

## ARTICLE 14

## MISCELLANEOUS PROVISIONS

14.1    **Modification of the Plan.** Subject to the restrictions on Plan modifications set forth in section 1127 of the Bankruptcy Code, and subject to the consent of the other, the Plan Proponents reserve the right to alter, amend or modify the Plan before its substantial consummation.

14.2    **Revocation of the Plan.** The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Plan Proponents revoke or withdraw the Plan, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors; (b) constitute an admission of any fact or legal conclusion by the Debtors or any other Entity; or (c) prejudice in any manner the rights of the Debtors in any further proceedings involving the Debtors.

14.3    **Governing Law.** Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in

connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws thereof.

14.4    **No Admissions.** If Confirmation or the Effective Date does not occur, nothing contained in the Plan or Disclosure Statement shall be deemed as an admission by the Debtors, the Plan Proponents or any other party with respect to any matter set forth therein or herein including, without limitation, liability on any Claim or the propriety of any Claims classification.  If the Effective Date does not occur within thirty (30) days following entry of the Confirmation Order, the Plan will be null and void and of no further effect.

14.5    **Severability of Plan Provisions.** If prior to Confirmation any term or provision of the Plan that does not govern the treatment of Claims or Interests is held by the Bankruptcy Court to be invalid, void or unenforceable, at the request of the Plan Proponents, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.6     Successors and Assigns.** The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**14.7     Exemption from Certain Transfer Taxes.** Pursuant to section 1146(c) of Bankruptcy Code, the issuance, transfer or exchange of any Security or the making or delivery of any instrument of transfer under this Plan may not be taxed under any law imposing a stamp tax, use tax, sales tax or similar tax.  Any sale of any Asset occurring before, after or upon the Effective Date shall be deemed to be in furtherance of this Plan.

**14.8     Preservation of Rights of Setoffs.** The Debtors, may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have against the holder of such Claims; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that the Debtors may have against such holder.

**14.9     No Injunctive Relief.** Except as otherwise provided in the Plan or Confirmation Order, no Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable, or other prospective relief.

**14.10    Non Business Day.** If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**14.11    Entire Agreement.** This Plan (together with the Liquidating Trust Agreements) sets forth the entire agreement and undertaking relating to the subject matter hereof

and supersedes all prior discussions and documents. The Debtors' Estates shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein.

      **14.12    Notices.** Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

**Counsel for the Chapter 11 Trustee**

      Michael S. Budwick, Esq.
      Meland Russin & Budwick, P.A.
      3000 Wachovia Financial Center
      200 South Biscayne Boulevard
      Miami, Florida 33131

**Counsel for the Joint Official Liquidator**

      Edward J. Estrada, Esq.
      Reed Smith LLP
      599 Lexington Avenue, 22nd Floor
      New York, New York 10022

         -and-

      Robin J. Rubens, Esq.
      Levine Kellogg Lehman Schneider & Grossman LLP
      201 South Biscayne Boulevard
      Miami Center – 34th Floor
      Miami, Florida  33131

Dated: August 27, 2010

              PALM BEACH FINANCE PARTNERS, L.P.

                /s/ Barry Mukamal
              _____
              By: Barry Mukamal
              Title: Chapter 11 Trustee of
              Palm Beach Finance Partners, L.P.

PALM BEACH FINANCE II, L.P.


_____/s/ Barry Mukamal_____
By: Barry Mukamal
Title: Chapter 11 Trustee of
Palm Beach Finance II, L.P.



PALM BEACH OFFSHORE, LTD.


_____/s/ Geoffrey Varga_____
By: Geoffrey Varga
Title: Joint Official Liquidator of
Palm Beach Offshore, Ltd.



PALM BEACH OFFSHORE II, LTD.


_____/s/ Geoffrey Varga_____
By: Geoffrey Varga
Title: Joint Official Liquidator of
Palm Beach Offshore II, Ltd.