**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:                                                    Chapter 11

PALM BEACH FINANCE PARTNERS, L.P.,          Case No. 09-36379-BKC-PGH
a Delaware limited partnership, *et al.*,[1]

                                                          Jointly Administered

      Debtors.

_____/


**SECOND AMENDED DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF
LIQUIDATION OF BARRY MUKAMAL, AS CHAPTER 11 TRUSTEE OF PALM
BEACH FINANCE PARTNERS, L.P. AND PALM BEACH FINANCE II, L.P., AND
GEOFFREY VARGA, AS JOINT OFFICIAL LIQUIDATOR OF PALM BEACH
OFFSHORE, LTD. AND PALM BEACH OFFSHORE II LIMITED, LTD.**


September 3, 2010

MELAND RUSSIN & BUDWICK, P.A.
3000 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Counsel for Barry Mukamal, as Chapter 11 Trustee of the Debtors

REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
-and-
LEVINE KELLOGG LEHMAN SCHNEIDER & GROSSMAN LLP
201 South Biscayne Boulevard
Miami Center – 34th Floor
Miami, Florida  33131
Counsel for Geoffrey Varga, as Joint Official Liquidator of Palm Beach Offshore, Ltd.
and Palm Beach Offshore II, Ltd.

_____

[1] The address and last four digits of the taxpayer identification number for each of the Debtors follows in parenthesis: (i) Palm Beach Finance Partners, L.P., 3601 PGA Blvd, Suite 301, Palm Beach Gardens, FL 33410 (TIN 9943); and (ii) Palm Beach Finance II, L.P., 3601 PGA Blvd, Suite 301, Palm Beach Gardens, FL 33410 (TIN 0680).

# Table of Contents

**Page**

I.      INTRODUCTION ............................................................................................................1

      A.      Overview of the Plan ......................................................................................3
      B.      Voting Instructions.........................................................................................6
      C.      Confirmation of the Plan by the Bankruptcy Court .................................8

II.     BACKGROUND OF THE DEBTORS .......................................................................9

      A.      Petters Case Factual Summary....................................................................9
      B.      The Petters-Related Companies' Bankruptcies ........................................9

III.    THE CHAPTER 11 CASES ......................................................................................10

      A.      The Palm Beach Funds' Bankruptcy Proceedings.................................10
      B.      The Debtors' Proposed Professionals .......................................................11
      C.      Litigations Commenced by Debtors ........................................................12
      D.      The Claims Process......................................................................................15
      E.      Litigation Claims of the Estates ...............................................................16

IV.     CHAPTER 11 PLAN ...............................................................................................16

      A.      Plan Overview..............................................................................................17
      B.      Plan Summary..............................................................................................17
      C.      Treatment of Claims and Interests ..........................................................19
      D.      Treatment of Executory Contracts ...........................................................22
      E.      Liquidating Trust Agreement....................................................................22
      F.      Termination of the Debtors........................................................................33
      G.      Closing of the Chapter 11 Cases ..............................................................34
      H.      Objections to Claims...................................................................................34
      I.      Distributions Under the Plan.....................................................................35
      J.      Conditions to Confirmation.......................................................................36
      K.      Conditions to the Effective Date ...............................................................36
      L.      Modification of the Plan .............................................................................37
      M.      Effect of Confirmation................................................................................37
      N.      Exculpation, Injunction, and Limitation of Liability .............................38
      O.      Retention of Jurisdiction ............................................................................40
      P.      No Admissions.............................................................................................42
      Q.      Preservation of Rights of Setoffs ..............................................................42

V.      CONFIRMATION OF THE PLAN............................................................................43

      A.      Confirmation Hearing.................................................................................43
      B.      Confirmation Standards..............................................................................43

VI.     FUNDING AND FEASIBILITY OF THE PLAN ....................................................43

      A.      Funding of the Plan.....................................................................................43

US_ACTIVE-104434022.1

B.     Best Interests Test ................................................................................................ 44

C.     Avoidance Action Analysis ................................................................................ 44

D.     Feasibility............................................................................................................ 45

E.     Risk Factors Associated with the Plan................................................................ 45

VII.     ALTERNATIVES TO THE PLAN .................................................................................. 46

VIII.     CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS ................................. 47

A.     In General............................................................................................................ 47

A.     U.S. Federal Income Tax Consequences to the Debtors; Discharge of Indebtedness for Debtors and the Debtors' Partners.............................................. 48

B.     U.S. Federal Income Tax Treatment of the Liquidating Trust ............................ 49

C.     Disputed Claims Reserve .................................................................................... 50

D.     U.S. Federal Income Tax Consequences to Holders of Claims........................... 50

E.     Interest Income with respect to Allowed Claims................................................. 51

F.     Backup Withholding and Information Reporting ................................................. 52

IX.     CONCLUSION................................................................................................................ 52

US_ACTIVE-104434022.1

## Exhibits To Amended Disclosure Statement

Exhibit A                Second Amended Joint Plan of Liquidation

US_ACTIVE-104434022.1

**AMENDED DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF
LIQUIDATION OF BARRY MUKAMAL, AS CHAPTER 11 TRUSTEE OF PALM
BEACH FINANCE PARTNERS, L.P. AND PALM BEACH FINANCE II, L.P., AND
GEOFFREY VARGA, AS JOINT OFFICIAL LIQUIDATOR OF PALM BEACH
OFFSHORE LTD. AND PALM BEACH OFFSHORE II, LTD.**

---

**THE PLAN PROPONENTS RESERVE THE RIGHT TO AMEND OR SUPPLEMENT
THIS PROPOSED AMENDED DISCLOSURE STATEMENT AT OR BEFORE THE
CONFIRMATION HEARING.**

---

**I.
INTRODUCTION**

Barry Mukamal, as Chapter 11 Trustee (the "Trustee") of Palm Beach Finance Partners,
L.P., a Delaware limited partnership, ("PBF") and Palm Beach Finance II, L.P., a Delaware
limited partnership, ("PBF II" and together with PBF, the "Debtors"), and Geoffrey Varga, as
Joint Official Liquidator of Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd. ("JOL"
and together with the Trustee, the "Plan Proponents") provide this Amended Disclosure
Statement (the "Disclosure Statement") to certain of the Debtors' impaired creditors to permit
such creditors to make an informed decision in voting to accept or reject the *Second Amended
Joint Plan of Liquidation of Barry Mukamal, as Chapter 11 Trustee of Palm Beach Finance
Partners, L.P. and Palm Beach Finance II, L.P., and Geoffrey Varga, as Joint Official
Liquidator of Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd.* (the "Plan") filed on
September 3, 2010 with the United States Bankruptcy Court for the Southern District of Florida,
West Palm Beach Division (the "Bankruptcy Court") in connection with the above-captioned
cases filed pursuant to Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

A copy of the Plan is attached to this Disclosure Statement as Exhibit A. Capitalized
terms used herein but not otherwise defined have the meanings assigned to such terms in the
Plan. Whenever the words "include," "includes" or "including" are used in this Disclosure
Statement, they are deemed to be followed by the words "without limitation."

This Disclosure Statement is presented to certain holders of Claims against, or Interests
in, the Debtors in accordance with the requirements of section 1125 of the United States
Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). Section 1125 of the
Bankruptcy Code requires that a disclosure statement provide information sufficient to enable a
hypothetical and reasonable investor, typical of the Debtors' creditors, to make an informed
judgment whether to accept or reject the Plan. This Disclosure Statement may not be relied upon
for any purpose other than that described above.

The Disclosure Statement is based on information in pleadings filed with the Bankruptcy
Court, information provided by the Debtors' management, information provided by the Trustee
and legal analysis by Meland Russin & Budwick, P.A., counsel for the Chapter 11 Trustee, and
Reed Smith LLP ("Reed Smith"), counsel for the JOL.

US_ACTIVE-104434022.1

THIS DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE, AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE ADEQUATELY INFORMED.  THIS INTRODUCTION IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN.

NO REPRESENTATIONS CONCERNING THE DEBTORS (PARTICULARLY AS TO THE VALUE OF THEIR PROPERTY) ARE AUTHORIZED BY THE PLAN PROPONENTS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR EACH OF THE PLAN PROPONENTS, WHO WILL IN TURN DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS CONCERNING THE FINANCIAL CONDITION OF THE DEBTORS AND THE OTHER INFORMATION CONTAINED HEREIN, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW EXCEPT AS EXPRESSLY SET FORTH HEREIN.  ACCORDINGLY, THE PLAN PROPONENTS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONCERNING THE DEBTORS OR THEIR FINANCIAL CONDITION IS ACCURATE OR COMPLETE. ANY PROJECTED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED FOR ILLUSTRATIVE PURPOSES ONLY, AND, BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, THE DEBTORS' ACTUAL RESULTS MAY NOT BE AS CONTEMPLATED HEREIN.

ALTHOUGH AN EFFORT HAS BEEN MADE TO BE ACCURATE AND THE PLAN PROPONENTS BELIEVE IN GOOD FAITH THAT THE INFORMATION HEREIN IS ACCURATE, THE PLAN PROPONENTS DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS IS CORRECT.  THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN.  EACH CREDITOR IS STRONGLY URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED.  THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS NOT BEEN ANY CHANGE IN THE FACTS SET FORTH SINCE THE DATE OF THIS DISCLOSURE STATEMENT.

US_ACTIVE-104434022.1

A STATEMENT OF THE ASSETS AND LIABILITIES OF THE DEBTORS AS OF THE DATE OF THE COMMENCEMENT OF THEIR CHAPTER 11 CASES IS ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, INTERESTS IN OR SECURITIES OF, THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISERS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.

Pursuant to the Bankruptcy Code, this Disclosure Statement and the Plan were filed on September 3, 2010. The Bankruptcy Court will hold a hearing on confirmation of the Plan beginning at 9:30 a.m. (prevailing Eastern time) on October 19, 2010, in the United States Bankruptcy Court for the Southern District of Florida (West Palm Beach Division), Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, West Palm Beach, FL 33401 (the "Confirmation Hearing"). At that Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the claimants, and will review a ballot report concerning votes cast for acceptance or rejection of the Plan.

### A. Overview of the Plan

THE FOLLOWING IS A BRIEF SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN. THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTES A SUMMARY ONLY AND IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN, THE LIQUIDATING TRUST AGREEMENTS, AND THE OTHER PLAN DOCUMENTS. CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE MORE DETAILED DESCRIPTION OF THE PLAN CONTAINED IN ARTICLE IV OF THIS DISCLOSURE STATEMENT AND THE PLAN ITSELF. THE PLAN IS ATTACHED AS **EXHIBIT A** TO THIS

US_ACTIVE-104434022.1

**DISCLOSURE STATEMENT. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.**

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization. The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances so as to maximize recoveries to its creditors. With this purpose in mind, businesses sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation. Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and equity interests in a debtor's bankruptcy estate.

The Plan is being presented to Creditors and other parties in interest for their consideration, and some of the classes of Creditors will be entitled to cast a ballot to either accept or reject the Plan. If the Plan is confirmed by the Bankruptcy Court, it will be binding upon all affected parties, including but not limited to Creditors of, and holders of Interests in, the Debtors, regardless of how they voted, even if they did not vote.

The Plan divides the Claims against, and Interests in, the Debtors into Classes. Certain Claims -- in particular, Administrative Claims, Statutory Fees, and Professional Claims -- remain unclassified in accordance with section 1123(a)(1) of the Bankruptcy Code.

The Plan assigns all other Claims and Interests as described below.

Class 1A consists of all General Unsecured Claims filed by limited partners of PBF asserting a claim against PBF. Holders of an Allowed PBF Limited Partner Unsecured Claim, shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed PBF Limited Partner Unsecured Claim, periodic distributions from the PBF Liquidating Trust on account of its Allowed PBF Limited Partner Unsecured Claim, to be paid by the PBF Liquidating Trust on dates to be determined in the reasonable discretion of the PBF Liquidating Trustee. Class 1A is impaired and may vote to accept or reject the Plan.

Class 1B consists of all General Unsecured Claims filed by limited partners of PBF II asserting a claim against PBF II. Holders of an Allowed PBF II Limited Partner Unsecured Claim, shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed PBF II Limited Partner Unsecured Claim, periodic distributions from the PBF II Liquidating Trust of its share on account of its Allowed PBF II Limited Partner Unsecured Claim to be paid by the PBF II Liquidating Trust on dates to be determined in the reasonable discretion of the PBF II Liquidating Trustee. Class 1B is impaired and may vote to accept or reject the Plan.

Class 2A consists of all General Unsecured Claims of PBF other than PBF Limited Partner Unsecured Claims. Holders of an Allowed Other PBF General Unsecured Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Other PBF General Unsecured Claim, periodic distributions from the PBF Liquidating Trust of its share on account of its Allowed Other PBF General Unsecured Claim to be paid by the PBF Liquidating Trust on dates to be determined in the reasonable discretion of the PBF Liquidating Trustee. Class 2A is impaired and may vote to accept or reject the Plan.

- 4 -

US_ACTIVE-104434022.1

Class 2B consists of all General Unsecured Claims of PBF II other than PBF II Limited Partner Unsecured Claims.  Holders of an Allowed Other PBF II General Unsecured Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Other PBF II General Unsecured Claim, periodic distributions from the PBF II Liquidating Trust of its share on account of its Allowed Other PBF II General Unsecured Claim to be paid by the PBF II Liquidating Trust on dates to be determined in the reasonable discretion of the PBF II Liquidating Trustee.  Class 2B is impaired and may vote to accept or reject the Plan.

Notwithstanding anything in the Plan to the contrary, holders of Allowed Class 1A and Allowed Class 2A Claims, whose Claims have not been successfully objected to or subordinated for any purpose including distribution purposes, whether under section 510 of the Bankruptcy Code or any other provision thereof, shall receive on a *pari passu* basis distributions from the PBF Liquidating Trust on account of their Allowed Claim.  Furthermore, notwithstanding anything in the Plan to the contrary, holders of Allowed Class 1B and Allowed Class 2B Claims, whose Claims have not been successfully objected to or subordinated for any purpose including distribution purposes, whether under section 510 of the Bankruptcy Code or any other provision thereof, shall receive on a *pari passu* basis distributions from the PBF II Liquidating Trust on account of their Allowed Claim.

Class 3A consists of all Interests of or in Palm Beach Finance Partners, L.P.  Holders of an Allowed PBF Interest shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed PBF Interest, periodic distributions from the PBF Liquidating Trust of its share on account of its Allowed PBF Interest to be paid by the PBF Liquidating Trust on dates to be determined in the reasonable discretion of the PBF Liquidating Trustee.  Notwithstanding the foregoing, Allowed PBF Interests are subordinated to Allowed Class 1A (PBF Limited Partner Unsecured Claims) and Class 2A (Other PBF General Unsecured Claims).  Accordingly, holders of Allowed PBF Interests shall not receive any distribution from the PBF Liquidating Trust on account of their Allowed PBF Interest unless and until holders of Allowed Class 1A and Class 2A Claims have been satisfied in full.  Class 3A is impaired and may vote to accept or reject the Plan.

Class 3B consists of all Interests of or in Palm Beach Finance II, L.P.  Holders of an Allowed PBF II Interest shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed PBF II Interest, periodic distributions from the PBF II Liquidating Trust of its share on account of its Allowed PBF II Interest to be paid by the PBF II Liquidating Trust on dates to be determined in the reasonable discretion of the PBF II Liquidating Trustee.  Notwithstanding the foregoing, Allowed PBF II Interests are subordinated to Allowed Class 1B (PBF II Limited Partner Unsecured Claims) and Class 2B (Other PBF II General Unsecured Claims).  Accordingly, holders of Allowed PBF II Interests shall not receive any distribution from the PBF II Liquidating Trust on account of their Allowed PBF II Interest unless and until holders of Allowed Class 1B and Class 2B Claims have been satisfied in full.  Class 3B is impaired and may vote to accept or reject the Plan.

**THE TRUSTEE HAS NOT REVIEWED THE VALIDITY OR AMOUNT OF THE CLAIMS AND INTERESTS SCHEDULED BY THE DEBTORS OR FOR WHICH A PROOF OF CLAIM HAS BEEN FILED.  ACCORDINGLY, EXCEPT AS OTHERWISE SET FORTH IN THE PLAN, ALL RIGHTS TO OBJECT TO SUCH CLAIMS OR**

US_ACTIVE-104434022.1

**INTERESTS ARE RESERVED NOTWITHSTANDING THE RIGHT OF THE HOLDER OF SUCH CLAIM OR INTEREST TO VOTE ON THE PLAN.**

Holders of claims or equity interests that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on it.  Holders of classes of claims or equity interests that will receive no distributions under a proposed plan are conclusively presumed to reject that plan and, therefore, are also not entitled to vote on it.

The Plan Proponents believe that the distributions under the Plan will provide Creditors of the Debtors at least the same recovery on account of Allowed Claims as would distributions by a chapter 7 trustee.  However, distributions under the Plan to Creditors of the Debtors would be made more quickly than distributions by a chapter 7 trustee and a chapter 7 trustee would charge a substantial fee, reducing the amount available for distribution on account of Allowed Claims.

**ACCORDINGLY, THE PLAN PROPONENTS URGE EACH CREDITOR ENTITLED TO VOTE ON THE PLAN TO VOTE TO <u>ACCEPT</u> THE PLAN.**

Following are detailed, Class-by-Class summaries of the Claims against, and Interests in, the Debtors and the estimated distribution to the Creditors of the Debtors on account of such Allowed Claims or Interests.

The Trustee calculated the asserted claims (other than Administrative Claims) based on filed and scheduled claims.  To the extent a creditor filed a proof of claim that superseded a scheduled claim, the amount in the filed proof of claim was utilized.  The Trustee then reviewed all of the proofs of claims asserting General Unsecured Claims.

| Class | Description | Approximate Amount Asserted | Estimated Recovery | Status |
|-------|-------------|-----------------------------|--------------------|--------|
| 1A | PBF Limited Partner Unsecured Claims | $53,041,312.96 | Undetermined | Impaired and entitled to vote |
| 1B | PBF II Limited Partner Unsecured Claims | $89,889,421.40 | Undetermined | Impaired and entitled to vote |
| 2A | Other PBF General Unsecured Claims | $49,557,964.82 | Undetermined | Impaired and entitled to vote |
| 2B | Other PBF II General Unsecured Claims | $730,309,329.95 | Undetermined | Impaired and entitled to vote |
| 3A | PBF Interests | $ | Undetermined | Impaired and entitled to vote |
| 3B | PBF II Interests | $ | Undetermined | Impaired and entitled to vote |

**B.  Voting Instructions**

**THE PLAN PROPONENTS STRONGLY RECOMMEND EACH CREDITOR ENTITLED TO VOTE ON THE PLAN TO VOTE TO <u>ACCEPT</u> THE PLAN.**

US_ACTIVE-104434022.1

The Bankruptcy Code entitles only holders of impaired claims or equity interests who receive some distribution under a proposed plan to vote to accept or reject that plan. Holders of claims or equity interests that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on it. Holders of classes of claims or equity interests that will receive no distributions under a proposed plan are conclusively presumed to reject that plan and, therefore, are also not entitled to vote on it.

No Class of Claims or Interests is Unimpaired under the Plan.

The holders of Claims in Class 1A, Class 1B, Class 2A and Class 2B, and holders of Interests in Class 3A and Class 3B, are Impaired and thus may vote to accept or reject the Plan. The Plan Proponents have enclosed Ballots with this Disclosure Statement to solicit the votes of all claimants in the foregoing Classes.

**A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASSES 1A, 1B, 2A, 2B, 3A AND 3B. BEFORE VOTING, SUCH HOLDERS SHOULD READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS, INCLUDING THE PLAN AND THE PLAN DOCUMENTS, IN THEIR ENTIRETY.**

You may vote on the Plan by completing the enclosed ballot (the "<u>Ballot</u>") and mailing it or sending via courier to the Clerk of the Court at the following address:

Clerk of Court, U.S. Bankruptcy Court
1515 North Flagler Drive
Suite 801
West Palm Beach, FL 33401

**In order for your Ballot to be considered by the Bankruptcy Court, it must be received at the above address by 4:30 p.m. (prevailing Eastern time) on September 29, 2010 (the "<u>Voting Deadline</u>")** (no facsimiles or e-mails containing a PDF of your ballot will be accepted). Enclosed is a stamped, addressed envelope for mailing or otherwise delivering your originally signed ballot to the Clerk of the Bankruptcy Court.

If you are a claimant in Class 1A, Class 1B, Class 2A, Class 2B, Class 3A or Class 3B, and you did not receive a Ballot with this Disclosure Statement, please contact counsel for Chapter 11 Trustee Barry Mukamal:

Michael Budwick, Esq.
Meland Russin & Budwick, P.A.
3000 Wachovia Financial Center
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: 305.358.6363

Only holders of Allowed Claims or Interests in Impaired Classes of Claims or Interests are entitled to vote on the Plan. Any Ballot executed by the holder of an Allowed Claim or

- 7 -

Interest, but which does not indicate acceptance or rejection of the Plan, will be considered a vote to accept the Plan.  Any Ballot not executed by the holder of an Allowed Claim or Interest will not be counted as a vote to accept or reject the Plan.

**An Impaired class of Claims or Interests accepts the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims or Interests in the Class that actually vote are cast in favor of the Plan.**  Whether or not a holder of a Claim or Interest votes on the Plan, such Person will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities of the classes of creditors and is confirmed by the Bankruptcy Court.  Pursuant to the provisions of section 1126(e) of the Bankruptcy Code, the Bankruptcy Court may disallow any vote accepting or rejecting the Plan if such vote is not cast in good faith.

If the voting members of an Impaired Class do not vote unanimously for the Plan but, nonetheless, vote for the Plan by at least the requisite two-thirds (2/3) in amount and one-half (1/2) in number of Allowed Claims in that Class actually voted, the Plan, at a minimum, must provide that each member of such Class will receive property of a value, as of the Effective Date, that is not less than the amount such Class members would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

The Plan Proponents may dispute proofs of Claims or Interests that have been filed or that the Debtors listed as disputed in the schedules that the Debtors filed with the Bankruptcy Court.  Persons whose Claims are disputed may vote on or otherwise participate in distributions under the Plan only to the extent that the Bankruptcy Court allows their Claims. The Bankruptcy Court may temporarily allow a Claim for voting purposes only.  Allowance of a Claim or Interest for voting purposes or disallowance of a Claim or Interest for voting purposes does not necessarily mean that all or a portion of that Claim or Interest will be allowed or disallowed for distribution purposes. The Debtors' schedules listing Claims and whether such Claims are disputed can be inspected at the offices of Meland Russin & Budwick, P.A., 3000 Wachovia Financial Center, 200 South Biscayne Boulevard, Miami, Florida 33131 <u>or</u> the Office of the Clerk of the Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, West Palm Beach, Florida 33401, telephone (561) 514-4100.

### C.  Confirmation of the Plan by the Bankruptcy Court

Once it is determined which Impaired classes have or have not accepted the Plan, the Bankruptcy Court will determine whether the Plan may be confirmed.  However, the Bankruptcy Court may confirm the Plan even if all but one of the Impaired classes do not accept the Plan if the Bankruptcy Court finds that the remaining Impaired class of Claims or Interests (not including any acceptances by "insiders" as defined in section 101(31) of the Bankruptcy Code) has accepted the Plan and that certain additional conditions are met.  The Plan Proponents will therefore request that the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class of Claims or Interests.

Section 1129(b) of the Bankruptcy Code is generally referred to as the "cramdown" provision.  Pursuant to the cramdown provision, the Bankruptcy Court may confirm the Plan over the objection of a non-accepting Class of General Unsecured Claims if the non-accepting

US_ACTIVE-104434022.1

claimants will receive the full value of their Claims, or, if the non-accepting claimants receive less than full value, if no Class of junior priority will receive anything on account of their pre-petition Claims or Interests.

The Plan provides for the liquidation of substantially all of the property of the Debtors' estates. Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan will not discharge the Debtors from any of their debts which arose prior to November 30, 2009; however, Confirmation will make the Plan binding upon the Debtors, their creditors, holders of Claims and Interests, and other parties in interest regardless of whether they have accepted the Plan.

**II.**
**BACKGROUND OF THE DEBTORS**

### A.  Petters Case Factual Summary

These cases involve the Chapter 11 bankruptcy proceedings of two hedge funds, Debtors Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P. The Debtors were formed as limited partnerships in the State of Delaware on October 25, 2002 and June 22, 2004, respectively. The Debtors solicited capital contributions from third-party Limited Partners, and proceeded to invest substantial amounts of this capital with the Petters Company, Inc. (the "Petters Company"), an entity that, along with its principals and certain affiliates, was later discovered to be engaged in a massive Ponzi scheme. Subsequent to discovery of the Ponzi scheme, both the Debtors and the Petters Company entered separate Chapter 11 bankruptcy proceedings.

### B.  The Petters-Related Companies' Bankruptcies

The Ponzi scheme engaged in by Thomas J. Petters and others (the "Petters Fraud") was discovered on or about September 30, 2008. On or about October 2, 2008, the United States of America (the "Government") initiated civil and criminal proceedings in the United States District Court, District of Minnesota, against, among others, Thomas J. Petters ("Petters"), who owned and controlled the Petters Company, and other Petters-related entities. In connection with the civil proceedings, the Minnesota District Court appointed Douglas Kelley ("Mr. Kelley") as the receiver for Petters and all of his wholly-owned entities, including the Petters Company.

On or about October 11, 2008, in his capacity as receiver, Mr. Kelley filed voluntary Chapter 11 petitions in the U.S. Bankruptcy Court, District of Minnesota, for certain Petters-related entities[2] (collectively, the "Petters Bankruptcy Case"). Mr. Kelley currently serves as both the Chapter 11 Trustee in the Petters Bankruptcy Case and as the court-appointed receiver

---

[2] The Petters Bankruptcy Case includes the following bankruptcy cases pending in the United States Bankruptcy Court for the District of Minnesota: Petters Company, Inc., Case No. 08-45257; Petters Group Worldwide, LLC, Case No. 08-45258; PC Funding, LLC, Case No. 08-45326; Thousand Lakes, LLC, Case No. 08-45327; SPF Funding, LLC, Case No. 08-45328; PL Ltd., Inc., Case No. 08-45329; Edge One, LLC, Case No. 08-45330; MGC Finance, Inc., Case No. 08-45331; PAC Funding, LLC, Case No. 08-45371; and Palm Beach Finance Holdings, Inc., Case No. 08-45392.

- 9 -

US_ACTIVE-104434022.1

of Petters and Petters-related entities in the civil proceedings. In the criminal proceedings, Petters was convicted of orchestrating a $3.65 billion fraud and sentenced to 50 years in prison.

In connection with the criminal prosecution of Petters, the Government sought restitution from Petters for the benefit of the victims of his Ponzi scheme. By order dated June 3, 2010, the Minnesota District Court declined to order restitution. The Liquidating Trustees will actively work towards seeking restitution from Petters as an additional source of recovery for the Liquidating Trusts and their beneficiaries although at this time it is not clear if and to what extent restitution will be available.

### III.
### THE CHAPTER 11 CASES

#### A. The Palm Beach Funds' Bankruptcy Proceedings

The Debtors ceased operating as hedge funds upon discovery of the Petters Fraud on or about September 30, 2008. On November 30, 2009 (the "Petition Date"), the Debtors, through their Chief Restructuring Officer, Kenneth A. Welt, each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division [Dkt. 09-36379, ECF No. 1; Dkt. 09-36396, ECF No. 1]. By order dated December 1, 2009, the Court approved the joint administration of these cases [ECF No. 19][3]. From the commencement of their cases, the Debtors intended to liquidate through a Chapter 11 plan. No Creditors' Committee has been appointed in these Chapter 11 Cases.

The Debtors have little available cash because of the massive losses suffered in connection with the Petters Fraud. The Debtors' assets, as set forth in their Schedules and Statements of Financial Affairs, filed on or about December 15, 2009, are extremely limited, but include (i) $316,000 in an operating account that is currently frozen pursuant to court orders obtained by Mr. Kelley in the Petters civil proceedings and (ii) numerous causes of action that can be pursued on behalf of one or both of the Debtors against various parties, including professionals, service providers, and other parties that caused or may have caused the Debtors to suffer damages [Dkt. 09-36379, ECF No. 48; Dkt. 09-36396, ECF No. 19].

The investors of PBF and PBF II are a diverse group, with limited entities having asserted creditor Claims. The largest creditors of PBF II are Palm Beach Offshore Ltd. and Palm Beach Offshore II, Ltd. (together, the "Offshore Funds"), both of which loaned money to PBF II, which issued demand promissory notes to the Offshore Funds with an aggregate amount of principal and interest due and owing in excess of $700 million. Geoffrey Varga, who along with the Trustee, is a Plan Proponent herein, is the Joint Official Liquidator of the Offshore Funds. Neither Mr. Varga nor the Offshore Funds assert a Claim against PBF.

---

[3] Unless otherwise indicated, any reference to the Bankruptcy Court's docket shall be to that of *In re Palm Beach Finance Partners, L.P.*, Case No. 09-36379.

- 10 -

US_ACTIVE-104434022.1

On December 10, 2009, the Office of the U.S. Trustee for the Southern District of Florida (the "U.S. Trustee") filed a motion seeking entry of an order converting the instant Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code or, in the alternative, appointment of a Chapter 11 trustee (the "Conversion Motion") [ECF No. 34].  On December 14, 2009, the Debtors filed a response in opposition to the Conversion Motion [ECF No. 44].  On December 16, 2009, the JOL filed a Joinder to the Conversion Motion fully supporting the relief sought therein [ECF No. 54].  The Court conducted a Preliminary Hearing on the Motion to Convert on December 17, 2009.

On January 28, 2010, the Court entered an order denying the Conversion Motion as moot and granted the motion to appoint a Chapter 11 trustee and directed the U.S. Trustee to appoint a Chapter 11 Trustee [ECF No. 100].  On or about January 29, 2010, the U.S. Trustee selected Barry Mukamal as the Chapter 11 trustee of PBF and PBF II [ECF No. 107].  On February 1, 2010, the U.S. Trustee filed an *ex parte* application for approval of the selection of the appointment of Barry E. Mukamal as the Chapter 11 trustee [ECF No. 111].  On February 2, 2010, the Court entered an Order approving the selection of Barry E. Mukamal as the Chapter 11 trustee of the Debtors [ECF No. 114].  On February 12, 2010, the Court entered an order granting the Trustee's application to employ Meland Russin & Budwick, P.A., as counsel for the Trustee [ECF No. 121].

**B.  The Debtors' Proposed Professionals**

The Debtors' Chapter 11 petitions were accompanied by applications seeking approval for the retention of the following professionals: (i) Berger Singerman, P.A. ("Berger Singerman") as counsel for Debtors; (ii) Thomas, Alexander & Forrester, LLP ("TAF"), as proposed special litigation counsel to the Debtors; (iii) Trustee Services, Inc. ("TSI"), as interim management for the Debtors; and (iv) Gonzalo R. Dorta, P.A., as special litigation counsel, ("Dorta", and together with Berger Singerman, TAF and TSI, the "Debtors' Proposed Professionals") [ECF Nos. 6, 7, 8 and 11].

On January 8, 2010, both the U.S. Trustee and the JOL filed objections to the retention of the Debtors' Proposed Professionals, due to, inter alia, a multitude of perceived conflicts [ECF Nos. 66 and 67].

On December 11, 2009, the Court entered interim orders, effective *nunc pro tunc* to the Petition Date: (i) approving in part and denying in part the employment of Berger Singerman as counsel for the Debtors; (ii) approving the employment of TSI as interim management for the Debtors; (iii) approving in part the employment of TAF as special litigation counsel to the Debtors; and (iv) approving in part the employment of Dorta as special litigation counsel to the Debtors [ECF Nos. 37, 38, 40 and 41].  On January 28, 2010, in connection with the Court's order directing the appointment of a Chapter 11 trustee, the Court also entered agreed orders denying as moot the applications to employ the Debtors' Proposed Professionals [ECF Nos. 101-104].

On June 9, 2010, the Bankruptcy Court granted the first and final fee applications for each of Berger Singerman and TSI [ECF Nos. 170 and 171, respectively].  Berger Singerman

US_ACTIVE-104434022.1

was awarded $68,926.29 in fees and expenses and TSI was awarded $8,469.50. The balance of their prepetition retainers were turned over to the Trustee.

### C. Litigations Commenced by Debtors

#### 1. Kaufman Rossin Litigations

##### a) Kaufman Action I and Kaufman Action II

On November 30, 2009, PBF and PBF II commenced an action ("Kaufman Action I") against Kaufman, Rossin & Co. ("Kaufman") by filing a complaint in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County. On December 30, 2009, Kaufman filed a Notice of Removal in accordance with 28 U.S.C. § 1452(a), thereby removing Kaufman Action I to the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division, where the Chapter 11 Cases are pending (Adv. Pro. No. 09-02553-PGH).

The Debtors' complaint states a single cause of action for gross negligence against Kaufman, which had been the outside auditor of the Debtors since their inception. Specifically, the complaint alleged that Kaufman improperly opined that the Debtors' financial statements were prepared consistent with Generally Accepted Accounting Principles. The complaint alleges that Kaufman failed to comply with its duties as auditor including verifying the collectability of the Debtors' assets which were primarily the notes issued by companies operated or controlled by Petters.

On December 9, 2009, the JOL of the Offshore Funds commenced an action against Palm Beach Capital Management LLC ("PBCM"), Bruce F. Prévost, David W. Harrold and Kaufman by filing a complaint in the United States District Court for the Southern District of Florida (Case No. 09-cv-82398-FAM) ("Kaufman Action II", and together with Kaufman Action I, the "Kaufman Rossin Litigations"). Prévost and Harrold are the controlling owners and executive officers of PBCM (the Debtors' investment manager) and Kaufman, Rossin & Co. provided professional accounting services to PBCM, including, inter alia, providing audit opinion letters.

The complaint stated eight (8) causes of action for breach of contract, professional negligence/malpractice, breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, gross negligence/recklessness, fraud/willful blindness and unjust enrichment. Specifically, the complaint alleged that the defendants in Kaufman Action II, individually and collectively, caused the Offshore Funds damages in excess of $700 million. The complaint further alleged, among other things, that Kaufman breached its duties to the Offshore Funds by failing to detect Petters' scheme, thereby resulting in losses to the Offshore Funds.

##### b) The Kaufman Rossin Settlement Agreement

After protracted negotiations, on or about July 2, 2010, the Trustee, Kaufman Rossin & Co., Kaufman Rossin & Co. Cayman and the JOL, entered into a Stipulation of Settlement (the "Kaufman Rossin Settlement Agreement"), resolving for all purposes the claims asserted in the Kaufman Rossin Litigations. The Kaufman Rossin Settlement Agreement contemplates entry of a Bar Order precluding certain claims against Kaufman Rossin & Co. and Kaufman Rossin & Co. Cayman as more fully described in the Bar Order. A discussion of the Bar Order is found

US_ACTIVE-104434022.1

herein at Article IV(M)(2).  The Kaufman Rossin Settlement Agreement is annexed to the Plan as Schedule 1.45 and should be consulted for its complete terms.

c)  Distribution of Kaufman Rossin Settlement Payment

Pursuant to Section 7.2 of the Plan, the Kaufman Rossin Settlement Payment shall be distributed to the Liquidating Trusts and allocated pursuant to the Onshore/Offshore Allocation Formula.  A portion of the Kaufman Rossin Settlement Payment is allocated directly to the Offshore Funds due to the fact that the Offshore Funds had a separate and direct contractual relationship with Kaufman which resulted in a separate independent audit.

The Onshore/Offshore Allocation Formula is derived from the Compiled Financial Statements, dated April 30, 2008, for each of the Debtors by Kaufman Rossin & Co.  The data contained therein supports an 18%/82% allocation between PBF and PBF II, respectively, based upon the total assets of each entity as of the date of such compilations.  In addition, the same compilations support a determination that the Offshore Funds' claims against PBF II, due to the existence of promissory notes issued to the Offshore Funds by PBF II as well as accrued interest, equals 75% of PBF II's total assets as of the date of such compilation.

Pursuant to the Onshore/Offshore Allocation Formula, in the event the Kaufman Rossin Settlement Payment is $9,600,000, then:

> (1) the PBF Liquidating Trust shall receive for its benefit $1,728,000.00, which is 18% of the Kaufman Rossin Settlement Payment; and

> (2) the remaining 82% of the Kaufman Rossin Settlement Payment, or $7,872,000, is allocated between the PBF II Liquidating Trust and the Offshore Funds at a 75%/25% ratio in favor of the Offshore Funds.  Accordingly:

>> (a)    PBF II Liquidating Trust shall receive for its benefit $1,968,000.00, which is 20.5% of the Kaufman Rossin Settlement Payment (or, 25% of the $7,872,000 remaining after the allocation from the Kaufman Rossin Settlement Payment to the PBF Liquidating Trust); and

>> (b) the Offshore Funds shall directly receive the remaining $5,904,000.00, which is 61.5% of the Kaufman Rossin Settlement Payment (or, 75% of the $7,872,000 remaining after the allocation from the Kaufman Rossin Settlement Payment to the PBF Liquidating Trust).

As part of the Bar Order, the Debtors, all creditors, limited partners and general partners of the Debtors, the JOL on behalf of the Offshore Funds and any creditor or holder of an equity interest in the Offshore Funds will be precluded from pursuing their claims against Kaufman.

- 13 -

US_ACTIVE-104434022.1

The allocation formula identified above shall not apply to any further settlements of Litigation Claims held by the Debtors.

When the Liquidating Trustee distributes from the Liquidating Trusts the Kaufman Rossin Settlement Payments, his fee shall be calculated as the limitation set forth pursuant to 11 U.S.C. § 326. However, the Liquidating Trustee's fee in connection with the payment to be made to the Offshore Funds shall be capped at and equal to .75% of such payment and paid from the funds paid to the Offshore Funds.

For the avoidance of any doubt, and notwithstanding anything in the Plan to the contrary, for Federal income tax purposes, and pursuant to Revenue Procedure 94-95, the Kaufman Rossin Settlement Payment shall be deemed to be transferred to the Beneficiaries and subsequently deemed to have been transferred from the Beneficiaries to the Liquidating Trusts pursuant to the Onshore/Offshore Allocation Formula.

## 2.  U.S. Bank Litigation

On December 21, 2009, PBF and PBF II commenced an adversary proceeding (the "Bank Litigation") by the filing of a complaint against defendants U.S. Bank, N.A. and M&I Marshall & Ilsley Bank (together, the "Bank Parties") in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (Adv. Pro. No. 09-02530-PGH).

In the complaint, the Debtors brought negligence and breach of contract claims against each of the Bank Parties in connection with fraud perpetrated by Petters and his companies. The Debtors alleged that each of the Bank Parties owed the Debtors a duty of care both as a result of their relationship with the Debtors and as a result of the Bank Parties' communications with the Debtors regarding investments made with Petters. In addition to failing to exercise this duty of care, the Bank Parties allegedly failed to properly carry out their role as depository banks and/or custodians. It was alleged that if they had properly exercised their duties, the Petters Fraud would have been detected earlier and the loss to the Debtors reduced.

Subsequent to the appointment of the Trustee, on February 25, 2010, the Trustee voluntarily dismissed the action against the Bank Parties without prejudice. On March 12, 2010, the Bank Litigation proceeding was closed and the complaint was dismissed without prejudice. Since then the Trustee has obtained informal discovery from both Bank Parties and commenced an investigation into the claims that may exist as against each of the Bank Parties. At the conclusion of the Trustee's analysis, subject to further discovery, suits may be filed against either or both Bank Parties.

## 3.  General Partner Discussions

The Debtors were formed as Delaware limited partnerships and managed by Mr. Prevost, Mr. Harrold and Palm Beach Capital Management, LLC. The general partner for both Debtors is Palm Beach Capital Management, LP, whose general partner is Palm Beach Capital Corp. The shareholders for Palm Beach Capital Corp. are Messrs. Prevost and Harrold.

Prior to the Petition Date, the Management Parties received either directly or indirectly, significant sums of monies from the Debtors and other affiliated hedge funds managed by the

US_ACTIVE-104434022.1

Management Parties. The Trustee is investigating Litigation Claims that the Debtors may have against all of the Management Parties under applicable law and, absent a consensual resolution, intends to commence legal action against the Management Parties and perhaps other affiliates.

### 4. Other Litigation Claims

The Trustee continues to investigate Litigation Claims against a variety of third parties under a variety of theories. The Trustee is required to identify any parties against whom litigation could potentially be commenced by one or both of the Debtors due to a relationship such party had with one or both of the Debtors. Accordingly, annexed to the Plan as Schedule 1.52 is a list of parties that potentially could be the subject of Litigation Claims.

### D. The Claims Process

The Bankruptcy Code provides a procedure for each Person who believes he has a Claim against a debtor to assert such Claim, so that such claimant can receive distributions from the debtor's bankruptcy estate. The bankruptcy court establishes a "bar date" - a date by which creditors must file their Claims, or else such Claims will not participate in the bankruptcy case or any distribution. After the filing of all Claims, the debtor evaluates such Claims and can, along with other parties in interest, raise objections to them. These claims objections allow the debtor to minimize claims against it, and thereby maximize the recovery to creditors with Allowed Claims.

On December 1, 2009, a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors & Deadlines was issued establishing April 6, 2010 as the deadline for filing proofs of Claims against the Debtors (the "Bar Date"). In addition, June 1, 2010 was set as the deadline for the filing of Claims by governmental units.

Pursuant to the Plan, all unpaid Administrative Claims must be filed on or before the Administrative Claims Bar Date. The Administrative Claims Bar Date is the first Business Day that is at least sixty (60) days following the Effective Date, as such terms are defined in the Plan.

The Trustee has been reviewing, analyzing and resolving Claims on an ongoing basis as part of the claims reconciliation process. To date approximately 56 proofs of claim have been asserted in the Chapter 11 Cases in a face amount of $101,711,790.67 (27 Claims) against PBF, and in a face amount of $819,306,954.61 (29 Claims) against PBF II. Over the last several months, the Trustee has begun to reconcile the amount and classification of outstanding claims and assert and prosecute objections to Claims. The Trustee has also identified Claims for possible future resolution, as well as other existing or potential Claims disputes. Nonetheless, a significant number of Claims have not yet been reviewed, and the actual ultimate aggregate amount of Allowed Claims may differ significantly from the amounts used for the purposes of the Plan Proponents' estimates. Additionally, the Trustee is in the process of reviewing the Debtors' Schedules and, upon the completion of such review, may amend such Schedules to account for certain Claims that have been satisfied or settled. Accordingly, the amount of the Pro Rata share that will ultimately be received by any particular holder of an Allowed Claim may be adversely affected by the outcome of the claims resolution process.

US_ACTIVE-104434022.1

### E.  Litigation Claims of the Estates

Among other reasons, the Liquidating Trusts (as discussed below) are being created to investigate, preserve, retain and pursue all Litigation Claims of the Debtors with the recoveries to be distributed pursuant to the Plan, as ordered by the Court, for the benefit of holders of Allowed Claims or Allowed Interests.  The types and categories of Litigation Claims are set forth in the definition of "Litigation Claims" at Section 1.52 of the Plan[4].  The potential targets of the Litigation Claims include, but are not limited to, those set forth on Schedule 1.52 of the Plan. The right to bring all Litigation Claims against any targets, including but not limited to those set forth on Schedule 1.52 of the Plan, is expressly and entirely preserved and retained.

By way of example only, the Litigation Claims of the Debtors, include, among other things, the causes of action or potential causes of action, against the following parties:

1.  U.S. Bank

2.  M&I Marshall & Ilsley Bank

3.  Management Parties

4.  Atradius

5.  General Casualty of Wisconsin

6.  "Clawback" or Avoidance Actions under Chapter 5 of the Bankruptcy Code against parties identified on Schedule 1.52 of the Plan

7.  Other types of Litigation Claims against parties identified on Schedule 1.52 of the Plan

### IV.
### CHAPTER 11 PLAN

**THE FOLLOWING IS A BRIEF SUMMARY OF CERTAIN OF THE MORE SIGNIFICANT MATTERS CONTEMPLATED BY OR IN CONNECTION WITH THE CONFIRMATION OF THE PLAN.   THUS, THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A.  THIS SUMMARY ONLY HIGHLIGHTS CERTAIN SUBSTANTIVE PROVISIONS OF THE PLAN. CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, YIELD A THOROUGH UNDERSTANDING OF THE PLAN.   SUCH CONSIDERATION IS NOT A SUBSTITUTE FOR A FULL AND COMPLETE READING OF THE PLAN.  ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO REVIEW THE PLAN**

---

[4] The Plan is attached hereto as Exhibit A and incorporated herein.

US_ACTIVE-104434022.1

**CAREFULLY.  THE PLAN, IF CONFIRMED, WILL BE BINDING ON EACH OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS.**

### A.  Plan Overview

The only unclassified class of Claims contemplated by the Plan is Administrative Claims (including Professional Claims).  In addition, the Plan classifies Claims and Interests as follows: Class 1A (PBF Limited Partner Unsecured Claims), Class 1B (PBF II Limited Partner Unsecured Claims), Class 2A (Other PBF General Unsecured Claims), Class 2B (Other PBF II General Unsecured Claims), Class 3A (PBF Interests) and Class 3B (PBF II Interests).  Classes 1A, 1B, 2A, 2B, 3A and 3B are Impaired and may vote to accept or reject the Plan.

### B.  Plan Summary

The Plan does not contemplate substantive consolidation of the Debtors' estates.  The Court will consider confirmation of the Plan separately in each of the cases and each Debtor must satisfy all of the requirements for confirmation

#### 1.  Administrative Claims.

Subject to the allowance procedures and deadlines provided in the Plan, on the Effective Date or as soon thereafter as is practicable, the holder of an Allowed Administrative Claim shall receive on account of the Allowed Administrative Claim and in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim, or (b) such other treatment as to which the Trustee, the JOL and the holder of such Allowed Administrative Claim have agreed upon in writing, provided, however, that Professional Claims shall be paid in accordance with Section 2.3 of the Plan. Such Allowed Administrative Claims shall be paid pro rata, with any unpaid portion of such Claim transferred to the respective trust.

#### 2.  Statutory Fees.

The Trustee, on behalf of the Debtors, shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days of the entry of the Confirmation Order for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the Cash disbursements for the relevant period. The Liquidating Trustee of the respective Liquidating Trust shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C.   1930(a)(6) based upon all disbursements of the Liquidating Trust for post-confirmation periods within the time period set forth in 28 U.S.C.   1930(a)(6), until the earlier of the closing of the Bankruptcy Cases by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Cases or converting the Bankruptcy Cases to another chapter under the Bankruptcy Code, and the party responsible for paying the post-confirmation United States Trustee fees shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the Cash disbursements for the relevant period.

- 17 -

US_ACTIVE-104434022.1

### 3. Professional Claims.

Immediately prior to the Effective Date, the Debtors shall pay all amounts owing to the Professionals for all outstanding Professional Claims. On or prior to the Administrative Claims Bar Date, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date. Rather than estimate Professional Claims due for periods that have not been billed as of the Effective Date, Professionals shall apply for such amounts after the Effective Date.

### 4. Substantial Contribution Claim of JOL

The JOL shall file an application pursuant to section 503(b)(3) of the Bankruptcy Court for reimbursement of the actual, necessary expenses, incurred by the JOL in making a substantial contribution in these Bankruptcy Cases by, inter alia, his involvement in the negotiation, analysis and drafting of the terms of the Plan and his role in obtaining approval of the Plan and related documents and agreements. Additionally, Professionals retained by the JOL shall file an application pursuant to section 503(b)(4) of the Bankruptcy Code for professional services rendered to the JOL in connection with these Bankruptcy Cases. The foregoing applications shall not be objected to by the Liquidating Trustee, so long as the amounts set forth in such applications are deemed reasonable by the Liquidating Trustee, but all other parties-in-interest, including the United States Trustee, shall be entitled to file an objection to any such application. To the extent an application for a Claim made pursuant to Section 2.4 of the Plan is Allowed, such Allowed Claim shall be payable pursuant to the Pro Rata Allocation Formula from the Trust Assets of the PBF and PBF II Liquidating Trusts.

### 5. Deadline for Filing Administrative Claims

Other than with respect to Administrative Claims for which the Bankruptcy Court previously has established a Bar Date, any and all requests for payment or proofs of Administrative Claims, including Claims of all Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 331 or 503(b) for services rendered on or before the Effective Date (including any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Cases) and any claims asserted in accordance with Section 2.4 of the Plan, must be Filed and served on the Liquidating Trustee, the JOL, their respective counsel, and the U.S. Trustee no later than the Administrative Claims Bar Date. Objections to any such Administrative Claims must be Filed and served on the claimant no later than thirty (30) days after the Administrative Claims Bar Date. The Trustee and JOL shall use reasonable efforts to promptly and diligently pursue resolution of any and all disputed Administrative Claims. In the event the Liquidating Trustee and the JOL are unable to resolve any of the disputed Administrative Claims, such unresolved disputes will be heard and determined by the Bankruptcy Court.

Holders of Administrative Claims, including all Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 331 or 503(b) for services rendered on or before the Effective Date (including any compensation requested by any Professional or any other Entity for making a substantial

US_ACTIVE-104434022.1

contribution in the Chapter 11 Cases), that are required to File a request for payment or proof of such Claims and that do not File such requests or proofs of Claim on or before the Administrative Claims Bar Date shall be forever barred from asserting such Claims against the Debtors, their Estates, the Liquidating Trusts, the Liquidating Trustee, any other Person or Entity, or any of their respective property.

In accordance with the Bankruptcy Code, the Allowed Administrative Claims are not classified. Therefore, the claimants holding the aforementioned Claims may not vote on the Plan.

### C. Treatment of Claims and Interests

The treatment of and consideration to be received by holders of Allowed Claims and the treatment of Interests pursuant to Article 3 of the Plan will be in full satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims against, or Interests in, the Debtors and the Debtors' Estates, except as otherwise expressly provided in the Plan or the Confirmation Order.

#### 1. Class 1A: PBF Limited Partner Unsecured Claims.

a) Definition of Class 1A

Class 1A consists of all General Unsecured Claims filed by limited partners of PBF asserting a Claim against PBF.  For purposes of voting on the Plan, Class 1A Claims shall consist of those Claims set forth on Schedule 3.2.1 to the Plan.

b) Treatment of Class 1A

Each holder of an Allowed PBF Limited Partner Unsecured Claim, shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed PBF Limited Partner Unsecured Claim, periodic distributions from the PBF Liquidating Trust on account of its Allowed PBF Limited Partner Unsecured Claim, to be paid by the PBF Liquidating Trust on dates to be determined in the reasonable discretion of the PBF Liquidating Trustee.

c) Voting Status of Class 1A

Class 1A is Impaired under the Plan and the holders of such Claims are entitled to vote on the Plan.

#### 2. Class 1B: PBF II Limited Partner Unsecured Claims.

a) Definition of Class 1B

Class 1B consists of all General Unsecured Claims filed by limited partners of PBF II asserting a Claim against PBF II.  For purposes of voting on the Plan, Class 1B Claims shall consist of those Claims set forth on Schedule 3.2.2 to the Plan.

US_ACTIVE-104434022.1

b)  Treatment of Class 1B

Each holder of an Allowed PBF II Limited Partner Unsecured Claim, shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed PBF II Limited Partner Unsecured Claim, periodic distributions from the PBF II Liquidating Trust of its share on account of its Allowed PBF II Limited Partner Unsecured Claim to be paid by the PBF II Liquidating Trust on dates to be determined in the reasonable discretion of the PBF II Liquidating Trustee.

c)  Voting Status of Class 1B

Class 1B is Impaired under the Plan and the holders of such Claims are entitled to vote on the Plan.

**3.  Class 2A – Other PBF General Unsecured Claims.**

d)  Definition of Class 2A

Class 2A consists of all General Unsecured Claims of PBF other than PBF Limited Partner Unsecured Claims.  For purposes of voting on the Plan, Class 2A Claims shall consist of those Claims set forth on Schedule 3.2.3 to the Plan.

e)  Treatment of Class 2A

Each holder of an Allowed Other PBF General Unsecured Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Other PBF General Unsecured Claim, periodic distributions from the PBF Liquidating Trust of its share on account of its Allowed Other PBF General Unsecured Claim to be paid by the PBF Liquidating Trust on dates to be determined in the reasonable discretion of the PBF Liquidating Trustee.

f)  Voting Status of Class 2A

Class 2A is Impaired under the Plan and the holders of such Claims are entitled to vote on the Plan.

**4.  Class 2B – Other PBF II General Unsecured Claims.**

g)  Definition of Class 2B

Class 2B consists of all General Unsecured Claims of PBF II other than PBF II Limited Partner Unsecured Claims.  For purposes of voting on the Plan, Class 2B Claims shall consist of those Claims set forth on Schedule 3.2.4 to the Plan.

h)  Treatment of Class 2B

Each holder of an Allowed Other PBF II General Unsecured Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Other PBF II General Unsecured Claim, periodic distributions from the PBF II Liquidating Trust of its share

US_ACTIVE-104434022.1

on account of its Allowed Other PBF II General Unsecured Claim to be paid by the PBF II Liquidating Trust on dates to be determined in the reasonable discretion of the PBF II Liquidating Trustee.

i)   Voting Status of Class 2B

Class 2B is Impaired under the Plan and the holders of such Claims are entitled to vote on the Plan.

**5.   Class 3A – PBF Interests.**

j)   Definition of Class 3A

Class 3A consists of all Interests of or in PBF.

k)   Treatment of Class 3A

Each holder of an Allowed PBF Interest shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed PBF Interest, periodic distributions from the PBF Liquidating Trust of its share on account of its Allowed PBF Interest to be paid by the PBF Liquidating Trust on dates to be determined in the reasonable discretion of the PBF Liquidating Trustee.  Notwithstanding the foregoing, Allowed PBF Interests are subordinated to Allowed Class 1A (PBF Limited Partner Unsecured Claims) and Class 2A (Other PBF General Unsecured Claims).  Accordingly, holders of Allowed PBF Interests shall not receive any distribution from the PBF Liquidating Trust on account of their Allowed PBF Interest unless and until holders of Allowed Class 1A and Class 2A Claims have been satisfied in full.

l)   Voting Status of Class 3A

Class 3A is Impaired under the Plan and the holders of such Interests are entitled to vote on the Plan.

**6.   Class 3B – PBF II Interests.**

m)  Definition of Class 3B

Class 3B consists of all Interests of or in PBF II.

n)   Treatment of Class 3B

Each holder of an Allowed PBF II Interest shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed PBF II Interest, periodic distributions from the PBF II Liquidating Trust of its share on account of its Allowed PBF II Interest to be paid by the PBF II Liquidating Trust on dates to be determined in the reasonable discretion of the PBF II Liquidating Trustee.  Notwithstanding the foregoing, Allowed PBF II Interests are subordinated to Allowed Class 1B (PBF II Limited Partner Unsecured Claims) and Class 2B (Other PBF II General Unsecured Claims).  Accordingly, holders of Allowed PBF II Interests shall not receive any distribution from the PBF II Liquidating Trust on account of their Allowed

US_ACTIVE-104434022.1

PBF II Interest unless and until holders of Allowed Class 1B and Class 2B Claims have been satisfied in full.

o)  Voting Status of Class 3B

Class 3B is Impaired under the Plan and the holders of such Interests are entitled to vote on the Plan.

### D.  Treatment of Executory Contracts

Except for those executory contracts set forth on Schedule 6.1 that are assumed pursuant to the Plan, if any, all executory contracts and unexpired leases of the Debtors shall be rejected pursuant to section 365 of Bankruptcy Code; provided, however, that neither the inclusion of a contract or lease on Schedule 6.1 of the Plan nor anything contained in Article 6 of the Plan shall constitute an admission by any Debtor that such contract or lease is an executory contract or that any Debtor or its successors and assigns, including, but not limited to, the Liquidating Trusts, has any liability thereunder.  To the extent any loan agreement pursuant to which any Debtor is lender is deemed to be an executory contract within the meaning of 365 of the Bankruptcy Code, rejection of such loan agreement shall not, by itself, eliminate the borrower's obligations thereunder or cause any Debtor's Liens, security interests or ownership rights to be released or extinguished.  Section 6.1 of the Plan shall apply to any and all contracts or engagements the Debtors may have with professionals, including, but not limited to, attorneys, auditors and accountants.

The Confirmation Order shall constitute an Order of the Bankruptcy Court approving the rejection of executory contracts under Section 6.1 of the Plan pursuant to Bankruptcy Code section 365 as of the Effective Date. Any Claim for damages arising from any such rejection must be Filed within thirty (30) days after the mailing of notice of the entry of the Confirmation Order, or such Claim shall be forever barred, shall not be enforceable against the Debtors, their Estates, the Liquidating Trusts, the Liquidating Trustee, or any of their respective properties and shall receive no distribution under the Plan or otherwise on account of such Claim.

### E.  Liquidating Trust Agreement

The following is a summary of the more salient provisions of the PBF Liquidating Trust Agreement and the PBF II Liquidating Trust Agreement (each a "Liquidating Trust Agreement," or together where context requires, the "Liquidating Trust Agreements").  Except where indicated, the following is equally applicable to each of the Liquidating Trusts; however, the below is merely a summary and the reader is advised to review the complete text of the Liquidating Trust Agreements which are annexed to the Plan as Schedules 1.60 and 1.65, respectively.

### 1.  Establishment of the Liquidating Trusts.

On the Effective Date, the Trustee, on behalf of the Debtors and the Beneficiaries, shall execute the Liquidating Trust Agreements and take all steps necessary to establish the Liquidating Trusts.

US_ACTIVE-104434022.1

### 2.   Purpose of Liquidating Trusts.

The Liquidating Trusts are being established for the sole purpose of liquidating the respective Debtor's Assets and distributing the proceeds thereof to certain holders of Allowed Claims in each of the Debtors, as identified in and prescribed by the Plan. The Liquidating Trusts shall not continue or engage in any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trusts. Unless otherwise required by law, it is intended that all parties shall treat the Liquidating Trusts each as a liquidating trust for all federal income tax purposes.

In accordance with such express and limited purposes, as of the Effective Date, the Liquidating Trustee is authorized and directed: (i) to take any and all steps necessary to maintain the Liquidating Trusts as liquidating trusts for federal income tax purposes in accordance with Treasury Regulation § 301.7701-4(d) and as "grantor trusts" subject to the provisions of Subchapter J, Subpart E of the IRC unless otherwise required; (ii) to take all reasonable and necessary actions to conserve and protect the Trust Estates; (iii) to administer, compromise, settle, and litigate the Litigation Claims and any other claims or causes of action belonging to the Liquidating Trusts except as set forth in Section 4.12 of the PBF II Liquidating Trust Agreement (and only in the case of the PBF II Liquidating Trust); (iv) to the extent necessary and appropriate, object to any Claims asserted against the Debtors' Estates and the Liquidating Trusts; and (v) to maintain, operate or lease (for purposes of holding for sale), or sell or otherwise liquidate or dispose of the Trust Estates, in accordance with the terms of the Liquidating Trust Agreements, the Plan and the Confirmation Order, and to distribute the net proceeds of such disposition to the Beneficiaries, in as prompt, efficient and orderly a fashion as possible in accordance with the provisions of Section 5 of the Liquidating Trust Agreements.

### 3.   Contribution of Assets to the Liquidating Trusts.

On the Effective Date of the Plan, each of the Debtors shall transfer all of their respective Assets to the Beneficiaries of the Liquidating Trusts, who shall contribute such Assets to the Liquidating Trusts pursuant to the terms of the Liquidating Trust Agreements and the Pro Rata Allocation Formula.  Thereafter, pursuant to the terms of the Onshore/Offshore Allocation Formula, proceeds from the Kaufman Rossin Settlement Agreement will be distributed to the Liquidating Trusts.  Except as set forth below, all Assets shall be transferred and contributed free and clear of all Liens, Claims, interests and encumbrances.  Title to all Assets contributed to the Liquidating Trusts shall vest in the respective Liquidating Trust on the Effective Date following the transfer.  For the avoidance of any doubt, following the contribution of Assets to the Liquidating Trusts pursuant to Section 7.1.3 of the Plan and the Liquidating Trust Agreements, the Liquidating Trustee shall have standing to pursue Litigation Claims on behalf of the Liquidating Trusts subject only to any limitations set forth in Article 7 of the Plan or the Liquidating Trust Agreements.

### 4.   Allocation of Kaufman Rossin Settlement Payment.

The Kaufman Rossin Settlement Payment made in connection with the Kaufman Rossin Settlement Agreement shall be distributed to the Liquidating Trusts and the Offshore Funds pursuant to the Onshore/Offshore Allocation Formula such that the PBF Liquidating Trust shall

US_ACTIVE-104434022.1

receive for the benefit of its Beneficiaries $1,728,000.00, which is 18% of the Kaufman Rossin Settlement Payment, the PBF II Liquidating Trust shall receive for the benefit of its Beneficiaries $1,968,000.00, which is 20.5% of the Kaufman Rossin Settlement Payment, and the Offshore Funds shall directly receive the remaining $5,904,000.00, which is 61.5% of the Kaufman Rossin Settlement Payment.  The Liquidating Trustee's fee in connection with that portion of the Kaufman Rossin Settlement Payments to be retained by the Debtors shall be calculated as the limitation set forth pursuant to 11 U.S.C. § 326.  The Liquidating Trustee's fee in connection with the payment to be made to the Offshore Funds shall be capped at and equal to .75% of such payment.

### 5.  Title to Litigation Claims of the Debtors.

Upon the transfer of the Litigation Claims and all other Assets of the respective Debtor to the Liquidating Trust, the Liquidating Trustee shall succeed to all of the Debtor's right, title and interest in the Litigation Claims and other Assets and the Debtor and Trustee will have no further interest in or with respect to the Assets or the Liquidating Trust.

### 6.  PBF Liquidating Trust Management and Structure.

Barry Mukamal shall be the PBF Liquidating Trustee with the power and authority set forth in the PBF Liquidating Trust Agreement.  As a condition to serving as PBF Liquidating Trustee, Barry Mukamal, and any successor trustee, is required to and shall post a bond in favor of the PBF Liquidating Trust in an amount not less than the amount of Cash held by the PBF Liquidating Trust, which bond shall be in substantially the form as that required by the United States Trustee's Office for trustees serving in bankruptcy cases within the Southern District of Florida.  For the avoidance of any doubt, the PBF Liquidating Trust shall post and be responsible for all costs associated with the posting of the foregoing bond including costs associated with such bond.

As more fully set forth in the PBF Liquidating Trust Agreement, the PBF Liquidating Trustee shall oversee and direct the PBF Liquidating Trust's operations and activities, including the retention of counsel, decisions to pursue or not pursue Litigation Claims belonging solely to the PBF Liquidating Trust and its Beneficiaries, and settlement of any such Litigation Claims belonging solely to the PBF Liquidating Trust and its Beneficiaries.  In any event, any compromise or settlement of any PBF Litigation Claim shall be subject to the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

### 7.  PBF II Liquidating Trust Management and Structure and Authority of PBF II Liquidating Trust Monitor.

Barry Mukamal shall be the PBF II Liquidating Trustee with the power and authority set forth in the PBF II Liquidating Trust Agreement and subject to the power and authority granted to the PBF II Liquidating Trust Monitor in the Plan and the PBF II Liquidating Trust Agreement.  As a condition to serving as PBF II Liquidating Trustee, Barry Mukamal, and any successor trustee, is required to and shall post a bond in favor of the PBF II Liquidating Trust in an amount not less than the amount of Cash held by the PBF II Liquidating Trust, which bond shall be in substantially the form as that required by the United States Trustee's Office for trustees serving

US_ACTIVE-104434022.1

in bankruptcy cases within the Southern District of Florida. For the avoidance of any doubt, the PBF II Liquidating Trust shall post and be responsible for all costs associated with the posting of the foregoing bond including costs associated with such bond.

As more fully set forth in the PBF II Liquidating Trust Agreement, and except as set forth in Section 7.1.8 of the Plan, the PBF II Liquidating Trustee shall oversee and direct the PBF II Liquidating Trust's operations and activities. The PBF II Liquidating Trustee and the PBF II Liquidating Trust Monitor shall coordinate the analysis of potential Litigation Claims of the PBF II Liquidating Trust. Notwithstanding the foregoing, or anything in the Plan to the contrary, with respect to any PBF II Litigation Claims, the PBF II Liquidating Trust Monitor shall, in his sole discretion: (1) determine which PBF II Litigation Claims should be pursued, (2) approve of the retention of professionals other than Meland Russin & Budwick, P.A., if any, to pursue such PBF II Litigation Claims, and (3) determine the terms on which any such PBF II Litigation Claims should be resolved by settlement or otherwise. In any event, any compromise or settlement of any PBF II Litigation Claims shall be subject to the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019. Any communications between the PBF II Liquidating Trustee and the PBF II Liquidating Trust Monitor related to any third party litigation or the Petters Bankruptcy Cases shall be subject to a common interest privilege.

Pursuant to section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in the Plan or the Confirmation Order, after transfer of the Assets to the Liquidating Trusts pursuant to Section 7.1.3 of the Plan, the Liquidating Trustee will have the exclusive right to enforce any and all Litigation Claims against any Entity and rights of the Debtors that arose before or after the Petition Date, including, but not limited to, the rights and powers of a trustee and debtor-in-possession, against any Entity whatsoever. Notwithstanding the foregoing, in the event the PBF II Liquidating Trustee opts not to pursue a PBF II Litigation Claim, the PBF II Liquidating Trust Monitor may make a written demand upon the PBF II Liquidating Trustee that the PBF II Liquidating Trustee pursue such PBF II Litigation Claim. In the event the PBF II Liquidating Trustee refuses to pursue such PBF II Litigation Claim, the PBF II Liquidating Trust Monitor shall be authorized to pursue such PBF II Litigation Claim on behalf of the PBF II Liquidating Trust with the same rights possessed by the PBF II Liquidating Trustee. The PBF II Liquidating Trustee shall be kept informed as to the progress of the action and any compromise shall be subject to Bankruptcy Court approval pursuant to Rule 9019

## 8.    Administrative Powers of the Liquidating Trustee.

During the Liquidating Trustee's administration of the Liquidating Trust, and subject to: (i) all the other provisions of Liquidating Trust Agreement (including, but not limited to, Sections 4.3 and 4.4), (ii) the Plan and (iii) the Liquidating Trustee's delegation of certain rights and powers to the PBF II Liquidating Trust Monitor (in the case of the PBF II Liquidating Trust only), the Liquidating Trustee may exercise the power:

> a) To receive and hold all the assets of the Trust Estate and to have exclusive possession and control thereof as permissible under applicable law;

US_ACTIVE-104434022.1

b)  To manage, sell and convert all or any portion of the assets in the Trust Estate to Cash and distribute the net distributable proceeds as specified in the Plan and the Liquidating Trust Agreement;

c)  To enter into, perform and exercise rights under contracts binding upon the Liquidating Trust (but not upon the Liquidating Trustee in his respective individual or corporate capacity) which are reasonably incident to the administration of the Liquidating Trust and which the Liquidating Trustee, in the exercise of his best business judgment, reasonably believes to be in the best interests of the Liquidating Trust;

d)  To delegate his authority under the Liquidating Trust to other persons, provided that such delegation must be made pursuant to a written agreement that either has been approved by the Bankruptcy Court in conjunction with the confirmation of the Plan or is approved by the PBF II Liquidating Trust Monitor;

e)  To establish and maintain accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, into which Cash and property of the Liquidating Trust may be deposited, and draw checks or make withdrawals from such accounts, and to pay or distribute such amounts of the Trust Estate as permitted or required under the Plan and the Liquidating Trust Agreement;

f)  To employ attorneys, accountants, appraisers, expert witnesses, insurance adjusters or other persons whose services may be reasonably necessary or advisable in the sole judgment of the Liquidating Trustee to advise or assist him in the discharge of his duties as Liquidating Trustee, or otherwise in the exercise of any powers vested in the Liquidating Trustee, and to pay reasonable compensation to such attorneys, accountants, appraisers, expert witnesses, insurance adjusters or other persons;

g)  Pursuant to Section 1123(a)(5)(D) of the Bankruptcy Code, to sell or otherwise dispose of, and liquidate or convert to Cash, any assets of the Trust Estate, either subject to or free of any Lien, or distribute all or any part of the property of the Trust Estate among those having an interest in such property of the Trust Estate;

h)  To pay any and all reasonable and necessary expenses attributable or relating to the management, maintenance, operation, preservation or liquidation of the Trust Estate;

i)  To investigate, file, compromise, settle, withdraw or litigate in the Bankruptcy Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) objections to Claims filed against the Debtor's Estate, the Trust Estate or the Liquidating Trust;

US_ACTIVE-104434022.1

j) To investigate, analyze, compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, or otherwise deal with and settle, in accordance with the terms set forth in the Liquidating Trust Agreement, all Litigation Claims and claims in favor of or against the Liquidating Trust as the Liquidating Trustee shall deem advisable;

k) To avoid and recover transfers of the Debtor's property as may be permitted by the Bankruptcy Code or applicable state law, including, without limitation, those transfers identified in the Disclosure Statement;

l) To take all appropriate action with respect to the Trust Estate, including, without limitation, the filing, prosecution, settlement or other resolution of claims and Litigation Claims;

m) To sue or be sued in connection with any matter arising from or related to the Plan or the Liquidating Trust Agreement that affects in any way the rights or obligations of the Liquidating Trust, the Liquidating Trustee or the Beneficiaries;

n) To represent the interests of the Beneficiaries with respect to any matters relating to the Plan, the Liquidating Trust Agreement, or the Liquidating Trust affecting the rights of such Beneficiaries;

o) If the Liquidating Trust shall become subject to federal or state income tax, the Liquidating Trustee shall have the power, exercisable at his reasonable discretion, to take any action reasonably necessary to minimize any adverse federal or state income tax consequences to the Beneficiaries resulting from any distribution made by the Liquidating Trust to such Beneficiaries;

p) In general, without in any manner limiting any of the foregoing or the following, to deal with the Trust Assets or any part or parts thereof in all other ways as would be lawful for any person owning the same to deal therewith; provided, however, that the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Trust Assets of the Liquidating Trust and to further the liquidating purpose of the Liquidating Trust, are limited by the terms herein;

q) To do any and all other things, not in violation of any other terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement, which, in the reasonable business judgment of the Liquidating Trustee, are necessary or appropriate for the proper liquidation, management, investment and distribution of the assets of the Trust Estate in accordance with the provisions of the Liquidating Trust Agreement and the Plan;

r) Seek complete or partial substantive consolidation of any non-Debtor Entity with or into either or both of the Liquidating Trust or the liquidating

US_ACTIVE-104434022.1

trust created pursuant to the Plan to liquidate the assets of debtor Palm Beach Finance Partners, L.P. (together, the "Liquidating Trusts") *nunc pro tunc* to November 30, 2009 or otherwise;

s)   Seek the imposition of a bar order in favor of any entity entering into a compromise with the Liquidating Trustee with identical scope, breadth and reach as that provided in connection with the Kaufman Rossin Settlement Agreement;

t)   To file final tax returns for the Debtor; and

u)   At the appropriate time, to request that the Bankruptcy Court enter a final decree closing the Debtor's Chapter 11 Case.

### 9.   Retention of Professionals by Liquidating Trustee

Except as otherwise set forth in the Plan and the Liquidating Trust Agreements, the Liquidating Trustee shall be authorized to retain professionals, including, but not limited to attorneys, accountants and auditors to assist the Liquidating Trustee in carrying out his duties and responsibilities under the Liquidating Trust Agreements.

The Trustee has retained Meland Russin & Budwick, P.A. to represent him as Trustee in these Bankruptcy Cases and aid in prosecution of a variety of litigation related matters including the Kaufman Action and the Bank Litigation.  Meland Russin & Budwick, P.A. will be retained by the Liquidating Trustee after the Effective Date to pursue these and additional Litigation Claims that belong to the Liquidating Trusts and their Beneficiaries.

With respect to the PBF II Liquidating Trust, the retention by the PBF II Liquidating Trustee of any professionals other than Meland Russin & Budwick, P.A. to pursue Litigation Claims, as well as the compensation of such professionals, shall require the prior approval of the PBF II Liquidating Trust Monitor.

### 10. Limitations on Liquidating Trustee.

The Liquidating Trustee shall carry out the purposes of the Liquidating Trust and the directions contained herein and shall not at any time cause the Liquidating Trust to enter into or engage in any business (except as may be consistent with the limited purposes of the Liquidating Trust), including, without limitation, the purchase of any assets or property (other than such assets or property as are reasonably necessary to carry out the purposes of the Liquidating Trust Agreement, on behalf of the Liquidating Trust or the Beneficiaries).  The Liquidating Trustee is directed to take all reasonable and necessary actions to dispose of the Trust Estate in as prompt, efficient and orderly a fashion as possible, to make timely distributions of the proceeds of the Trust Estate, and to otherwise not unduly prolong the duration of the Liquidating Trust.

The Liquidating Trustee shall invest any monies held at any time as part of this Trust Estate, and every other reserve or escrow fund established pursuant to the terms of the Liquidating Trust Agreement, only in interest-bearing deposits or certificates of deposit issued by any federally insured banking institution or short-term investments, including short-term

US_ACTIVE-104434022.1

obligations of, or unconditionally guaranteed as to payment by, the United States of America and its agencies or instrumentalities, pending the need for the disbursement thereof in payment of costs, expenses, and liabilities of the Liquidating Trust or in making distributions pursuant to Section 5 of the Liquidating Trust Agreement. The Liquidating Trustee shall be restricted to the collection and holding of such monies and any income earned on such monies and to the payment and distribution thereof (at least annually if such monies are not necessary to maintain the value of the Trust Estate or to satisfy Claims against the Trust Estate) for the purposes set forth in the Plan and the Liquidating Trust Agreement, and to the conservation and protection of the Trust Estate in accordance with the provisions hereof.

The Liquidating Trustee shall, prior to taking any action with respect to the compromise or settlement of a Litigation Claim or claim in which PBF II has an interest, consult with the PBF II Liquidating Trust Monitor whose approval of such compromise or settlement shall be required.

In all other events, unless otherwise set forth herein, the Liquidating Trustee is authorized to compromise or settle an action without any advanced notice or consent (other than any consent required to be received from the PBF II Liquidating Trust Monitor), if the Liquidating Trustee reasonably believes such settlement or compromise to be in the best interests of the Liquidating Trust, and shall be held harmless by the Beneficiaries in taking such action.

Any compromise or settlement of an action by the Liquidating Trustee pursuant to Section 4.4 of the Liquidating Trust Agreement shall be subject to approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

Notwithstanding anything herein to the contrary, after the Effective Date, and without providing notice to or obtaining the approval of any party, the Liquidating Trustee shall be authorized pursuant to Section 7.6(e) of the Liquidating Trust Agreement to pay on a monthly basis: (i) the reasonable fees and expenses for services rendered the Liquidating Trustee by his professionals, and (ii) the reasonable fees and expenses incurred by the PBF II Liquidating Trust Monitor and his retained professionals; provided, however, if the fees and expenses incurred by such professionals after the Effective Date are attributable in any degree to the PBF II Liquidating Trust, the Liquidating Trustee shall obtain the approval of the PBF II Liquidating Trust Monitor prior to making such payments or else be required to seek leave of the Bankruptcy Court.

## 11. Reports.

The Liquidating Trustee shall:

Prepare and file unaudited interim financial reports as may be required by regulatory authorities, applicable laws, rules or regulations or as the Liquidating Trustee deems advisable during the fiscal year;

Prepare, file and mail, within the time required by applicable law or regulation, necessary income tax information, tax returns or reports to the Beneficiaries and applicable taxing authorities, including, on an annual basis, the manner and calculation of the Liquidating Trust's taxable gain or loss which the Liquidating Trust would recognize if it were a separate taxable

US_ACTIVE-104434022.1

entity. In this connection, the Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a); and

As soon as practicable after each calendar quarter, and in no event later than thirty (30) days after the end of each quarter, the Liquidating Trustee shall submit to the United States Trustee, and any Beneficiary who requests copies of such quarterly report after the Confirmation Date, an unaudited written report and account showing:

- the assets and liabilities of the Liquidating Trust;

- any distributions made and expenses paid pursuant to the Plan and the Liquidating Trust Agreement during that calendar quarter;

- any changes in the Trust Assets that have not been previously reported; and,

- any material action taken by the Liquidating Trustee in the performance of his or her duties under the Liquidating Trust Agreement that has not been previously reported.

## 12. Costs and Expenses of Liquidating Trustee.

Except as set forth in the Liquidating Trust Agreement, the Liquidating Trustee shall pay out of the Trust Assets, on a monthly basis and without notice or application to the Bankruptcy Court, all reasonable costs, expenses and obligations incurred by the Liquidating Trustee in carrying out his duties under the Liquidating Trust Agreement or in any manner connected, incidental or related to the administration of the Liquidating Trust, including, without limitation:

a)  Any reasonable, documented fees and out-of-pocket expenses of attorneys, accountants, investment advisors, expert witnesses, insurance adjusters, professionals or other persons whom the Liquidating Trustee may reasonably deem advisable to employ in connection with the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement; and

b)  Any taxes, charges and assessments which may be owed by, or levied or assessed against, the Trust Estate or any property held in trust pursuant to the Liquidating Trust Agreement.

After the Effective Date, the PBF II Liquidating Trust Monitor and the Liquidating Trustee shall, no less frequently than once every four (4) months from the Effective Date, submit applications to the Bankruptcy Court for final approval of reimbursement of fees and expenses paid to their professionals.  Any such payments shall be payable from the Trust Assets of the Liquidating Trusts.

## 13. Allocation of Costs and Expenses of the Liquidating Trusts.

All costs and expenses distinctly incurred by one of the Liquidating Trusts shall be the obligation of the respective Liquidating Trust and shall be payable from the Trust Assets of such

US_ACTIVE-104434022.1

Liquidating Trust.  Compensation of the Liquidating Trustee will be paid from the Trust Assets of the respective Liquidating Trust pursuant to the provisions of section 326 of the Bankruptcy Code.  However, any professional fees, costs and expenses incurred on behalf of both of the Liquidating Trusts shall be the obligation of both Liquidating Trusts, payable by each according to the Pro Rata Allocation Formula set forth in the Plan.

After the Effective Date, and without providing notice to or obtaining the approval of any party, the Liquidating Trustee shall be authorized pursuant to Sections 4.4(c) and 7.6(e) of the PBF II Liquidating Trust Agreement to pay on a monthly basis the reasonable fees and expenses incurred by the PBF II Liquidating Trust Monitor.  The PBF II Liquidating Trust Monitor shall submit an application to the Bankruptcy Court no later than every four (4) months starting from the Effective Date for final approval of the fees and expenses paid to the PBF II Liquidating Trust Monitor in connection with carrying out its duties consistent with the Plan and the Liquidating Trust Agreement.  Any such payments shall be payable from the Trust Assets of the Liquidating Trusts.

**14. Compensation of Professionals Retained by the Liquidating Trustee and the PBF II Liquidating Trust Monitor.**

Professionals retained by the PBF II Liquidating Trust Monitor and the Liquidating Trustees shall be entitled to monthly interim compensation for fees and expenses incurred in carrying out their duties consistent with the Plan and the Liquidating Trust Agreements; provided, however that the PBF II Liquidating Trust Monitor or the Liquidating Trustees shall provide to the other, and the United States Trustee, notice of such requested fees and expenses on a monthly basis.  Following such notice, if no objections to the fees and expenses set forth in the monthly statement are received in writing within 10 business days, 100% of such professional's fees and expenses shall be paid.  Notice of and objections to such fees and expenses shall be made via e-mail and/or facsimile.  If objections to the fees and expenses are made and cannot be resolved, such objections will be heard and resolved by the Bankruptcy Court.  Any such fees and expenses shall be payable from the Trust Assets of the Liquidating Trusts, as set forth in such application.  The PBF II Liquidating Trust Monitor and the Liquidating Trustee shall, no less frequently than once every four (4) months starting from the Effective Date, submit applications to the Bankruptcy Court for final approval of reimbursement of fees and expenses paid to their professionals.

The Liquidating Trustees' general and litigation counsel shall be Meland Russin & Budwick, P.A.  The terms of compensation for Meland Russin & Budwick, P.A. shall be the same in all respects as those requested in the Trustee's Motion to Approve Hybrid Form of Compensation for Litigation Counsel, as may be amended with the consent of Meland Russin & Budwick, P.A. and as approved by the Bankruptcy Court.

The PBF II Liquidating Trust Monitor's general counsel shall be Reed Smith LLP and Levine Kellogg Lehman Schneider & Grossman LLP and the professionals at those firms shall be compensated at 75% as to Reed Smith and 100% as to Levine Kellogg of the firm's respective standard billing rates, respectively.

US_ACTIVE-104434022.1

**15. Indemnification.**

Pursuant to the Liquidating Trust Agreements, the Liquidating Trust agrees indemnify to the full extent of the Trust Estate any person or entity who was or is a party, or is threatened to be made a party to any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative by reason of the fact that such person or entity is or was a Liquidating Trustee, the PBF II Liquidating Trust Monitor or an employee, attorney or agent of the Liquidating Trust, Liquidating Trustee or PBF II Liquidating Trust Monitor, from and against any and all expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person or entity in connection with such action, suit or proceeding, including appeals thereof, if such person or entity acted without gross negligence and willful misconduct in the exercise and performance of any power or duties of such person or entity in accordance with the Liquidating Trust Agreement.

**16. Limitation on Liability.**

No provision of the Liquidating Trust Agreement shall be construed to impart any liability upon the Liquidating Trustee unless it shall be proven that the Liquidating Trustee's actions or omissions constituted gross negligence or willful misconduct in the exercise of or failure to exercise any right or power vested in the Liquidating Trustee under the Liquidating Trust Agreement.

No provision of the Liquidating Trust Agreement shall be construed to impart any liability upon the PBF II Liquidating Trust Monitor unless it shall be proven that the PBF II Liquidating Trust Monitor's actions or omissions constituted gross negligence or willful misconduct in the exercise of or failure to exercise any right or power vested in the PBF II Liquidating Trust Monitor under the Liquidating Trust Agreement.

**17. Resignation and Removal of the Liquidating Trustee.**

The Liquidating Trustee may resign and be discharged from any future obligations and liabilities under the Liquidating Trust Agreement by giving written notice thereof to the Bankruptcy Court at least thirty (30) days prior to the effective date of such resignation. Such resignation shall become effective on the date specified in such notice.

The Liquidating Trustee may be removed at any time by order of the Bankruptcy Court upon motion by any party in interest pursuant to the standard under applicable law for removal of a Chapter 7 trustee. Upon any such removal, such removed Liquidating Trustee shall be entitled to any reimbursement and indemnification set forth in the Liquidating Trust Agreement which remain due and owing to such Liquidating Trustee at the time of such removal.

If, at any time, the Liquidating Trustee shall give notice of his intent to resign pursuant to Section 7.7 of the Liquidating Trust Agreement, or be removed or shall become incapable of acting, counsel to the Liquidating Trustee shall provide notice thereof to the Bankruptcy Court. The PBF II Liquidating Trust Monitor, with the approval of the Bankruptcy Court, shall designate a successor liquidating trustee for the PBF II Liquidating Trust and the Office of the United States Trustee, with the approval of the Bankruptcy Court, shall designate a successor liquidating trustee for the PBF Liquidating Trust.

US_ACTIVE-104434022.1

**18.  Resignation and Removal of the PBF II Liquidating Trust Monitor.**

The PBF II Liquidating Trust Monitor may resign and be discharged from any future obligations and liabilities hereunder by giving written notice thereof to the Bankruptcy Court at least thirty (30) days prior to the effective date of such resignation. Such resignation shall become effective on the date specified in such notice.  If, at any time, the PBF II Liquidating Trust Monitor shall give notice of his intent to resign or shall become incapable of acting, counsel to the PBF II Liquidating Trust Monitor shall provide notice thereof to the Bankruptcy Court.  The PBF II Liquidating Trust Monitor, in his sole discretion, shall designate a successor liquidating trust monitor to act under the Liquidating Trust Agreement.

Any successor PBF II Liquidating Trust Monitor appointed hereunder shall execute an instrument accepting such appointment hereunder and shall deliver counterparts thereof to the Bankruptcy Court.  Thereupon, such successor PBF II Liquidating Trust Monitor shall, without any further act, become vested with all of the estates, properties, rights, powers, trusts and duties of his predecessor in the PBF II Liquidating Trust, with like effect as if originally named herein. The PBF II Liquidating Trust Monitor may be removed at any time by order of the Bankruptcy Court upon motion by any party in interest pursuant to the standard under applicable law for removal of a Chapter 7 trustee.

**19. Continuation of Automatic Stay.**

In furtherance of the implementation of the Plan, except as otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect and apply to all Creditors and Beneficiaries holding Claims against the Debtors, the Estates, the Assets, the Liquidating Trustee, the Liquidating Trusts and the Trust Assets until the Final Distribution Date.

**20. Termination Date.**

The Liquidating Trust shall terminate on such date that: (a) a final decree has been entered closing the Chapter 11 Cases and (b) all assets in the Trust Estate have been distributed and (c) all Litigation Claims have been pursued or abandoned pursuant to, and in accordance with, the Plan and the Liquidating Trust Agreement (the "Termination Date"). However, the term of the Liquidating Trust shall not exceed five (5) years from the Effective Date, provided that, upon a finding that an extension is necessary to the liquidating purpose of the Liquidating Trust and upon approval by the Bankruptcy Court, the term may be extended for a finite term based on the particular facts and circumstances. Each such extension must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term.  The Liquidating Trustee and the PBF II Liquidating Trust Monitor shall be released of all liabilities and discharged from his or her obligations under the Plan or the Liquidating Trust Agreement once the Liquidating Trust has terminated.

**F.  Termination of the Debtors**

As soon as practicable after the Effective Date, each of the Debtors will be dissolved  and cease to exist for all purposes without the necessity for any other or further actions to be taken by

US_ACTIVE-104434022.1

or on behalf of the Debtors or payments to be made in connection therewith; provided, however, that pursuant to section 1124(b) of the Bankruptcy Code, the Liquidating Trustee shall be authorized to file each Debtor's final tax returns, and shall be authorized to file and shall file with the official public office for keeping corporate records in each Debtor's state of incorporation a certificate of dissolution or equivalent document.  Such a certificate of dissolution may be executed by the Liquidating Trustee without the need for any action or approval by any other party.  From and after the Effective Date, the Debtors (i) for all purposes shall be deemed to have withdrawn their business operations from any state in which they were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

### G.  Closing of the Chapter 11 Cases

Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Chapter 11 Cases, when all Assets contributed to the Liquidating Trusts have been liquidated and converted into Cash (other than those Assets abandoned by the Liquidating Trusts), and such Cash has been distributed in accordance with the Liquidating Trust Agreements and the Plan, and the Final Distribution made, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### H.  Objections to Claims

Subject to applicable law, and except as otherwise set forth in the Plan, from and after the Effective Date, the Liquidating Trustee, the PBF II Liquidating Trust Monitor and any Creditor shall have the authority to litigate to judgment objections to Claims or Interests pursuant to applicable procedures established by, or grounds set forth in, the Bankruptcy Code, the Bankruptcy Rules, the Liquidating Trust Agreements and the Plan.  Any compromise of any Claim objection shall be subject to Bankruptcy Court approval.  The deadline within which objections to Claims or Interests may be filed shall be one year from the Effective Date.

Objections to any Administrative Claim shall be Filed and served on the claimant no later than thirty (30) days after the Administrative Claims Bar Date.  Except with respect to Administrative Claims, no deadlines by which objections to Claims must be Filed have been established in these Chapter 11 Cases.

The Trustee has received and reviewed the Palm Beach Offshore Claims, including all information supporting such Claims.  Notwithstanding anything to the contrary in the Plan or in the PBF II Liquidating Trust Agreement, upon confirmation of the Plan, the Palm Beach Offshore Claims shall be deemed Allowed Class 2B Claims (Other PBF II General Unsecured Claims) upon entry of the Confirmation Order and shall not be subject to dispute, challenge or reduction in amount by any party-in-interest including without limitation the PBF II Liquidating Trustee, although the Claims shall be reduced by the amount of the Kaufman Rossin Settlement Payment received by the Offshore Funds.  The Palm Beach Offshore Claims will be treated as set forth in Section 5.4 of the Plan.

- 34 -

### I.   Distributions Under the Plan

#### 1.   Payment Address and Form of Payment.

Distributions to holders of Allowed Claims or Interests shall be made: (a) at the addresses set forth in the proofs of Claim Filed by such holders; (b) at the addresses set forth in any written notices of address change Filed with the Bankruptcy Court or delivered to the Liquidating Trustee after the date on which any related proof of Claim was Filed; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim or Interest if no proof of Claim has been Filed and the Liquidating Trustee has not received a written notice of a change of address.

Except as otherwise provided in the Liquidating Trust Agreements or the Confirmation Order, Cash payments to be made pursuant to the Plan shall be made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

Other than in the Final Distribution, no payment of Cash in an amount of less than $250.00 shall be required to be made on account of any Allowed Claim.

#### 2.   No Postpetition Interest.

Postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a Final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim. To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Allowed Claim first and then, to the extent the consideration exceeds the principal amount of the Allowed Claim, to the portion of such Allowed Claim representing accrued but unpaid interest.

#### 3.   Undeliverable Distributions.

If the distribution check to any holder of an Allowed Claim or Interest is not cashed within 90 days after issuance by the Liquidating Trustee, a stop payment order shall be given with respect to the check and no further distributions shall be made to such holder on account of such Allowed Claim.  Such Allowed Claim or Interest shall be discharged and the holder of such Allowed Claim or Interest shall be forever barred from asserting such Claim against, or Interest in, the Liquidating Trusts, the Liquidating Trustee, the Debtors, their Estates or their respective property. In such cases, any Cash held for distribution on account of such Claim shall remain property of the respective Liquidating Trust and be distributed to other Creditors in accordance with the terms of the Plan and the Liquidating Trust Agreements.

US_ACTIVE-104434022.1

### 4. Interim Distributions.

Unless otherwise provided in the Plan, the Liquidating Trustee in his discretion may make periodic distributions to the Beneficiaries entitled thereto in accordance with Section 5.1 of the Liquidating Trust Agreements.

### 5. Final Distribution.

The Liquidating Trustee shall make a final distribution in accordance with Section 5.5 of the Liquidating Trust Agreements.

### 6. Allowed Interests Subordinated.

Allowed Interests shall be subordinated to Allowed Claims for purpose of distributions pursuant to Sections 5.5 and 5.6 of the Plan. Accordingly, (i) holders of Allowed PBF Interests shall not receive any distribution from the PBF Liquidating Trust on account of their Allowed PBF Interest unless and until holders of Allowed Class 1A and Class 2A Claims have been satisfied in full, and (ii) holders of Allowed PBF II Interests shall not receive any distribution from the PBF II Liquidating Trust on account of their Allowed PBF II Interest unless and until holders of Allowed Class 1B and Class 2B Claims have been satisfied in full.

### 7. Disputed Claims Reserves.

The Liquidating Trustee shall establish reserves for Disputed Claims in accordance with the terms of the Liquidating Trust Agreements.

### 8. Compliance with Tax Requirements.

In connection with the Plan and the distributions made in accordance thereto, to the extent applicable, the Liquidating Trusts shall comply with all tax withholding and reporting requirements imposed by any governmental unit, if any, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

### J. Conditions to Confirmation

As a condition to entry of the Confirmation Order:

- The Confirmation Order shall be in form and substance satisfactory to the Trustee and the JOL including providing for the approval of the Kaufman Rossin Settlement Agreement.

### K. Conditions to the Effective Date

The Plan shall not become effective and the Effective Date shall not occur unless and until:

US_ACTIVE-104434022.1

- The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Trustee and the JOL;

- No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in Section 10.2 of the Plan are satisfied, or, if permitted, waived; and

- All documents, instruments and agreements, in form and substance satisfactory to the Trustee and the JOL, provided for under the Plan or necessary to implement the Plan, including, without limitation, the Liquidating Trust Agreements, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

### L.  Modification of the Plan

Subject to the restrictions on Plan modifications set forth in section 1127 of the Bankruptcy Code, and subject to the consent of the other, the Plan Proponents reserve the right to alter, amend or modify the Plan before its substantial consummation.

### M. Effect of Confirmation

#### 1.   Binding Effect.

Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against or Interest in the Debtors and their respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

#### 2.   Claims Barred Against Kaufman Rossin & Co.

Upon entry of the Confirmation Order, the Kaufman Rossin Settlement Agreement shall be deemed approved in all respects and the parties to the agreement shall be deemed authorized and directed to implement each of all of its terms.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's finding of each of the following as well as the approval of the Bar Order contemplated by the Kaufman Rossin Settlement Agreement:

a) The Bankruptcy Court has jurisdiction over the Kaufman Rossin Settlement Agreement pursuant to 28 U.S.C. § 1334, and authority to enter a Bar Order pursuant to 11 U.S.C.  § 105(a).

b) The form and means of the notice of the Bar Order and the Plan are determined to have been the best notice practicable under the circumstances and to be good and sufficient notice to all persons whose interests would or could be affected by the Bar Order, including, but not limited to, (1) all creditors of either of the Debtors; (2) the JOL, on behalf the Offshore Funds; (3) all shareholders and creditors of the Offshore Funds; (4) all limited partners of either of the Debtors; (5) all general

US_ACTIVE-104434022.1

partner(s) of either of the Debtors; and (6) all entities that acted or are acting for or on behalf of the limited and general partners of the Debtors.

c)  Entry of a Bar Order is appropriate in order to achieve the finality and repose that is contemplated as a term of the Kaufman Rossin Settlement Agreement and good cause therefore exists for the entry of a Bar Order, and the Bar Order is fair and equitable.  *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 495 96 (11th Cir. 1992); *see also In re Munford, Inc.*, 97 F.3d 449, 454 55 (11th Cir. 1996); *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995); *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155 (4th Cir. 1991). The Bar Order shall be interpreted as broadly as possible so as to effectuate the purposes stated herein.

d)  *In consideration of the payments to be made by Kaufman Rossin pursuant to the Kaufman Rossin Settlement Agreement, which will enable the Trustee to confirm this Plan and make certain cash distributions as provided for herein, the Releasors are deemed to have released the Barred Claims.   Specifically, Releasors, as defined in Section 1.77, are permanently barred and enjoined from commencing, prosecuting, or asserting either directly or in any other capacity, against Kaufman Rossin, any and all liabilities, judgments, rights, claims, cross claims, counterclaims, third party claims,  demands, suits, matters, obligations, damages, debts, losses, costs, actions and causes of action, of every kind and description, arising under common law, rule, regulation or statute, whether arising under state or federal law, whether presently known or unknown that any Releasor now has, ever had or may claim to have in the future that is a Barred Claim; <u>provided</u> that (a) the Bar Order does not release, or enjoin any of Releasors from commencing, prosecuting, or asserting any claims to interpret or enforce the terms of the Kaufman Rossin Settlement Agreement or the Bar Order, and (b) the Bar Order does not release or enjoin any of Releasors from commencing, prosecuting, or asserting any claims against any party other than Kaufman Rossin; and (c) the Bar Order does not release or enjoin any of Releasors from commencing, prosecuting, or asserting any claims against the Kaufman Rossin Affiliated Parties other than those based upon or directly to the professional services provided by Kaufman Rossin to the Debtors of the Offshore Funds.*

e)  The Bankruptcy Court retains exclusive jurisdiction to enforce or interpret the Bar Order.

## N.  Exculpation, Injunction, and Limitation of Liability

### 1.  Exculpation.

*Except as otherwise specifically provided in the Plan, none of the Debtors, the Trustee, the JOL or any of such parties' employees, representatives, advisors, attorneys, financial advisors, investment bankers or agents or any of such parties' successors and assigns, shall have*

- 38 -

US_ACTIVE-104434022.1

or incur, and are hereby released from, any Claim, obligation, cause of action or liability to one another or to any holder of a Claim or an Interest, or any other party in interest, or any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities (if any) under the Plan.

Notwithstanding any other provision of the Plan, neither any holder of a Claim or Interest, or other party in interest, nor any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any Debtor, the Trustee, the JOL or any of such parties' employees, representatives, advisors, attorneys, financial advisors, investment bankers or agents or such parties successors and assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for such Persons' gross negligence or willful misconduct..

## 2. Injunctions.

Except as otherwise specifically provided in the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims, rights, causes of action, liabilities or any Interests based upon any act or omission, transaction or other activity of any kind or nature related to the Debtors or the Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in the Plan or the Confirmation Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Interest and regardless of whether such Entity has voted to accept the Plan, and any successors, assigns or representatives of such Entities shall be precluded and permanently enjoined on and after the Effective Date from (a) the commencement or continuation in any manner of any claim, action or other proceeding of any kind with respect to any Claim, Interest or any other right or claim against the Debtors, or any assets of the Debtors which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any Claim, Interest or any other right or claim against the Debtors, or any assets of the Debtors which such Entities possessed or may possess prior to the Effective Date, (c) the creation, perfection or enforcement of any encumbrance of any kind with respect to any Claim, Interest or any other right or claim against the Debtors or any assets of the Debtors which they possessed or may possess prior to the Effective Date, and (d) the assertion of any Claims that are released hereby.

## 3. Limitation of Liability.

Except as expressly set forth in the Plan, following the Effective Date, none of the Debtors, the Trustee, the JOL or any of such parties' employees, advisors, attorneys, professionals or agents shall have or incur any liability to any holder of a Claim or Interest for

US_ACTIVE-104434022.1

*any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or any contract, instrument, release or other agreement or document created in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct.*

### O.  Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date and the transfer of the Assets to the Liquidating Trusts, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases after the Effective Date to the fullest extent legally permissible, including but not limited to jurisdiction to, among other things:

a)  Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of, or subordinate for any purposes pursuant to Section 510, any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of all Claims and Interests;

b)  Hear and determine any and all causes of action and rights of the Debtors that arose before or after the Petition Date that are expressly preserved pursuant to, among other things, section 1123(b)(3) of the Bankruptcy Code, are yet to be liquidated and are preserved for prosecution by the Liquidating Trustee or other appropriate party in interest, including any designee or successor, against any Person whatsoever (including, but not limited to, those parties listed on Schedule 1.52 of the Plan), on account of any and all Litigation Claims defined in Section 1.52 of the Plan (including, but not limited to, all avoidance powers granted to the Debtors under the Bankruptcy Code and all causes of action and remedies granted pursuant to sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, and all non-avoidance actions owned by the Debtors' estates including, but not limited to, claims of tort, breach of contract and claims lying in law or in equity, whether based in common law, Florida state law, another state's law, Federal law or otherwise);

c)  Grant or deny any applications for allowance of compensation for Professionals authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

d)  Resolve any matters relating to the assumption, assumption and assignment or rejection of any executory contract to which either Debtor is a party or with respect to which either of the Debtors may be liable, including without limitation the determination of whether such contract is executory for the purposes of section 365 of the Bankruptcy Code, and hear, determine and, if necessary, liquidate any Claims arising therefrom;

- 40 -

e)  Enter orders approving the Liquidating Trusts' post-Confirmation sale or other disposition of Trust Assets;

f)  Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and the Liquidating Trust Agreements;

g)  Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving any Debtor that may be pending in the Chapter 11 Cases on the Effective Date;

h)  Hear and determine matters concerning state, local or federal taxes in accordance with sections 346, 505 or 1146 of the Bankruptcy Code;

i)  Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Liquidating Trust Agreements, the Plan and the Confirmation Order;

j)  Hear and determine any applications by the Liquidating Trustee to retain one or more professionals to assist the Liquidating Trustee in carrying out his duties and obligations under the respective Liquidating Trust Agreements;

k)  Resolve any disputes relating to monthly fee invoices for allowance of compensation submitted by the Liquidating Trustee, the PBF II Liquidating Trust Monitor or their professionals;

l)  Grant or deny any semi-annual application for allowance of compensation submitted by the PBF II Liquidating Trustee, the PBF II Liquidating Trust Monitor or their professionals;

m) Hear and determine any matters concerning the enforcement of the provisions of Article 11 of the Plan and any other exculpations, limitations of liability or injunctions contemplated by the Plan;

n)  Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Liquidating Trust Agreements, the Plan or the Confirmation Order;

o)  Permit the Trustee or the JOL, to the extent authorized pursuant to section 1127 of the Bankruptcy Code, to modify the Plan or any agreement or document created in connection with the Plan or remedy any defect or omission or reconcile any inconsistency in the Plan or any agreement or document created in connection with the Plan;

p)  Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any

- 41 -

entity with consummation, implementation or enforcement of the Liquidating Trust Agreements, the Plan or the Confirmation Order;

q)  Enforce any injunctions entered in connection with or relating to the Plan or the Confirmation Order;

r)  Enter and enforce such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or distributions pursuant to the Liquidating Trust Agreements or the Plan are enjoined or stayed;

s)  Determine any other matters that may arise in connection with or relating to the Plan or any agreement or the Confirmation Order;

t)  Order the complete or partial substantive consolidation of any non-Debtor Entity with or into either or both of the Liquidating Trusts *nunc pro tunc* to November 30, 2009 or otherwise;

u)  Order the imposition of a Bar Order in favor of any Entity entering into a compromise of a Litigation Claim(s) with the Liquidating Trustee with identical scope, breadth and reach as that provided in connection with the Kaufman Rossin Settlement Agreement;

v)  Enter any orders in aid of prior orders of the Bankruptcy Court; and

w)  Enter a final decree closing the Chapter 11 Cases.

### P.  No Admissions

If Confirmation or the Effective Date does not occur, nothing contained in the Plan or Disclosure Statement shall be deemed as an admission by the Debtors, the Plan Proponents or any other party with respect to any matter set forth therein or herein including, without limitation, liability on any Claim or the propriety of any Claims classification.  If the Effective Date does not occur within thirty (30) days following entry of the Confirmation Order, the Plan will be null and void and of no further effect.

### Q.  Preservation of Rights of Setoffs

The Debtors, may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have against the holder of such Claims; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that the Debtors may have against such holder.

- 42 -

## V.
## CONFIRMATION OF THE PLAN

### A.  Confirmation Hearing

The Bankruptcy Court has scheduled the hearing for confirmation of the Plan for October 19, 2010 at 9:30 a.m. (prevailing Eastern time) (the "Confirmation Hearing") before the Honorable Paul G. Hyman, Chief Judge of the United States Bankruptcy Court for the Southern District of Florida (West Palm Beach Division), in the United States Bankruptcy Court for the Southern District of Florida (West Palm Beach Division), Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, West Palm Beach, FL 33401.  The Confirmation Hearing may be adjourned from time to time without notice except as given at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.  The Bankruptcy Court has directed that objections, if any, to the confirmation of the Plan be served on or before October 5, 2010 in the manner described in the Notice accompanying this Disclosure Statement.

### B.  Confirmation Standards

For a plan to be confirmed, the Bankruptcy Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of the Bankruptcy Code.  Section 1129 of the Bankruptcy Code also imposes requirements that at least one class of impaired claims accept a plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interest of creditors, and that a plan be fair and equitable with respect to each class of claims or interests which is impaired under the plan.

The Bankruptcy Court will confirm a plan only if it finds that all of the requirements enumerated in section 1129 of the Bankruptcy Code have been met.  The Plan Proponents believe that the Plan satisfies all of the requirements for confirmation.

## VI. FUNDING AND FEASIBILITY OF THE PLAN

### A.  Funding of the Plan

Payment of Allowed Administrative Claims, fees incurred by the Liquidating Trust pursuant to 28 U.S.C. § 1930 (the "Statutory Fees"), and Allowed Class 1A, 1B, 2A and 2B Claim, and Class 3A and 3B Interests, shall be funded from the Trust Assets of the respective Liquidating Trusts, including that portion of the Kaufman Rossin Settlement Payment allocable to the Liquidating Trusts, as the same may be augmented from time to time from, among other things, the liquidation of Trust Assets and the prosecution and enforcement of the Litigation Claims by the Liquidating Trust(s).  The Plan Proponents expect that the Trust Assets as of the Effective Date will be sufficient to pay Allowed Administrative Claim (including Professional Claims), Statutory Fees and any Allowed Claim of the JOL for making a substantial contribution in these Chapter 11 Cases.

US_ACTIVE-104434022.1

### B.  Best Interests Test

Notwithstanding acceptance of the Plan by each Impaired Class, in order to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each holder of a Claim or Interest in any such Impaired Class who has not voted to accept the Plan. Accordingly, if an Impaired Class does not unanimously accept the Plan, the best interests test requires the Bankruptcy Court to find that the Plan provides to each member of such Impaired Class a recovery on account of the Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that each such Class member would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

To estimate what members of each Impaired Class of unsecured creditors and equity security holders would receive if the Debtors were liquidated under chapter 7, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the Debtors' assets if the Chapter 11 Cases were converted to chapter 7 cases under the Bankruptcy Code and the assets were liquidated by a trustee in bankruptcy (the "Liquidation Value" of such assets). The Liquidation Value would consist of the net proceeds from the disposition of the Debtors' Assets and would be augmented by any Cash held by the Debtors.

The Liquidation Value of the Debtors' Assets available to General Unsecured Claims would be reduced by the costs and expenses of the liquidation, as well as other administrative expenses of the chapter 7 cases. The Debtors' costs of liquidation under chapter 7 would include the compensation of a trustee or trustees, as well as counsel and other professionals retained by the trustee(s), disposition expenses, all unpaid expenses incurred by the Debtors during their chapter 11 proceedings (such as compensation for attorneys and accountants) which are allowed in the chapter 7 proceedings, and litigation costs and claims against the Debtors arising from their business operations during the pendency of their Chapter 11 Cases and chapter 7 liquidation proceedings. These costs, expenses and claims would be paid in full out of the Debtors' liquidation proceeds before the balance would be made available to pay General Unsecured Claims.

The Plan Proponents believe that distributions under the Plan will provide at least the same recovery to holders of Allowed Claims and Interests against each of the Debtors on account of such Allowed Claims and Interests as would distributions by a chapter 7 trustee regardless of whether the Debtors were substantively consolidated in such chapter 7 case(s).

The Plan Proponents believe that holders of Allowed Claims will receive a greater distribution pursuant to the Plan than they would under Chapter 7 because of the imposition of Bar Orders which will enhance the settlement value of Litigation Claims.  As an example, the willingness of Kaufman Rossin and its malpractice carrier to tender the remaining portion of the existing Kaufman Rossin insurance policy is premised upon the Bar Order to be provided in favor of Kaufman Rossin.

### C.  Avoidance Action Analysis

Given that the Debtors ceased operating more than a year prior to the Petition Date, the Plan Proponents do not believe that there will be any meaningful recovery pursuant to Section

- 44 -

547 of the Bankruptcy Code. However, except as otherwise provided in the releases, the Liquidating Trustee and the PBF II Liquidating Trust Monitor, in the case of transfers made by PBF II, reserve their right to conduct a further review of the transfers made within 90 days and one year of the Petition Date and to seek recovery of such transfers under the provisions of the Bankruptcy Code before or after the Confirmation Date.

The Plan Proponents believe there may be additional Litigation Claims pursuant to Sections 544 and 548 of the Bankruptcy Code and Florida Statute Chapter 726 against some of the parties identified on Schedule 1.52 of the Plan.

### D.  Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that the Debtor be able to perform their obligations under the Plan. For purposes of determining whether the Plan meets this requirement, the Plan Proponents analyzed the Debtors' ability to meet their obligations under the Plan. The Plan Proponents believe that the Debtors have adequate funding to be able to meet their obligations under the Plan.

### E.  Risk Factors Associated with the Plan

Holders of Claims against, and Interests in, the Debtors should read and consider carefully the information set forth below, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference), prior to voting to accept or reject the Plan. This information, however, should not be regarded as the only risk involved in connection with the Plan and its implementation.

The Claims of holders of Class 1A, 1B, 2A and 2B Claims are subject to the risk of dilution if the total amount of Claims is higher than the Plan Proponents' estimate. A number of Disputed Claims are material and the total amount of all Claims, including Disputed Claims, is materially in excess of the total amount of Allowed Claims assumed in calculating the estimated distributions as set forth herein. Accordingly, the amount of distribution that will ultimately be received by any particular holder of a Class 1A, 1B, 2A or 2B Claim may be adversely affected by the aggregate amount of all Allowed Claims. Consequently, distributions to holders of Class 1A, 1B, 2A and 2B Claims will be made on an incremental basis until all Disputed Claims have been resolved.

A substantial amount of time may elapse between the Effective Date and the receipt of distributions, including, but not limited to, a Final Distribution, under the Plan for certain holders of Claims, because it may take a substantial amount of time to obtain a recovery, if any from the pursuit of the Litigation Claims by the Liquidating Trusts. To the extent that distributions under the Plan are derived, in whole or in part, from recoveries on the Litigation Claims prosecuted by the Liquidating Trustee (or in the case of certain claims held by the PBF II Liquidating Trust, the PBF II Liquidating Trust Monitor), there can be no assurance that any such Litigation Claims will produce recoveries that will provide sufficient funds for such distributions to be made by the Liquidating Trusts. The determination of whether distributions will be made to Class 1A, 1B, 2A or 2B will depend almost entirely on the outcome of the Litigation Claims.

US_ACTIVE-104434022.1

The Kaufman Rossin Settlement is contingent upon approval by the Bankruptcy Court, which further requires imposition of a Bar Order precluding claims against Kaufman Rossin. If the Bankruptcy Court fails to approve the Bar Order, the Trustee may seek funding for the activities of the Liquidating Trusts from other sources and/or seek to modify the mode of compensation for the Liquidating Trustee's professionals.

Even if all Classes entitled to vote accept the Plan, the Plan might not be confirmed by the Bankruptcy Court. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization unless, as here, such liquidation or reorganization is proposed in the plan, and that the value of distributions to dissenting creditors and equity security holders not be less than the value of distributions such creditors and equity security holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code. Because the Plan contemplates the liquidation of the Debtors' Estates, the Plan Proponents believe that the foregoing concerns are not implicated and that the Plan satisfies all the requirements for confirmation of a plan of reorganization under the Bankruptcy Code. There can be no assurance, however, that the Bankruptcy Court will also conclude that the requirements for confirmation of the Plan have been satisfied.

Additionally, successful confirmation of the Plan is subject to satisfaction or waiver of the conditions to Plan effectiveness, which are discussed in detail above. **THUS, THERE CAN BE NO ASSURANCE THAT ALL OF THE VARIOUS CONDITIONS TO EFFECTIVENESS OF THE PLAN WILL BE TIMELY SATISFIED OR WAIVED.**

## VII.
## ALTERNATIVES TO THE PLAN

Although this Disclosure Statement is intended to provide information to assist a Claim or Interest holder in determining whether to vote for or against the Plan, a summary of the alternatives to confirmation of the Plan may be helpful.

If the Plan is not confirmed with respect to either of the Debtors, the following alternatives are available: (a) confirmation of another chapter 11 plan; (b) conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; or (c) dismissal of the Chapter 11 Cases leaving creditors and interest holders to pursue available non-bankruptcy remedies. These alternatives to the Plan are very limited and not likely to benefit creditors. As a Chapter 11 trustee has been appointed, the Debtors are not in a position to propose their own plan. Furthermore, no other party in interest has expressed any interest in proposing a plan. Accordingly, the most likely result if the Plan is not confirmed is that the Chapter 11 Cases will be converted to cases under chapter 7 of the Bankruptcy Code. The Debtors believe that conversion of the Chapter 11 Cases to chapter 7 cases would result in (i) significant delay in distributions to all creditors who would have received a distribution under the Plan and (ii) diminished recoveries for holders of General Unsecured Claims. If the Chapter 11 Cases are dismissed, creditors would be free to pursue non-bankruptcy remedies in their attempts to satisfy claims against the Debtors. However, in that event, creditors would be faced with the costs and difficulties of attempting, each on its own, to collect claims from a non-operating entity.

US_ACTIVE-104434022.1

# VIII.
## CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS

### A.  In General

The following discussion summarizes certain material U.S. federal income tax consequences expected to result from the consummation of the Plan. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "IRC"), applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "Service"). There can be no assurance that the Service will not take a contrary view, no ruling from the Service has been or will be sought nor will any counsel provide a legal opinion as to any of the expected tax consequences set forth below.

Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to the beneficial owners of Claims or Interests (each a "Holder" and collectively, the "Holders"), the Liquidating Trust or the Debtors. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences described herein.

The following summary is for general information only. The tax treatment of a Holder may vary depending upon such Holder's particular situation. This summary does not address all of the tax consequences that may be relevant to a Holder, including any alternative minimum tax consequences and does not address the tax consequences to a Holder that has made an agreement to resolve its Claim in a manner not explicitly provided for in the Plan.  Except as may be contained in the general discussion at Section B of this Article VIII with respect to Debtors' partners, this summary also does not address the U.S. federal income tax consequences to persons not entitled to vote on the Plan or Holders subject to special treatment under the U.S. federal income tax laws, such as the brokers or dealers in securities or currencies, certain securities traders, tax-exempt entities, financial institutions, insurance companies, foreign persons, Holders that hold Claims as a position in a "straddle" or as part of a "synthetic security," "hedging," "conversion" or other integrated instrument, Holders that have a "functional currency" other than the United States dollar and Holders that have acquired Claims in connection with the performance of services. The following summary assumes that the Claims are held by Holders as "capital assets" within the meaning of Section 1221 of the IRC and that all Claims denominated as indebtedness are properly treated as debt for U.S. federal income tax purposes.

**EACH HOLDER SHOULD CONSULT ITS TAX ADVISOR AS TO THE PARTICULAR TAX CONSEQUENCES OF THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR FOREIGN TAX LAWS.**

US_ACTIVE-104434022.1

A.      **U.S. Federal Income Tax Consequences to the Debtors; Discharge of Indebtedness for Debtors and the Debtors' Partners.**

U.S. federal income taxes, like many other taxes, have priority pursuant to Bankruptcy Code section 507(a)(8).  Accordingly, such Claims must be satisfied before most other Claims may be paid. Because the Debtors are organized as limited partnerships with tax obligations flowing through to the members of the partnership, the Plan Proponents do not believe that any U.S. federal income taxes have accrued with respect to taxable years ending after the Petition Date.

In general, the discharge of indebtedness is treated as taxable ordinary income to the debtor whose debt is cancelled.  There are a number of exceptions and exclusions that apply to this general rule, including exclusions for taxpayers who are insolvent or in a bankruptcy proceeding at the time of the discharge.  Taxpayers whose debt is discharged and who qualify for an exclusion are required to reduce certain tax attributes including their adjusted tax basis in property.  Taxpayers who qualify for the exclusion and must, therefore, reduce their tax attributes may elect to reduce the basis of depreciable property before reducing other tax attributes.

The Debtors are organized as partnerships for U.S. federal income tax purposes.  If a partnership's debt is canceled because of bankruptcy or insolvency, the rules for the exclusion of the canceled amount from gross income and for tax attribute reduction are applied at the individual partner level and not at the partnership level. Thus, each partner's share of debt cancellation income must be reported on the partner's return unless the partner (as opposed to the partnership) qualifies for the bankruptcy or insolvency exclusion.  All elections with respect to the tax treatment of the debt cancellation, such as the choices to reduce the basis of depreciable property before reducing other tax attributes, to treat real property inventory as depreciable property, and to end the tax year on the day before filing the bankruptcy case, must be made by the partners, not the partnership.

1.      **Depreciable property.**  For purposes of reducing the basis of depreciable property in attribute reduction, a partner treats his or her partnership interest as depreciable property to the extent of the partner's proportionate interest in the partnership's depreciable property. This applies only if the partnership makes a corresponding reduction in the partnership's basis in its depreciable property with respect to the partner.

2.      **Partner's basis in partnership.**  The allocation of an amount of debt cancellation income to a partner results in that partner's basis in the partnership being increased by that amount. At the same time, the reduction in the partner's share of partnership liabilities caused by the debt cancellation results in a deemed distribution, in turn resulting in a reduction of the partner's basis in the partnership. These basis adjustments are separate from any basis reduction under the attribute-reduction rules described earlier.

- 48 -

### B.  U.S. Federal Income Tax Treatment of the Liquidating Trust

It is intended that the Liquidating Trusts will each be treated as a "grantor trust" for U.S. federal income tax purposes.  In general, a grantor trust is not a separate taxable entity.  The Service, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining a Service ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan.  The Liquidating Trusts have been structured with the intention of complying with such general criteria.  Assuming the Liquidating Trusts are each classified as a grantor trust, for U.S. federal income tax purposes, (i) the Debtors and each Beneficiary will treat the transfer of the assets to the Liquidating Trusts as a transfer of such assets to the Beneficiaries and a transfer by the Beneficiaries of such assets to the Liquidating Trusts and (ii) each Beneficiary will be treated as the grantor and deemed owner and obligor of its allocable share of the assets and liabilities, respectively, of the Liquidating Trusts.

The Liquidating Trust Agreements generally provide that the Beneficiaries of the Liquidating Trust must value the assets of the Liquidating Trusts consistently with the values determined by the Liquidating Trustee for U.S. federal, state, local and foreign income tax purposes.  As soon as possible after the Effective Date, but in no event later than ninety (90) days thereafter, the Liquidating Trustee, based upon their good faith determination after consultation with counsel, shall inform the Beneficiaries in writing solely as to the estimate of the value of the assets transferred to the Liquidating Trusts.

The foregoing discussion assumes that the Liquidating Trusts will be respected as grantor trusts for U.S. federal income tax purposes.  If the Service were to challenge successfully such classification, the U.S. federal income tax consequences to the Liquidating Trusts and the Beneficiaries could vary from those discussed herein (including the potential for an entity level tax to be imposed on any income of the Liquidating Trusts).

The Liquidating Trust Agreements require each Beneficiary to report on its U.S. federal income tax return its allocable share of the Liquidating Trust's income.  Therefore, a Beneficiary may incur a U.S. federal income tax liability with respect to its allocable share of the income of the Liquidating Trust whether or not the Liquidating Trust has made any concurrent distribution to such Beneficiary.  The character of items of income, deduction, and credit to any Beneficiary and the ability of such Holder to benefit from any deduction or losses will depend on the particular situation of such Holder.

In general, other than in respect of distributions attributable to a reduction in the Disputed Claims Reserve's interest in the Liquidating Trusts a distribution of underlying assets from a Liquidating Trust to a Beneficiary will generally not be taxable to such Holder because such Holders are already regarded for U.S. federal income tax purposes as owning such assets. Beneficiaries are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of distributions from the Liquidating Trusts.

The Liquidating Trustee will file with the Service tax returns for the Liquidating Trusts as grantor trusts pursuant to Treasury Regulation section 1.671-4(a) and will also send to each Beneficiary a separate statement setting forth such Holder's share of items of income, gain, loss,

US_ACTIVE-104434022.1

deduction, or credit.  Each such Holder will be required to report such items on its U.S. federal income tax return.

### C.  Disputed Claims Reserve

Until such time as all of the beneficial interests in each Liquidating Trust (and the proceeds thereof) can be distributed to the Holders in accordance with the terms of the Plan, the Disputed Claims Reserve will be treated as owning a portion of the assets in the respective Liquidating Trust.  Distributions from the Disputed Claims Reserve will be made to Holders of Disputed Claims when such Claims are subsequently Allowed and to other Beneficiaries when any Disputed Claims are subsequently disallowed.  The Liquidating Trusts shall file all income tax returns with respect to any income attributable to the Disputed Claims Reserve and shall pay the federal, state and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit or loss allocable thereto.

Beneficiaries should note the tax treatment of the Liquidating Trusts and the Disputed Claims Reserve is unclear and should consult their tax advisors.

### D.  U.S. Federal Income Tax Consequences to Holders of Claims

In general, Holders of Claims will recognize gain or loss on their Claims as set forth below.  The character of any gain or loss as capital gain or loss or ordinary income or loss and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors, including: (i) the nature and origin of the Claim; (ii) the tax status of the Holder of the Claim; (iii) whether the Claim has been held for more than one year; (iv) the extent to which the Holder previously claimed a loss or bad debt deduction with respect to the Claim; and (v) whether the Claim was acquired at a market discount.  A Holder of a Claim that purchased its Claim from a prior Holder at a market discount may be subject to the market discount rules of the IRC.  Under those rules, assuming that such Holder has made no election to amortize the market discount into income on a current basis, any gain recognized on the exchange of such Claim (subject to a *de minimis* rule) generally would be characterized as ordinary income to the extent of the accrued market discount on such Claim as of the date of the exchange.

#### 1.  Holders of Allowed Claims and Interests.

Although the Beneficiaries will generally be treated for U.S. federal income tax purposes as receiving the assets of the Liquidating Trusts from the Debtors and then transferring them to the Liquidating Trusts, because the Plan provides that Holders of Administrative Claims will receive specified fixed amounts from the Liquidating Trusts, the Liquidating Trustee intend to treat the actual payments made to such Holders from the Liquidating Trust as being made in exchange for these Claims on the date of payment thereof.

Although not free from doubt, Holders of Allowed Claims and Interests as of the Effective Date should be treated as receiving from the Debtors their share of the assets of the Liquidating Trust remaining (other than any assets allocated to the Disputed Claims Reserve) after distributions to Holders of Administrative Claims in satisfaction of their Allowed Claims, and simultaneously transferring such assets to the Liquidating Trust.  Accordingly, a Holder of Allowed Claims and Interests as of the Effective Date should initially recognize gain or loss in

US_ACTIVE-104434022.1

an amount equal to: (i) its share of the amount of the fair market value of the assets of the Liquidating Trust deemed received on the Effective Date, less (ii) the adjusted tax basis of its Claim or Interest, except to the extent such Holder receives amounts representing accrued and unpaid interest, which amounts will be taxed as interest. Additionally, such Holder should recognize its allocable share of taxable income on the assets and deductions of the Liquidating Trust recognized by the Liquidating Trust on an annual basis.

Because a Holder's ultimate share of the assets of the Liquidating Trust based on its Allowed Claim or Interest will not be determinable on the Effective Date due to, among other things, the existence of Disputed Claims, the value of the Assets at the time of actual receipt not being ascertainable on the Effective Date and (in the case of Allowed Interests) the subordination of Allowed Interests to Allowed Claims, such Holder should recognize additional or offsetting gain or loss if, and to the extent that, the aggregate amount of cash and fair market value of the assets of the Liquidating Trust ultimately received by such Holder is greater than or less than the amount used in initially determining gain or loss in accordance with the procedures described in the preceding paragraph. It is unclear when a Holder of an Allowed Claim or Interest should recognize, as an additional amount received in the liquidation for purposes of computing gain or loss, an amount attributable to the disallowance of a Disputed Claim. It is possible that a Holder of an Allowed Claim and Interest may be required to recognize such amount when a Disputed Claim or Interest is Disallowed, or alternatively when the Holder of an Allowed Claim or Interest receives distributions resulting from such disallowance.

It is possible that the Service may assert that any loss should not be recognizable until the Liquidating Trustee makes its Final Distribution of the assets of the Liquidating Trust. Holders should consult their tax advisors regarding the possibility that the recognition of gain or loss may be deferred until the Final Distribution of the assets of the Liquidating Trust.

### 2. Holders of Disputed Claims.

Although not free from doubt, Holders of Disputed Claims or Interests should not recognize any gain or loss on the date that the assets of the Debtors are transferred to the Liquidating Trust, but should recognize gain or loss in an amount equal to: (i) the amount of cash and the fair market value of any other property actually distributed to such Holder (other than any amounts attributable to accrued and unpaid interest, which will be taxable as such) less (ii) the adjusted tax basis of its Claim other than for accrued and unpaid interest. However, it is possible that such Holders may be required to recognize the fair market value of such Holder's allocable share of the Liquidating Trust's assets, as an amount received for purposes of computing gain or loss, either on the Effective Date or the date such Holder's Claim becomes an Allowed Claim or Interest.

### E. Interest Income with respect to Allowed Claims

Holders of Allowed Claims will be treated as receiving a payment of interest (includible in income in accordance with the Holder's method of accounting for tax purposes) to the extent that any cash or other property received (or deemed received) pursuant to the Plan is attributable to accrued but unpaid interest, if any, on such Allowed Claims. The extent to which the receipt of cash or other property should be attributable to accrued but unpaid interest is unclear. The

US_ACTIVE-104434022.1

Debtors and the Liquidating Trusts intend to take the position that such cash or property distributed pursuant to the Plan will first be allocable to the principal amount of an Allowed Claim and then, to the extent necessary, to any accrued but unpaid interest thereon. Each Holder should consult its tax advisor regarding the determination of the amount of consideration received under the Plan that is attributable to interest (if any). A Holder generally will be entitled to recognize a loss to the extent any accrued interest was previously included in its gross income and is not paid in full.

### F. Backup Withholding and Information Reporting

A Holder of an Allowed Claim may be subject to backup withholding currently at the rate of 28% with respect to any "reportable" payments received pursuant to the Plan unless (i) such Holder is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact or (ii) provides a correct taxpayer identification number, certifies as to no loss of exemption from backup withholding and complies with applicable requirements of the backup withholding rules. A Holder who does not provide a correct taxpayer identification number may be subject to penalties imposed by the Service. Amounts withheld under the backup withholding rules may be credited against a Holder's tax liability, and a Holder may obtain a refund of any excess amounts withheld under the backup holding rules by timely filing the appropriate claim for refund with the Service.

The Liquidating Trustee will report annually to each Holder of an Allowed Claim or Interest and to the Service the Holder's share of any income, gains and losses of the Liquidating Trust during the calendar year to the extent required by law.

**THE FOREGOING DISCUSSION OF CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS IS FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. ACCORDINGLY, EACH HOLDER SHOULD CONSULT ITS TAX ADVISOR WITH RESPECT TO THE TAX CONSEQUENCES OF THE PLAN DESCRIBED HEREIN AND THE APPLICATION OF FEDERAL, STATE, LOCAL AND FOREIGN TAX LAWS. NEITHER THE DEBTORS, THE COMMITTEE NOR EITHER OF THEIR PROFESSIONALS SHALL HAVE ANY LIABILITY TO ANY PERSON OR HOLDER ARISING FROM OR RELATED TO THE U.S. FEDERAL, STATE, LOCAL OR FOREIGN TAX CONSEQUENCES OF THE PLAN OR THE FOREGOING DISCUSSION.**

### IX.

### CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Plan Proponents believe that confirmation of the Plan is preferable to all other alternatives. Consequently, the Plan Proponents recommend all holders of Class 1A, 1B, 2A and 2B Claims, and Class 3A and 3B Interests, vote to **ACCEPT** the Plan, and to complete and return their Ballots so that they will be **RECEIVED** by the Clerk of the Bankruptcy Court on or before 4:30 p.m. (prevailing Eastern time) on September 29, 2010.

US_ACTIVE-104434022.1

Dated: September 3, 2010

PALM BEACH FINANCE PARTNERS, L.P.

/s/ Barry Mukamal
By: Barry Mukamal
Title: Chapter 11 Trustee of
Palm Beach Finance Partners, L.P.

PALM BEACH FINANCE II, L.P.

/s/ Barry Mukamal
By: Barry Mukamal
Title: Chapter 11 Trustee of
Palm Beach Finance II, L.P.

PALM BEACH OFFSHORE, LTD.

/s/ Geoffrey Varga
By: Geoffrey Varga
Title: Joint Official Liquidator of
Palm Beach Offshore, Ltd.

PALM BEACH OFFSHORE II, LTD.

/s/ Geoffrey Varga
By: Geoffrey Varga
Title: Joint Official Liquidator of
Palm Beach Offshore II, Ltd.