

**ORDERED in the Southern District of Florida on October 21, 2010.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:                                                Chapter 11

PALM BEACH FINANCE PARTNERS, L.P.,                    Case No. 09-36379-BKC-PGH
a Delaware limited partnership, *et al.*,[1]

                                                      Jointly Administered

      Debtors.

_____/

**ORDER CONFIRMING SECOND AMENDED JOINT PLAN OF LIQUIDATION OF
BARRY MUKAMAL, AS CHAPTER 11 TRUSTEE OF PALM BEACH FINANCE
PARTNERS, L.P. AND PALM BEACH FINANCE II, L.P., AND GEOFFREY VARGA,
AS JOINT OFFICIAL LIQUIDATOR OF PALM BEACH OFFSHORE, LTD. AND
<u>PALM BEACH OFFSHORE II, LTD.</u>**

---

[1] The address and last four digits of the taxpayer identification number for each of the Debtors follows in parenthesis: (i) Palm Beach Finance Partners, L.P., 3601 PGA Blvd, Suite 301, Palm Beach Gardens, FL 33410 (TIN 9943); and (ii) Palm Beach Finance II, L.P., 3601 PGA Blvd, Suite 301, Palm Beach Gardens, FL 33410 (TIN 0680).

Barry Mukamal, as Chapter 11 Trustee (the *"Trustee"*) of Palm Beach Finance Partners, L.P. (*"PBF"*) and Palm Beach Finance II, L.P. (*"PBF II"* and, together with PBF, the *"Debtors"*) and Geoffrey Varga, as Joint Official Liquidator of Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd. (*"JOL"*) (the Trustee together with the JOL are the *"Plan Proponents"*), having filed the *Second Amended Joint Plan of Liquidation of Barry Mukamal, as Chapter 11 Trustee of Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P., and Geoffrey Varga, as Joint Official Liquidator of Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd.*, dated September 3, 2010 [ECF No. 245] (the *"Plan"*)[2]; the United States Bankruptcy Court for the Southern District of Florida (the *"Court"*) having held a hearing concerning confirmation of the Plan on October 19, 2010 (the *"Confirmation Hearing"*); the Court, by order dated September 3, 2010 [ECF No. 249] (the *"Solicitation Order"*), having determined that the Second Amended Disclosure Statement In Support of the Plan and related exhibits thereto filed by the Plan Proponents, dated September 3, 2010, [ECF No. 246] (the *"Disclosure Statement"*) contains adequate information regarding the Plan; the Plan Proponents having distributed the Plan and Disclosure Statement for balloting in accordance with Title 11 of the United States Code (the *"Bankruptcy Code"*), the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*), and the Solicitation Order; the Plan Proponents having timely and properly tabulated the ballots in favor of acceptance or rejection of the Plan and submitted the results of balloting to the Court; the Court having considered the affidavit of Barry Mukamal (the *"Confirmation Affidavit"*), and testimony elicited from him at the Confirmation Hearing; the Court having found the testimony of Mr. Mukamal to be credible; the Court having taken judicial

---

[2] All capitalized terms used in this Order that are not defined herein shall have the same meaning ascribed to them in the Plan.

notice and considered the papers filed in the Chapter 11 jointly administered cases of the Debtors; the Court having heard and considered the arguments of counsel; the Court having determined that due and proper notice of the Plan, the Disclosure Statement, and the Confirmation Hearing was given to all creditors and parties-in-interest sufficient to satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, all Orders of this Court, applicable nonbankruptcy law, and due process; all objections to confirmation of the Plan having been resolved at or prior to the Confirmation Hearing; and notice of the Confirmation Hearing having been deemed good and sufficient notice of the modifications of the Plan; after due deliberation and sufficient cause appearing therefore,

**IT IS FOUND AND DETERMINED THAT:[3]**

A.     <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over these Chapter 11 Cases under 28 U.S.C. §§ 157 and 1334.  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2) and this Court has jurisdiction to enter a final order with respect thereto.  Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

B.     <u>Commencement of the Case</u>.  On November 30, 2009, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  By order dated December 1, 2009, the cases were jointly administered under Palm Beach Finance Partners, LP, Case No.: 09-36379- BKC-PGH [ECF No. 19].  On January 28, 2010, the Court entered the Agreed Order Directing Appointment of Chapter 11 Trustee and Denying United States Trustee's Motion to Convert Cases to Cases Under Chapter 7 [ECF No. 100].  On January 29, 2010, the United States

---

[3] The findings of fact and conclusions of law contained herein constitute findings of fact and conclusions of law required to be entered by the Court pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rule 7052 and 9014 of the Bankruptcy Rules.  To the extent necessary, a finding of fact shall be considered a conclusion of law and a conclusion of law shall be considered a finding of fact.

Trustee appointed Barry E. Mukamal to serve as the Chapter 11 Trustee for the jointly administered bankruptcy estates [ECF No. 107].

      C.     Judicial Notice.  The Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at, the hearings held before the Court during the pendency of these Chapter 11 Cases.

      D.     Oral Findings of Fact Incorporated.  All oral findings of fact and conclusions of law entered by the Court at the Confirmation Hearing are incorporated herein by this reference, in accordance with Bankruptcy Rule 7052(a).

      E.     Confirmation Hearing.  On October 19, 2010, the Court, pursuant to Bankruptcy Code § 1128 and Bankruptcy Rule 3020(b)(2), conducted a hearing to consider confirmation of the Plan ("*Confirmation Hearing*").

      F.     Solicitation Order.  The Solicitation Order:  (i) scheduled October 19, 2010 at 9:30 a.m. as the Confirmation Hearing; (ii) set September 29, 2010 as the deadline for submission of Ballots to accept or reject the Plan (the *"Voting Deadline"*); (iii) approved the form and method of notice of the Confirmation Hearing (the *"Confirmation Hearing Notice"*); (iv) set October 5, 2010 as the deadline for submitting objections to confirmation of the Plan (the *"Confirmation Objection Deadline"*); and (v) established certain procedures for soliciting and tabulating votes with respect to the Plan.

      G.     Solicitation of Votes.  The Debtors used the Disclosure Statement to solicit votes to accept or reject the Plan from those creditors who are impaired and entitled to vote under the Plan: Class 1A (PBF Limited Partner Unsecured Claims), Class 1B (PBF II Limited Partner

Unsecured Claims), Class 2A (Other PBF General Unsecured Claims), Class 2B (Other PBF II General Unsecured Claims), Class 3A (PBF Interests) and Class 3B (PBF II Interests).

      H.      <u>Transmittal of Solicitation Packages</u>.  The Plan Proponents served Solicitation Packages upon holders of Claims and Interests which included: (i) copies of the Disclosure Statement and Plan; (ii) the Solicitation Order; (iii) a Court-approved Notice of Plan Confirmation; and (iv) a Court-approved Solicitation Letter and Ballot, as more fully described in the Certificate of Service dated September 8, 2010 [ECF No. 256].  The JOL also served items numbered (i), (ii) and (iii) immediately above upon creditors and equity interest holders of Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd., as more fully described in the Affidavit of Ann Gittleman In Support of Service Under Bankruptcy Rule 3017(f) attached to the Notice of Filing, dated September 15, 2010 [ECF No. 268].  The foregoing materials were served in accordance with Bankruptcy Rules 3017(d) and 3017(f), the Solicitation Order and prior Court order.

      I.      <u>Ballot Report</u>.  The Debtors filed the Ballot Report on October 14, 2010, which certifies the method and results of the ballot tabulation for each Class entitled to vote to accept or reject the Plan [ECF No. 410].

      J.      <u>Transmittal and Mailing of Materials; Notice</u>.  In accordance with Bankruptcy Rule 2002, the Court finds and concludes that the Plan Proponents timely transmitted notice of the date, time and place for the Confirmation Hearing, the Voting Deadline, the Confirmation Objection Deadline, and all bar dates included in the Solicitation Order on holders of Claims and Interests and all parties-in-interest.  Any party in interest required to receive notice of the Confirmation Hearing and associated deadlines has received due, proper and adequate notice thereof and had sufficient opportunity to appear and be heard at the Confirmation Hearing.

Further, the Disclosure Statement, Plan, Ballots, Solicitation Order, and Notice of Plan Confirmation were transmitted and served in compliance with the Solicitation Order, the Bankruptcy Rules, the Bankruptcy Code, the local rules of the Court, and all other applicable laws, rules and regulations. The Notice of Plan Confirmation was also published on September 9, 2010 in The New York Times and The Palm Beach Post as evidenced by The Notice of Publication of Notice of Plan Confirmation dated September 5, 2010 [ECF No. 272]. No other or further notice is or shall be required.

K.   Solicitation. In accordance with Bankruptcy Code § 1126(b), the Court finds and concludes that:  (i) the solicitation of votes to accept or reject the Plan complied with all applicable non-bankruptcy law, rules and regulations governing the adequacy of disclosure in connection with the solicitation; and (ii) the solicitation was conducted after disclosure of adequate information, as defined in Bankruptcy Code § 1125(a).

L.   Ballots. All procedures used to distribute Solicitation Packages to the holders of Claims and Interests and to tabulate Ballots were fair, properly conducted, in good faith, and in accordance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Court, and all other applicable laws, rules, and regulations.

M.   Impaired Classes under the Plan. As set forth more fully in the Plan, Classes 1A, 1B, 2A, 2B, 3A and 3B (collectively, the *"Impaired Classes"*) are impaired under the Plan as that term is defined in Bankruptcy Code § 1124. Impaired Classes were entitled to submit votes to accept or reject the Plan.

N.   Impaired Classes That Have Voted to Accept the Plan. The Ballot Report indicates that at least two-thirds in dollar amount and more than half in number of the holders of Classes 1A, 1B, 2A, 2B, 3A and 3B who voted on the Plan accepted it and no Class voted to

reject the Plan. Thus, at least one impaired class of claims, determined without including any acceptance by an insider of any of the Debtors, has voted to accept the Plan.

O.      The Plan Complies with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).    As detailed below, the Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code § 1129(a)(1):

1.      Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).    In addition to Administrative Claims and Professional Claims, Article III of the Plan designates four Classes of Claims and two Classes of Interests in the Debtors. The Claims and Interests placed in each Class are substantially similar to other Claims or Interests in such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests.    Accordingly, the Plan satisfies Bankruptcy Code §§ 1122 and 1123(a)(1).

2.      Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).    As indicated at Section 4.1 of the Plan, there are no Unimpaired Classes of Claims and Interests under the Plan. Accordingly, Bankruptcy Code § 1123(a)(2) is inapplicable.

3.      Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).    Article IV of the Plan specifies the Classes of Claims and Interests that are Impaired under the Plan. Article V of the Plan specifies the treatment of Claims and Interests in all such Classes. Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(3).

4.      No Discrimination (11 U.S.C. § 1123(a)(4)).    The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to less favorable treatment with respect to such Claim or Interest. Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(4).

5.      Implementation of Plan (11 U.S.C. § 1123(a)(5)).    The Plan provides adequate and proper means for implementation of the Plan, including, without limitation: (a) the creation of the Liquating Trusts; (b) contribution of the Debtors' Assets to the Liquidating Trusts; (c) the approval of the Kaufman Rossin Settlement Agreement; (d) the dissolution of the Debtors following the Effective Date; (e) procedures for making distributions; and (f) the execution, delivery, filing or recording of all contracts, instruments, releases, indentures, and other agreements or documents relating to the foregoing. Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(5).

6.      Prohibition Against Issuance of Non-Voting Equity Securities and Provisions for Voting Power of Classes of Securities (11 U.S.C. § 1123(a)(6)).    The Plan contemplates the liquidation of the Debtors and the vesting of their Assets in the Liquidating Trusts on the Effective Date. Accordingly, Bankruptcy Code § 1123(a)(6) is inapplicable.

7.     Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).   The Plan contemplates the liquidation of the Debtors and the vesting of their Assets in the Liquidating Trusts on the Effective Date.  The Plan properly and adequately discloses the identity and affiliations of all individuals proposed to serve on or after the Effective Date as Liquidating Trustees of the Liquidating Trusts and as PBF II Liquidating Trust Monitor.  The appointment of such Liquidating Trustees and the PBF II Liquidating Trust Monitor is consistent with the interests of the holders of Claims against and Interests in the Debtors, and with public policy.  Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(7).

8.     Additional Plan Provisions (11 U.S.C. § 1123(b)).   The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for:  (a) distributions to holders of Claims; (b) the disposition of executory contracts; (c) the retention and/or transfer of, and right to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing) certain claims or causes of action against third parties, to the extent not waived or released under the Plan; (d) resolution of Disputed Claims; and (e) certain releases by the Debtors and holders of certain Claims.  Accordingly, the Plan satisfies Bankruptcy Code § 1123(b).

9.     Bankruptcy Rule 3016(a).  The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

P.     Plan Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).
The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code § 1129(a)(2). The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices, and in soliciting and tabulating votes on the Plan.

Q.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying Bankruptcy Code § 1129(a)(3).  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases and the formulation of the Plan.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of each of the Debtors and the recovery to Claim holders under the circumstances of these Chapter 11 Cases.

- 8 -

R.     Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).   Any
payment made or to be made by the Trustee on behalf of the Debtors (or by the Liquidating
Trustees on behalf of the Liquidating Trusts) for services or for costs and expenses in connection
with these Chapter 11 Cases, including all administrative expense claims under Bankruptcy Code
§ 503, or in connection with the Plan and incident to these Chapter 11 Cases, has been approved
by, or is subject to the approval of, the Court as reasonable, thereby satisfying Bankruptcy Code
§ 1129(a)(4).

S.     Directors and Officers (11 U.S.C. § 1129(a)(5)).   The Plan Proponents have
complied with Bankruptcy Code § 1129(a)(5) by disclosing in the Plan the identity and
affiliations of all individuals and entities proposed to serve, after confirmation of the Plan, as
Liquidating Trustees of the Liquidating Trusts and as PBF II Liquidating Trust Monitor.   Such
appointments are consistent with the interests of the creditors and with public policy, thereby
satisfying Bankruptcy Code § 1129(a)(5).

T.     No Government Regulation of Rates (11 U.S.C. §1129(a)(6)).   Bankruptcy Code
§ 1129(a)(6) is satisfied because the business of the Debtors is not subject to governmental
regulation of rates.

U.     Best Interests Test (11 U.S.C. § 1129(a)(7)).   The Plan satisfies Bankruptcy Code
§ 1129(a)(7). The Disclosure Statement, the Confirmation Affidavit and evidence adduced at the
Confirmation Hearing:   (i) are persuasive, credible and accurate as of the dates they were
prepared, presented, or proffered; (ii) either have not been controverted by other persuasive
evidence or have not been challenged; (iii) are based upon reasonable and sound assumptions;
and (iv) establish that each holder of a Claim in an Impaired Class that has not accepted the Plan
will receive or retain under the Plan, on account of such Claim, property of a value, as of the

Effective Date, that is not less than the amount that it would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

V.    Acceptance of Plan by All Classes.  Because all Classes of Creditors or Interests voted to accept the Plan, the Plan satisfies Bankruptcy Code § 1129(a)(8).

W.    Treatment of Administrative and Priority Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  Because there are no priority Claims under § 507 of the Bankruptcy Code, the requirements of Bankruptcy Code § 1129(a)(9) need not be satisfied.

X.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).  Classes 1A, 1B, 2A, 2B, 3A and 3B are Impaired Classes.  As described with particularity in the Ballot Report and in these Findings of Fact, all Classes (Classes 1A, 1B, 2A, 2B, 3A and 3B) voted to accept the Plan, without including any acceptance of the Plan by any insider holding a Claim.  Accordingly, the Plan satisfies Bankruptcy Code § 1129(a)(10).

Y.    Feasibility. (11 U.S.C. § 1129(a)(11)).  The Plan satisfies Bankruptcy Code § 1129(a)(11).  The Plan implements a liquidation of the Debtors and a transfer of the Debtors' Assets to Liquidating Trusts for the benefit of holders of Allowed Claims against and Interests in the Debtors.  Because the Plan expressly contemplates a liquidating plan, Bankruptcy Code § 1129(a)(11) is satisfied.

Z.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  To the extent that all fees payable to the United States Trustee under 28 U.S.C.§ 1930(a)(6) have not been paid, the Plan provides for the payment of all such fees on the Effective Date of the Plan and as they come due after the Effective Date.  Accordingly, the Plan satisfies Bankruptcy Code § 1129(a)(12).

AA.    <u>Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  No retiree benefits, as that term is defined in Bankruptcy Code § 1114, exist in these Chapter 11 Cases, making Bankruptcy Code § 1129(a)(13) inapplicable.

BB.    <u>Domestic Support Obligation (11 U.S.C. § 1129(a)(14))</u>.  The Debtors are not subject to any judicial or administrative order, or by statute, to pay any domestic support obligation.  The Plan thus satisfies Bankruptcy Code § 1129(a)(14).

CC.    <u>Individual Debtors (11 U.S.C. § 1129(a)(15))</u>.  None of the Debtors is an individual, making Bankruptcy Code § 1129(a)(15) inapplicable.

DD.    <u>Transfers Under Nonbankruptcy Law (11 U.S.C. § 1129(a)(16))</u>.  There are no provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust that apply to any of the Debtors since the Debtors are commercial businesses.  The Plan thus satisfies Bankruptcy Code § 1129(a)(16).

EE.    <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and there has been no objection filed by any governmental unit asserting such avoidance.  Accordingly, the Plan complies with Bankruptcy Code § 1129(d).

FF.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  The Plan Proponents and their respective attorneys, accountants and advisers have solicited votes to accept or reject the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, and are, therefore, entitled to the protections afforded by Bankruptcy Code § 1125(e) and the release provisions contained in Article XI of the Plan.

GG.    Executory Contracts.    The Trustee, on behalf of the Debtors, has exercised reasonable business judgment in determining whether to assume or reject each of their executory contracts as set forth in the Plan.

HH.    The Kaufman Rossin Settlement Agreement and the Bar Order.

1.    The Court has jurisdiction over the Kaufman Rossin Settlement Agreement pursuant to 28 U.S.C. § 1334, and authority to enter a Bar Order pursuant to 11 U.S.C. § 105(a).

2.    The form and means of the notice of the Kaufman Rossin Settlement Agreement which includes the Bar Order and the Plan are determined to have been the best notice practicable under the circumstances and to be good and sufficient notice to all persons whose interests would or could be affected by the Bar Order, including, but not limited to, (i) all creditors of either of the Debtors; (ii) the JOL, on behalf the Offshore Funds; (iii) all shareholders and creditors of the Offshore Funds; (iv) all limited partners of either of the Debtors; (v) all general partner(s) of either of the Debtors; and (vi) all entities that acted or are acting for or on behalf of the limited and general partners of the Debtors.

3.    Entry of a Bar Order is appropriate in order to achieve the finality and repose that is contemplated as a term of the Kaufman Rossin Settlement Agreement and good cause therefore exists for the entry of a Bar Order, and the Bar Order is fair and equitable. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 495 96 (11th Cir. 1992); *see also In re Munford, Inc.*, 97 F.3d 449, 454 55 (11th Cir. 1996); *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995); *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155 (4th Cir. 1991).  The Bar Order shall be interpreted as broadly as possible so as to effectuate the purposes stated in the Plan and this Order.

4.    In consideration of the payments to be made by Kaufman Rossin pursuant to the Kaufman Rossin Settlement Agreement, which will enable the Trustee to confirm the Plan and make certain cash distributions as provided for in the Plan, the Releasors are deemed to have released the Barred Claims.    Specifically, Releasors, as defined in Section 1.77 of the Plan, are permanently barred and enjoined from commencing, prosecuting, or asserting either directly or in any other capacity, against Kaufman Rossin, any and all liabilities, judgments, rights, claims, cross claims, counterclaims, third party claims,  demands, suits, matters, obligations, damages, debts, losses, costs, actions and causes of action, of every kind and description, arising under common law, rule, regulation or statute, whether arising under state or federal law, whether presently known or unknown that any Releasor now has, ever had or may claim to have in the future that is a Barred Claim; provided that (a) the Bar Order does not release, or enjoin any of Releasors from commencing, prosecuting, or asserting any claims to interpret or enforce the terms of the Kaufman Rossin Settlement Agreement or the Bar Order, and (b) the Bar Order does not release or enjoin any of Releasors from commencing, prosecuting, or asserting any claims against any party other than Kaufman Rossin; and (c) the Bar Order does not release or enjoin any of Releasors from commencing, prosecuting, or asserting

any claims against the Kaufman Rossin Affiliated Parties other than those based upon or directly related to the professional services provided by Kaufman Rossin to the Debtors or the Offshore Funds.

5.      The Court retains exclusive jurisdiction to enforce or interpret the Bar Order.

II.      <u>Findings Regarding Third-Party Releases and Related Provisions</u>.  The release, exculpation, injunction and limitation of liability provisions contained in the Plan, including, without limitation, those contained in Article XI of the Plan: (i) have been negotiated in good faith and at arms' length; (ii) are consistent with and permitted pursuant to §§ 105, 524, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code and applicable caselaw, (iii) are integral to the structure of the Plan, formed part of the agreement among all parties-in-interest embodied therein, and are each an essential means of implementing the Plan pursuant to § 1123(a)(5) of the Bankruptcy Code; (iv) are fair and equitable; and (v) confer material benefits on the Debtors' estates, and are in the best interests of the Debtors and their estates, their creditors and holders of Equity Interests.   Additionally, all interested parties have timely received due, proper and adequate notice of the release, exculpation, injunction and limitation of liability provisions in the Plan.

JJ.      <u>Conditions to Confirmation</u>.  The conditions to confirmation set forth in Article 10.1 of the Plan have been satisfied, waived, or will be satisfied by entry of this Order, provided, however, that the occurrence of the Effective Date is subject to satisfaction or waiver, as applicable, of the conditions to the Effective Date set forth in the Plan.

KK.      <u>Conditions to Effectiveness</u>.  Each of the conditions to the Effective Date, as set forth in Article 10.2 of the Plan, is reasonably likely to be satisfied, and the Trustee shall file a notice when substantial consummation of the Plan (within the meaning of Bankruptcy Code § 1127) has occurred.

LL.    <u>Retention of Jurisdiction</u>.  The Court's retention of jurisdiction as set forth in Article XII of the Plan comports with the parameters contained in 28 U.S.C. § 157.

MM.    <u>Agreements and other Documents</u>.  The Plan Proponents have made adequate and sufficient disclosure of: (i) the Liquidating Trusts and (ii) the distributions to be made under the Plan.

NN.    <u>Preservation of Causes of Action</u>.  It is in the best interests of Claim holders and Interest holders that causes of action not expressly released under the Plan be retained by the Liquidating Trustees pursuant to Article VIII of the Plan, in order to maximize the value of the Liquidating Trusts.

OO.    <u>Modification of the Plan</u>.  Any modification of the Plan pursuant to this Confirmation Order is not material and does not adversely change the treatment of the holder of any Claim or Interest who has not accepted such modification in writing.  Therefore, in accordance with § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan, as modified pursuant to this Confirmation Order, is deemed accepted by all holders of Claims and Interests who have previously voted to accept the Plan.

PP.    <u>Status of Objections</u>.  As set forth below, the objections filed to the Plan have been resolved and withdrawn.

**NOW THEREFORE, IT IS ORDERED THAT:**

1.    <u>Confirmation of Plan</u>.  The Plan complies with the requirements of §§ 1122 and 1123 of the Bankruptcy Code and is approved and confirmed under § 1129 of the Bankruptcy Code, pursuant to the terms and conditions of this Order.  The terms of the Plan and the attached schedules are incorporated herein and are part of the Plan and this Order.  In the event of any conflict, discrepancy or inconsistency between the terms and provisions of the Plan on the one

hand and the terms and provisions of this Order on the other hand, the terms and provisions of this Order shall control.

2.      <u>Good Faith</u>.  The Plan has been proposed in good faith and not by any means forbidden by law.

3.      <u>Objections</u>.  As described herein at ¶ 36, all objections to confirmation of the Plan have been withdrawn and resolved.  Specifically, the SSR Parties' Objection (defined herein) is deemed withdrawn and any votes cast by the SSR Parties are hereby deemed votes to accept the Plan. The Tradex Parties' Objection (defined herein) is deemed withdrawn and resolved.

4.      <u>Defined Terms</u>.  All capitalized terms used in this Order that are not defined shall have the same meaning ascribed them in the Plan (as such terms may be modified by the terms of this Order).

5.      <u>Provisions of Plan and Order Non-Severable and Mutually Dependent</u>.    The provisions of the Plan and this Order are non-severable and mutually dependent, and are deemed fully incorporated by reference in each other.

6.      <u>The Liquidating Trusts</u>.  On the Effective Date, the Trustee, on behalf of the Debtors and the Beneficiaries, is authorized to execute the Liquidating Trust Agreements and take all steps necessary to establish the Liquidating Trusts.

7.      <u>Vesting of Assets</u>.  On the Effective Date, each of the Debtors shall transfer all of their respective Assets to the Beneficiaries of the Liquidating Trusts, which shall contribute such Assets to the Liquidating Trusts pursuant to the terms of the Liquidating Trust Agreements and the Pro Rata Allocation Formula.  Except as otherwise set forth in this Order, all Assets shall be transferred and contributed free and clear of all Liens, Claims, interests and encumbrances.  Title

to all Assets contributed to the Liquidating Trusts shall vest in the respective Liquidating Trust on the Effective Date following the transfer.

8.    Pro Rata Allocation Formula.  The Pro Rata Allocation Formula whereby the Assets in which both PBF and PBF II have an interest, including any Litigation Proceeds from legal proceedings, settlements, or as otherwise acquired in which both PBF and PBF II have an interest, between the Liquidating Trusts whereby on the Effective Date 18% of such Assets shall be allocated to the PBF Liquidating Trust and 82% of such Assets shall be allocated to the PBF II Liquidating Trust is approved.

9.    Kaufman Rossin Settlement Agreement.   The Kaufman Rossin Settlement Agreement is approved in all respects, including the Bar Order, and the parties to the agreement are authorized and directed to implement each of all of its terms.   Accordingly, except as provided in Section 11.3.4 of the Plan, the Releasors are deemed to have released the Barred Claims.

10.    Approval of the Kaufman Rossin Settlement Agreement.   Approval of the Kaufman Rossin Settlement Agreement is based on the Court's authorization, after hearing on notice to appropriate parties, to enter an order approving the compromise of settlement where it is necessary or appropriate in the particular circumstances to an efficient administration of the estate. *See Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377 (9th Cir. 1986).  In *A&C Properties*, the Ninth Circuit noted that the law favors compromise to avoid the expense and burden of litigating sharply contested claims and, further, that a compromise may be approved where it is fair and equitable. *Id.* at 1380-81. Furthermore, the Eleventh Circuit's decision in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990) established the following four-part test for evaluating whether to approve settlements: (i) the probability of success in litigation; (ii)

the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interests of creditors. This is in conjunction with the rather deferential standard of approving a settlement, which is that the Bankruptcy Court must determine only that the settlement fall within "the lowest point on the range of reasonableness." *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 499 (Bankr. S.D.N.Y. 1991). This Court finds that proper notice was provided, and that the *Justice Oaks* test for approving settlements has been satisfied.

11.    <u>Payment of Contingency Fee to Meland Russin & Budwick, P.A. ("*MRB*")</u>.    In accordance with this Court's Order Approving the Trustee's Motion to Approve Hybrid Form of Compensation for Meland Russin & Budwick, P.A. [ECF No. 223], the Liquidating Trustee shall cause MRB's contingency fee in the amount of $172,800 to be paid to MRB by the PBF estate and $196,800 by the PBF II estate immediately upon funding of the Kaufman Rossin Settlement Payment.

12.    <u>Distribution of Kaufman Rossin Settlement Payment</u>.    The Kaufman Rossin Settlement Payment shall be distributed to the Liquidating Trusts and then distributed pursuant to the Onshore/Offshore Allocation Formula as modified by this Order at ¶ 37(a) and (b).

13.    <u>Preserved Litigation Claims</u>.    In accordance with § 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in the Plan or this Order, all Litigation Claims are expressly preserved, reserved and retained by the Liquidating Trusts and after transfer of the Assets to the Liquidating Trusts pursuant to Section 7.1.3 of the Plan, the Liquidating Trustees, or other appropriate party in interest including any designee or successor of the Liquidating Trustees, will have the exclusive right to enforce any and all Litigation Claims, including, but not limited to those categories of claims set forth in Section 1.52 of the Plan, and the rights, powers and claims

of the Debtors that arose before or after the Petition Date (including, but not limited to, the rights, powers and claims of a trustee and debtor-in-possession) against potential targets of the Litigation Claims including, but not limited to, those set forth on Schedule 1.52 of the Plan, as supplemented prior to the Confirmation Hearing. The right to bring all Litigation Claims against any targets, including but not limited to those set forth on Schedule 1.52 of the Plan, as supplemented prior to the Confirmation Hearing, is expressly and entirely preserved and retained by the Liquidating Trusts and the Liquidating Trustees or other appropriate party in interest including any designee or successor of the Liquidating Trustees. Notwithstanding the foregoing, pursuant to the Plan and the PBF II Liquidating Trust Agreement, in the event the PBF II Liquidating Trustee opts not to pursue a PBF II Litigation Claim, the PBF II Liquidating Trust Monitor may make a written demand upon the PBF II Liquidating Trustee that the PBF II Liquidating Trustee pursue such PBF II Litigation Claim. In the event the PBF II Liquidating Trustee refuses to pursue such PBF II Litigation Claim, the PBF II Liquidating Trust Monitor shall be authorized to pursue such PBF II Litigation Claim on behalf of the PBF II Liquidating Trust with the same rights possessed by the PBF II Liquidating Trustee.

14. <u>Standing</u>. The Liquidating Trustee shall have standing under state and/or federal bankruptcy law or otherwise, to file, litigate and settle the Litigation Claims on behalf of the Liquidating Trusts subject only to any limitations set forth in Article 7 of the Plan or the Liquidating Trust Agreements.

15. <u>Termination of the Debtors</u>. As soon as practicable after the Effective Date, each of the Debtors shall be dissolved and cease to exist for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; <u>provided</u>, <u>however</u>, that pursuant to § 1124(b) of the Bankruptcy Code, the

Liquidating Trustee shall be authorized to file each Debtor's final tax returns, and shall be authorized to file and shall file with the official public office that keeps corporate records in each Debtor's state of incorporation a certificate of dissolution or equivalent document.  Such a certificate of dissolution may be executed by the Liquidating Trustee without the need for any action or approval by any other party.  From and after the Effective Date, the Debtors (a) for all purposes shall be deemed to have withdrawn their business operations from any state in which they were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (b) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

16.    <u>Exculpation</u>.  Regardless as otherwise specifically provided in the Plan or this Order, in connection with only the post-petition period, none of the Debtors, the Trustee, the JOL or any of such parties' employees, representatives, advisors, attorneys, financial advisors, investment bankers or agents or any of such parties' successors and assigns, shall have or incur, and are hereby released from, any Claim, obligation, cause of action or liability to one another or to any holder of a claim or an Interest, or any other party in interest, or any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful misconduct, and in all respects shall be entitled to reasonably rely

upon the advice of counsel with respect to their duties and responsibilities (if any) under the Plan.

17.    Injunctions.  Except as otherwise specifically provided in the Plan or this Order, all Entities who have held, hold or may hold Claims, rights, causes of action, liabilities or any Interests based upon any act or omission, transaction or other activity of any kind or nature related to the Debtors or the Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in the Plan or this Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Interest and regardless of whether such Entity has voted to accept the Plan, and any successors, assigns or representatives of such Entities, shall be and are precluded and permanently enjoined on and after the Effective Date from (a) the commencement or continuation in any manner of any claim, action or other proceeding of any kind with respect to any Claim, Interest or any other right or claim against the Debtors, or any assets of the Debtors which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any Claim, Interest or any other right or claim against the Debtors, or any assets of the Debtors which such Entities possessed or may possess prior to the Effective Date, (c) the creation, perfection or enforcement of any encumbrance of any kind with respect to any Claim, Interest or any other right or claim against the Debtors or any assets of the Debtors which they possessed or may possess prior to the Effective Date, and (d) the assertion of any Claims that are released hereby.

18.    Limitation of Liability. Except as expressly set forth in the Plan or this Order, following the Effective Date, none of the Debtors, the Trustee, the JOL or any of such parties' employees, advisors, attorneys, professionals or agents shall have or incur any liability to any

holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or any contract, instrument, release or other agreement or document created in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct.

19.     Binding Effect of Plan on Chapter 11 Trustee of Petters Company, Inc. and Palm Beach Finance Holdings, Inc. Notwithstanding anything in the Plan or this Order to the contrary, Section 11.5 of the Plan shall have no effect on the Petters Bankruptcy Cases, or any successors or assigns, and the affirmative vote of the Chapter 11 Trustee of Petters Company, Inc. and Palm Beach Finance Holdings, Inc. in support of the Plan shall have no effect other than to be used in tabulating ballots and class acceptance for confirmation purposes, and shall not bind the Chapter 11 Trustee of Petters Company, Inc. and Palm Beach Finance Holdings, Inc, or have any collateral estoppel, res judicata or evidentiary value, in any proceedings or litigation between or among the Chapter 11 Trustee of Petters Company, Inc. and Palm Beach Finance Holdings, Inc. and the Trustee or Liquidating Trustee.

20.     Exemption from Certain Transfer Taxes. Pursuant to § 1146(c) of Bankruptcy Code, the issuance, transfer or exchange of any Security or the making or delivery of any instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax, use tax, sales tax or similar tax. Any sale of any Asset occurring before, after or upon the Effective Date shall be deemed to be in furtherance of the Plan.

21.     Approval of Rejection of Executory Contracts and Leases. This Order constitutes an Order of the Court approving the rejection of executory contracts under Section 6.1 of the Plan pursuant to Bankruptcy Code § 365 as of the Effective Date. **Pursuant to Local Rule**

6006-1, any proof of claim for damages arising from the rejection must be filed with the court within 30 days after the entry of this order.

      22.   <u>Administrative Claims Bar Date</u>.  Other than with respect to Administrative Claims for which a Bar Date has previously been established, any and all requests for payment or proofs of Administrative Claims, including Claims of all Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code §§ 327, 328, 330, 331 or 503(b) for services rendered on or before the Effective Date (including any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Cases) and any claims asserted in accordance with Section 2.4 of the Plan, must be Filed and served on the Liquidating Trustee, the JOL, their respective counsel, and the U.S. Trustee no later than the first Business Day that is at least sixty (60) days following the Effective Date (the ***"Administrative Claims Bar Date"***).  Holders of Administrative Claims, including all Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code §§ 327, 328, 330, 331 or 503(b) for services rendered on or before the Effective Date (including any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Cases), that are required to File a request for payment or proof of such Claims and that do not File such requests or proofs of Claim on or before the Administrative Claims Bar Date shall be forever barred from asserting such Claims against the Debtors, their Estates, the Liquidating Trusts, the Liquidating Trustee, any other Person or Entity, or any of their respective property.

      23.   <u>Substantial Contribution Claim of JOL</u>.  The JOL may file an application pursuant to § 503(b)(3) of the Bankruptcy Code for reimbursement of the actual, necessary expenses, incurred by the JOL in making a substantial contribution in these Bankruptcy Cases by, <u>inter</u>

alia, his involvement in the negotiation, analysis and drafting of the terms of the Plan and his role in obtaining approval of the Plan and related documents and agreements. Additionally, Professionals retained by the JOL may file an application pursuant to § 503(b)(4) of the Bankruptcy Code for professional services rendered to the JOL in connection with these Bankruptcy Cases. The foregoing applications shall not be objected to by the Liquidating Trustee, so long as the amounts set forth in such applications are deemed reasonable by the Liquidating Trustee, but all other parties-in-interest, including the United States Trustee, shall be entitled to file an objection to any such application. To the extent an application for a Claim made pursuant to Section 2.4 of the Plan is Allowed, such Allowed Claim shall be payable pursuant to the Pro Rata Allocation Formula from the Trust Assets of the PBF and PBF II Liquidating Trusts.

24.    Resolution of Administrative Claims. Objections to any such Administrative Claims must be Filed and served on the claimant no later than thirty (30) days after the Administrative Claims Bar Date. The Trustee and JOL shall use reasonable efforts to promptly and diligently pursue resolution of any and all disputed Administrative Claims. In the event the Liquidating Trustee and the JOL are unable to resolve any of the disputed Administrative Claims, such unresolved disputes will be heard and determined by the Court.

25.    Resolution of Claims Other than Administrative Claims. Subject to applicable law, and except as otherwise set forth in the Plan or this Order, from and after the Effective Date, the Liquidating Trustee, the PBF II Liquidating Trust Monitor and any Creditor shall have the authority to litigate to judgment objections to Claims or Interests pursuant to applicable procedures established by, or grounds set forth in, the Bankruptcy Code, the Bankruptcy Rules, the Liquidating Trust Agreements and the Plan. Any compromise of any Claim objection shall

be subject to Court approval.  The deadline within which objections to Claims or Interests may be filed shall be one (1) year from the Effective Date.

26.    <u>Allowance of Palm Beach Offshore Claims</u>.  Upon entry of this Order, the Palm Beach Offshore Claims shall be deemed Allowed Class 2B Claims (Other PBF II General Unsecured Claims) and shall not be subject to dispute, challenge or reduction in amount by any party-in-interest including without limitation the PBF II Liquidating Trustee, although the Palm Beach Offshore Claims shall be reduced by the amount of the Kaufman Rossin Settlement Payment received by the Offshore Funds.  The Palm Beach Offshore Claims will be treated as set forth in Section 5.4 of the Plan.

27.    <u>Allowance of Claims and Interests</u>. The allowance or disallowance of Claims and Interests are, and will be, subject to the terms of the Plan.

28.    <u>Claims held by SEC</u>.  Nothing in the Plan, this Order or any bar order entered in connection with these Chapter 11 Cases (including the Bar Order) shall (a) enjoin, impair or delay the Securities and Exchange Commission (the *"SEC"*) from commencing or continuing any claims, causes of action, proceedings or investigations against any person or entity, or (b) release or discharge any person or entity from any claims, rights, powers or interests held or assertable by the SEC.

29.    <u>Payment of Statutory Fees</u>.  The Trustee, on behalf of the Debtors, shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days of the entry of this Order for pre-confirmation periods and shall file a final Monthly Operating Report.  The Liquidating Trustee of the respective Liquidating Trust shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) based upon all disbursements of the Liquidating Trust for post-confirmation periods within the time

period set forth in 28 U.S.C. § 1930(a)(6), until the earlier of the closing of the Bankruptcy Cases by the issuance of a Final Decree by the Court, or upon the entry of an order by the Court dismissing the Bankruptcy Cases or converting the Bankruptcy Cases to another chapter under the Bankruptcy Code, and the party responsible for paying the post-confirmation United States Trustee fees shall file a quarterly Post-Confirmation Operating Report which shall include, among other things, all payments made under the Plan and payments made in the ordinary course of business. The Post-Confirmation Operating Report shall be filed quarterly until the Court enters Final Decree, dismisses the case, or converts the case to another chapter in bankruptcy.

30.    <u>Retention of Jurisdiction</u>. Notwithstanding the entry of this Order, the occurrence of the Effective Date and the transfer of the Assets to the Liquidating Trusts, the Court shall retain jurisdiction as provided in Article 12 of the Plan over the Chapter 11 Cases after the Effective Date to the fullest extent legally permissible.

31.    <u>Automatic Stay</u>. In furtherance of the implementation of the Plan, except as otherwise provided in the Plan or in this Order, all injunctions or stays provided for in the Chapter 11 Cases pursuant to §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect and apply to all Creditors and Beneficiaries holding Claims against the Debtors, the Estates, the Assets, the Liquidating Trustee, the Liquidating Trusts and the Trust Assets until the Final Distribution Date.

32.    <u>References to Plan Provisions</u>. The failure to include or specifically reference any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court to confirm the Plan in its entirety as modified in this Order. The provisions of the Plan and this Order shall be construed in a manner consistent

with each other so as to accomplish the purposes of each, provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provision of this Order shall govern and control.

33.    Confirmation Date.  The Confirmation Date referred to in Article 1.20 of the Plan and as used throughout the Plan and this Order is the date the Court enters this Order on its electronic docket.

34.    Correction of Errors and Inconsistencies.  After the Confirmation Date and before substantial consummation of the Plan as defined in § 1101(2) of the Bankruptcy Code, the Plan Proponents may, under § 1127(b) of the Bankruptcy Code, institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or this Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan.

35.    Resolution of Plan Objections.  As set forth below, the objections filed to the Plan have either been resolved, withdrawn or otherwise overruled.

**36.    Resolution of Objections.**

**(a.)    Tradex Parties' Objection.  Tradex Global Master Fund SPC Ltd., the ABL Segregated Portfolio 3, and Tradex Global Master Fund SPC Ltd., the Original Segregated Portfolio and their legal counsel (collectively, the *"Tradex Parties"*) objected to the Plan [ECF No. 396] (the *"Tradex Parties' Objection"*) objecting to the scope of the Bar Order in connection with the Kaufman Rossin Settlement Agreement. The Tradex Parties' Objection shall be deemed withdrawn and has been resolved as set forth in this ¶ 36(a) of this Order.  Additionally, in connection with the resolution of the Tradex Parties' Objection, the Tradex Parties may file a claim pursuant to 11 U.S.C. § 503(b) by no later than the Administrative Claims Bar Date.  The Liquidating Trustee and the PBF II Liquidating Trust Monitor may not object to, and will each support, any such application for reimbursement to**

the extent the same is less than or equal to $50,000. At the request of the Tradex Parties, the Liquidating Trustee's counsel shall attend any hearing scheduled as to the § 503(b) application. In the event that the Liquidating Trustee enters into a settlement agreement with Bruce Prevost and/or David Harrold and such agreement provides for the entry of a bar order, then the Tradex Parties may not object to such settlement on the basis that the settlement provides for the imposition of a bar order, provided that confidential financial disclosures for Messrs. Prevost and/or Harrold are provided to the Tradex Parties that reflect to a reasonable person their financial inability to satisfy a meaningful judgment from any assets they retain. On the same date that Kaufman Rossin funds the settlement to the Trustee, Kaufman Rossin shall directly pay to the Tradex Parties (c/o their counsel's trust account) via wire transfer the sum of $250,000. Upon receipt of such payment and the $100,000 payment referenced in paragraph 37(a) below, the Tradex Parties on the one hand and Kaufman Rossin on the other hand shall be deemed to have waived and released to the fullest extent permissible under both Florida and Cayman law all claims of any type they have asserted or could assert against each other, their agents, their employees or their counsel. The Bar Order will be effective as to the Tradex Parties only upon the Tradex Parties' receipt of the $250,000 payment from Kaufman Rossin and the $100,000 payment referenced in paragraph 37(a) below. Kaufman Rossin and the Tradex Parties consent to the jurisdiction of this Court to enforce the provisions of this Order. The Tradex Parties shall dismiss with prejudice their pending appeal to the Eleventh Circuit in connection with the action filed in the United States Court District Court for the Southern District of Florida against Kaufman Rossin (Case No. 09-cv-21622) with all parties to bear their own costs and fees. The Tradex Parties agree not to sue any third parties in connection with their investment losses in Palm Beach Offshore without the Liquidating Trustee's written consent.

(b).   SSR Parties' Objection. SSR Capital Partners, L.P., Strategic Stable Return Fund (ID), L.P. and Strategic Stable Return Fund II, L.P. (collectively, the "*SSR Parties*") objected to the Plan [ECF No. 392 (the "*SSR Parties' Objection*") objecting to the scope of the Bar Order in connection with the Kaufman Rossin Settlement Agreement.   The SSR Parties' Objection shall be deemed withdrawn and has been resolved as set forth in this ¶ 36(b) of this Order. Additionally, in connection with the resolution of the SSR Parties' Objection, the SSR Parties may file a claim pursuant to 11 U.S.C. § 503(b) by no later than the Administrative Claims Bar Date. The Liquidating Trustee will support, and the PBF II Liquidating Trust Monitor may not object to, any such application for reimbursement to the extent the same is less than or equal to $50,000. At the request of the SSR Parties, the Liquidating Trustee's counsel shall attend any hearing scheduled as to the § 503(b) application. In the event that the Liquidating Trustee enters into a settlement agreement with Bruce Prevost and/or David Harrold and such agreement provides for the entry of a bar order, then the SSR Parties may

not object to such settlement on the basis that the settlement provides for the imposition of a bar order, provided that confidential financial disclosures for Messrs. Prevost and/or Harrold are provided to the SSR Parties that reflect to a reasonable person their financial inability to satisfy a meaningful judgment from any assets they retain. On the same date that Kaufman Rossin funds the settlement to the Trustee, Kaufman Rossin shall directly pay to the SSR Parties via wire transfer the sum of $250,000 and within 10 calendar days from the date of the receipt of such funds the SSR Parties shall file a notice of non suit with prejudice in any actions pending against Kaufman Rossin or its affiliates, agents or employees. Upon receipt of such payment, the SSR Parties shall be deemed to have waived and released to the fullest extent permissible under both Texas and Florida law all claims of any type they have asserted or could assert against Kaufman Rossin or its affiliates, agents or employees. Kaufman and the SSR Parties consent to the jurisdiction of this Court to enforce the provisions of this Order.

37.    **Modifications to the Plan.**

(a.) Section 7.2 of the Plan is modified so as to read as follows:

Distribution of Kaufman Rossin Settlement Payment. The Kaufman Rossin Settlement Payment in the amount of $9,600,000 shall be paid and distributed to the Liquidating Trusts via wire transfer and then distributed pursuant to the Onshore/Offshore Allocation Formula. From these funds, the Liquidating Trustee shall disburse $1,728,000 to the PBF Liquidating Trust and $1,968,000 to the PBF II Liquidating Trust. The Liquidating Trustee shall then disburse $100,000 to the SSR Parties (c/o their counsel's trust account), $100,000 to the Tradex Parties (c/o their counsel's trust account) and then disburse the remaining balance of $5,704,000 to the Offshore Funds. When the Liquidating Trustee distributes from the Liquidating Trusts the Kaufman Rossin Settlement Payments, his fee shall be calculated pursuant to 11 U.S.C. § 326. However, the Liquidating Trustee's fee in connection with the payment to be made to the Offshore Funds, SSR Parties and Tradex Parties shall be capped at and equal to .75% of such payments. For the avoidance of any doubt, and notwithstanding anything herein to the contrary, for Federal income tax purposes, and pursuant to Revenue Procedure 94-95, the Kaufman Rossin Settlement Payment shall be deemed to be transferred to the Beneficiaries and subsequently deemed to have been transferred from the Beneficiaries to the Liquidating Trusts pursuant to the Onshore/Offshore Allocation Formula.

(b.) Section 12.1.21 of the Plan is modified so as to read as follows:

Approve any settlement or compromise pursuant to Rule 9019, including a settlement that contains a bar order, provided that all objections and responses that may exist under applicable law to such settlement(s) or

**proposed bar order(s) are preserved, including, without limitation, objections to the Court's jurisdiction.**

38.     <u>Effective Date Occurrence</u>.  If the Effective Date has not occurred on or before the first business day which is thirty (30) calendar days after the date of entry of this Order, the Court shall hold a status hearing on the earliest available court date thereafter regarding the occurrence of the Effective Date and the Court may order appropriate relief pursuant to the Plan, this Order, and/or the applicable provisions of the Bankruptcy Code.

39.     <u>Distribution Record Date</u>.  The Distribution Record Date, or the record date for the purposes of making distributions under the Plan on account of Allowed Claims or Interests, shall be October 19, 2010.

40.     <u>Unclaimed Funds</u>.  "Unclaimed Funds" means any distribution of Cash made to the holder of an Allowed Claim pursuant to the Plan that (a) is returned to the Liquidating Trustee as undeliverable and no appropriate forwarding address is received within the later of (i) 90 days after the Effective Date and (ii) 90 days after such attempted Distribution by the Liquidating Trustee is made to such holder or (b) in the case of a distribution made in the form of a check, is not negotiated within 90 days and no request for re-issuance is made.  Unclaimed Funds shall remain property of the respective Liquidating Trust and be distributed to other Creditors in accordance with the terms of the Plan and the Liquidating Trust Agreements.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

41.    <u>Post-Confirmation Status Conference</u>.    The Court will conduct a post-confirmation status conference on February 1, 2011 at   10:00   a.m.   at   the   United   States Bankruptcy Court, 1515 North Flagler Drive, Room 801, Courtroom A, West Palm Beach, Florida 33401.

###

**Submitted By:**

Michael S. Budwick, Esquire
Florida Bar No. 938777
mbudwick@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
Attorneys for Chapter 11 Trustee
3000 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telefax: (305) 358-1221

**Copies Furnished To:**
Michael S. Budwick, Esquire is directed to serve copies of this Order on all interested parties related to the Debtors cases and to file a certificate of service.

The Liquidator is directed to email a copy of this Order on all interested parties related to Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd. and to file a certificate of service. The certificate of service need not identify the identities of the particular persons served.